# **EXHIBIT E**

**State Court Action Complaint**

1 | RUTAN & TUCKER, LLP
William H. Ihrke (State Bar No. 204063)
2 | bihrke@rutan.com
Robert O. Owen (State Bar No. 126105)
3 | bowen@rutan.com
Travis Van Ligten (State Bar No. 301715)
4 | tvanligten@rutan.com
Samantha Lamm (State Bar No. 203094)
5 | slamm@rutan.com
18575 Jamboree Road, 9th Floor
6 | Irvine, CA 92612
Telephone: 714-641-5100
7 | Facsimile: 714-546-9035

8 | Attorneys for Plaintiff
CITY OF LA QUINTA, a California Municipal corporation
9 |

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | FOR THE COUNTY OF RIVERSIDE

12 | CITY OF LA QUINTA, a California Municipal Corporation,
              Case No.

13 |           Plaintiff,
              Assigned for All Purposes to: Department:

14 |       v.

15 | SILVERROCK DEVELOPMENT
16 | COMPANY, LLC, a Delaware limited liability company; THE ROBERT GREEN
17 | COMPANY, a California corporation; RGC LA QUINTA II, LLC, a Delaware limited liability
18 | company; SILVERROCK PHASE I, LLC, a Delaware limited liability company;
19 | SILVERROCK LAND II, LLC, a Delaware limited liability company; SILVERROCK
20 | LODGING, LLC, a Delaware limited liability company; SILVERROCK LIFESTYLE
21 | RESIDENCES, LLC, a Delaware limited liability company; SILVERROCK LUXURY
22 | RESIDENCES, LLC, a Delaware limited liability company; RGC PA789, LLC, a
23 | Delaware limited liability company; AXIA TALUS, LLC, a Utah limited liability company;
24 | ROBERT S. GREEN JR., an individual; FRED SCHUSTER, an individual; PAREKH
25 | FAMILY TRUST; MCCOY REVOCABLE TRUST; BILLINGS REALTY, LLC;
26 | GEORGE J. HEUSER REVOCABLE TRUST; ERIC BERANEK; HECTOR DANIEL
27 | BERANEK; TRAUB FAMILY REVOCABLE TRUST DATED JANUARY 22, 2015; SVR
28 | CAPITAL TRUST; KURTIN FAMILY TRUST; KENNETH AND THERESA GREEN

**COMPLAINT FOR:**

1. **BREACH OF CONTRACT**

2. **FRAUD**

3. **SLANDER OF TITLE**

4. **QUIET TITLE**

5. **DECLARATORY AND INJUNCTIVE RELIEF**

[Filed Concurrently with Plaintiff's Compendium of Exhibits]

Rutan & Tucker, LLP
attorneys at law

2934/015610-0204
20858814.2 a07/24/24

| | |
|---|---|
| 1 | FAMILY TRUST; DUCLOS FAMILY |
| | REVOCABLE TRUST; BRYAN D. HOLKER |
| 2 | IRA; DIANE CIMARUSTI; CLAIRE |
| | FRUHWIRTH TRUST; JASON PARR; |
| 3 | KEVIN AND LINDY WELK; LTMDP |
| | LIVING FAMILY TRUST; ERIC LEITSTEIN; |
| 4 | BILL AND SUSAN HOEHN FAMILY |
| | TRUST; RICHARD & LEHN GOETZ; |
| 5 | JONATHAN P. FREDRICKS; MACK |
| | REVOCABLE TRUST; and DOES 1-50, |
| 6 | inclusive, |
| 7 | Defendants. |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Rutan & Tucker, LLP
*attorneys at law*

Plaintiff City of La Quinta (the "City" or "Plaintiff"), alleges as follows:

**INTRODUCTION**

1.      Plaintiff is a municipal corporation and charter city organized under the laws of the State of California and brings this action in that capacity.

2.      Plaintiff is informed and believes, and on that basis alleges that Defendant Silverrock Development Company, LLC ("SDC") is a Delaware limited liability company registered to do and doing business in the State of California, and, more particularly, in the County of Riverside.

3.      Plaintiff is informed and believes, and on that basis alleges that Defendant the Robert Green Company ("Robert Green Company") is a California corporation registered to do and doing business in the State of California, and, more particularly, in the County of Riverside, and the manager of SDC.

4.      Plaintiff is informed and believes, and on that basis alleges that Defendant RGC La Quinta II, LLC ("RGC") is a Delaware limited liability company registered to do and doing business in the State of California, and, more particularly, in the County of Riverside, and the co-manager of SDC.

5.      The City is informed and believes and thereupon alleges that Defendant Robert S. Green, Jr. ("Green") is the President and Chief Executive Officer of RGC and that Green controls SDC and its affiliates as his alter egos.[1]

6.      The City is informed and believes and thereupon alleges that Defendant Fred Schuster ("Schuster") is the Executive Vice President and Chief Investment Officer of RGC and that Schuster controls SDC and its affiliates as his alter egos.

7.      Plaintiff is informed and believes, and on that basis alleges that Defendant Silverrock Phase I, LLC ("SRPI") is a Delaware limited liability company registered to do and doing business in the State of California, and, more particularly, in the County of Riverside, and is

---

[1] "SDC and its affiliates" refer to SDC, Robert Green Company, Green, Schuster, RGC, SRPI, SRL 2, SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789, and any other affiliates of SDC, as well their directors, officers, employees, agents and assigns as each of Defendants are alter egos of one another.

**Rutan & Tucker, LLP**
*attorneys at law*

1  an affiliate of SDC that is either owned or controlled, or both, by SDC.

2         8.     Plaintiff is informed and believes, and on that basis alleges, that Defendant

3  Silverrock Land II, LLC ("SRL 2") is a Delaware limited liability company registered to do and

4  doing business in the State of California, and, more particularly, in the County of Riverside, and is

5  an affiliate of SDC that is either owned or controlled, or both, by SDC.

6         9.     Plaintiff is informed and believes, and on that basis alleges, that Defendant

7  Silverrock Lodging, LLC ("SR Lodging") is a Delaware limited liability company registered to do

8  and doing business in the State of California, and, more particularly, in the County of Riverside,

9  and is an affiliate of SDC that is either owned or controlled, or both, by SDC.

10        10.    Plaintiff is informed and believes, and on that basis alleges, that Defendant

11  Silverrock Lifestyle Residences, LLC ("SR Lifestyle") is a Delaware limited liability company

12  registered to do and doing business in the State of California, and, more particularly, in the County

13  of Riverside, and is an affiliate of SDC that is either owned or controlled, or both, by SDC.

14        11.    Plaintiff is informed and believes, and on that basis alleges, that Defendant

15  Silverrock Luxury Residences, LLC ("SR Luxury") is a Delaware limited liability company

16  registered to do and doing business in the State of California, and, more particularly, in the County

17  of Riverside, and is an affiliate of SDC that is either owned or controlled, or both, by SDC.

18        12.    Plaintiff is informed and believes, and on that basis alleges, that Defendant RGC

19  PA789, LLC ("RGC/PA789") is a Delaware limited liability company registered to do and doing

20  business in the State of California, and, more particularly, in the County of Riverside, and is an

21  affiliate of SDC that is either owned or controlled, or both, by SDC.

22        13.    Plaintiff is informed and believes, and on that basis alleges that the Robert Green

23  Company is the Manager for SDC, RGC, SRPI, SRL 2, SR Lodging, SR Lifestyle, SR Luxury,

24  RGC/PA789, and any other affiliates of SDC.  Plaintiff further is informed and believes, and on

25  that basis alleges that Green is the President and Chief Executive Officer of SDC, RGC, SRPI,

26  SRL 2, SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789, and any other affiliates of SDC.

27        14.    As used in this Complaint, the term "Developer" or "Defendant Developer" shall

28  mean and refer to the Developer entities SDC, Robert Green Company, Green, Schuster, RGC,

1  SRPI, SRL 2, SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789, and any other affiliates of

2  SDC, as well their directors, officers, employees, agents and assigns.

3      15.    There exists, and at all times herein mentioned there existed, a unity of interest and

4  ownership between Defendants SDC, Robert Green Company, Green, Schuster, RGC, SRPI,

5  SRL 2, SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789, and any other affiliates of SDC, as

6  well their directors, officers, employees, agents and assigns such that any individuality and

7  separateness between Defendants have ceased, and these entities and persons are alter egos for one

8  another.  Adherence to the fiction of the separate existence of Defendants as distinct entities would

9  permit abuse of the limited liability company privilege, sanction fraud, and promote injustice.

10     16.    Plaintiff is informed and believes, and on that basis alleges that Defendant Axia

11  Talus, LLC ("Axia") is a Utah limited liability company, registered to do and doing business in

12  the State of California, and, more particularly, in the County of Riverside.

13     17.    Plaintiff is informed and believes, and on that basis alleges that Defendant Parekh

14  Family Trust ("Parekh") is either an individual or entity, doing business in the State of California,

15  and, more particularly, in the County of Riverside.

16     18.    Plaintiff is informed and believes, and on that basis alleges that Defendant McCoy

17  Revocable Trust ("McCoy") is either an individual or entity, doing business in the State of

18  California, and, more particularly, in the County of Riverside.

19     19.    Plaintiff is informed and believes, and on that basis alleges that Defendant Billings

20  Realty, LLC, ("Billings Realty") is a limited liability company, registered to do and doing

21  business in the State of California, and, more particularly, in the County of Riverside.

22     20.    Plaintiff is informed and believes, and on that basis alleges that Defendant George

23  J. Heuser Revocable Trust ("Heuser") is either an individual or entity, doing business in the State

24  of California, and, more particularly, in the County of Riverside.

25     21.    Plaintiff is informed and believes, and on that basis alleges that Defendant Eric

26  Beranek ("Eric Beranek") is either an individual or entity, doing business in the State of

27  California, and, more particularly, in the County of Riverside.

28     22.    Plaintiff is informed and believes, and on that basis alleges that Defendant Hector

Rutan & Tucker, LLP
*attorneys at law*

2934/015610-0204
20858814.2 a07/24/24

Daniel Beranek ("Hector D Beranek") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

23.     Plaintiff is informed and believes, and on that basis alleges that Defendant Traub Family Revocable Trust Dated January 22, 2015 ("Traub Family Trust") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

24.     Plaintiff is informed and believes, and on that basis alleges that Defendant SVR Capital Trust ("SVR Capital") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

25.     Plaintiff is informed and believes, and on that basis alleges that Defendant Kurtin Family Trust ("Kurtin Family Trust") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

26.     Plaintiff is informed and believes, and on that basis alleges that Defendant Kenneth and Theresa Green Family Trust ("Kevin/Theresa Green Family Trust") is either an individual(s) or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

27.     Plaintiff is informed and believes, and on that basis alleges that Defendant Duclos Family Revocable Trust ("Duclos") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

28.     Plaintiff is informed and believes, and on that basis alleges that Defendant Bryan D. Holker IRA ("Holker IRA") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

29.     Plaintiff is informed and believes, and on that basis alleges that Defendant Diane Cimarusti ("Cimarusti") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

30.     Plaintiff is informed and believes, and on that basis alleges that Defendant Claire Fruhwirth Trust ("Fruhwirth") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

31.     Plaintiff is informed and believes, and on that basis alleges that Defendant Jason

Parr ("Parr") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

32.    Plaintiff is informed and believes, and on that basis alleges that Defendant Kevin and Lindy Welk ("Welk") is either an individual(s) or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

33.    Plaintiff is informed and believes, and on that basis alleges that Defendant LTMDP Living Family Trust ("LTMDP") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

34.    Plaintiff is informed and believes, and on that basis alleges that Defendant Eric Leitstein ("Leitstein") is either an individual or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

35.    Plaintiff is informed and believes, and on that basis alleges that Defendant Bill and Susan Hoehn Family Trust ("Hoehn") is either an individual(s) or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

36.    Plaintiff is informed and believes, and on that basis alleges that Defendant Richard & Lehn Geotz ("Goetz") is either an individual(s) or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

37.    Plaintiff is informed and believes, and on that basis alleges that Defendant Jonathan P. Fredricks ("Fredricks") is either an individual(s) or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

38.    Plaintiff is informed and believes, and on that basis alleges that Defendant Mack Revocable Trust ("Mack Trust") is either an individual(s) or entity, doing business in the State of California, and, more particularly, in the County of Riverside.

39.    Plaintiff is informed and believes, and on that basis alleges that Defendants Axia, Parek, McCoy, Billings Realty, Heuser, Eric Beranek, Hector D Beranek, Traub Family Trust, SVR Capital, Krutin Family Trust, Kevin/Theresa Green Family Trust, Duclos, Holker IRA, Cimarusti, Fruhwirth, Parr, Welk, LTMDP, Leitstein, Hoehn, Goetz, Fredricks, and Mack Trust (collectively, referred to as the "Unknown and Unapproved Equity Investors") were at some time,

1    prior to July 1, 2024, investors with and/or contributors of funds to Developer.

2        40.    Plaintiff is unaware of the true names and capacities of Defendants Does 1 through

3    50, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend

4    this Complaint to show the true names and capacities of such fictitiously named defendants when

5    the same have been ascertained or upon proof at the trial of this matter.  Plaintiff is informed and

6    believes, and based thereon alleges, that each of the fictitiously named defendants is legally

7    responsible for the events and damages alleged herein.

8        41.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant

9    times, certain defendants were acting as the agents, servants, employees, alter egos, successors or

10   predecessors-in-interest, of others of the defendants, and were acting within the course and scope

11   of such relationship, with the knowledge, express or implied, of each such other named defendant.

12                                **JURISDICTION AND VENUE**

13       42.    Jurisdiction and venue is proper in this Court under Code of Civil Procedure

14   sections 392 and 760.050(a) because the real property that is the subject of this action is located in

15   the County of Riverside, State of California.

16       43.    Jurisdiction and venue is further proper in this Court pursuant to Section 502 of the

17   Original PSDA (as defined below), which states that actions to enforce the PSDA (as defined

18   below) can be brought in the Superior Court of the County of Riverside, California.  The MOU (as

19   defined below) also states in Section 6.1 that this Court "shall have exclusive jurisdiction of any

20   litigation between the parties concerning this MOU."

21                                **FACTUAL BACKGROUND**

22       44.    The City owned approximately 525 acres of land within the City of La Quinta

23   generally referred to and known as the "SilverRock Resort Area" and subject to a Specific Plan

24   adopted by the La Quinta City Council and enforceable as a land use governing document

25   pursuant to the Planning and Zoning Law, California Government Code section 65000 *et seq.*

26                        **The Original PSDA and Development Agreement**

27       45.    On or about November 19, 2014, the City and SDC entered into a Purchase, Sale

28   and Development Agreement (the "Original PSDA") wherein the City agreed to convey to SDC,

and SDC agreed to purchase, specified "Parcels" and "Planning Areas" (or "PAs") of real property in the SilverRock Resort Area, consisting of what was referred to as the "Phase 1 Property" and "Phase 2 Property" in the Original PSDA.  A true and correct copy of the Original PSDA (without exhibits) is attached to the Compendium of Exhibits ("COE") as **Exhibit 1**.  The COE is filed concurrently with this Complaint.

46.    In addition to agreeing to purchasing and owning specified Parcels with corresponding Project Areas, SDC agreed to construct a destination resort, residential and commercial project, and related public infrastructure improvements, consisting of "Project Components" as described in the Original PSDA and briefly summarized below:

a.    A "*Luxury Hotel*" (identified as PA 2 (see, Original PSDA, Attachment No. 2 [Site Map])) which means the Project Component that consists of Developer's construction and subsequent operation of an upscale, luxury, full-service single-story hotel containing not less than one hundred twenty (120) luxury hotel rooms, that offers luxury amenities, full service accommodations, a full-service sit-down restaurant, a first class spa and fitness facility, and pools, all so further described in the Scope of Development and Specific Plan;

b.    A "*Luxury Branded Residential Development*" (identified as PA 3 (see, Original PSDA, Attachment No. 2 [Site Map])) which means the Project Component that consists of Developer's construction of approximately thirty-five (35) luxury single-family detached Resort Residential Dwelling Units;

c.    A "*Lifestyle Hotel*" (identified as PA 5 (see, Original PSDA, Attachment No. 2 [Site Map])) which means the Project Component that consists of Developer's construction and subsequent operation of a modern-style hotel containing not less than a sufficient number of hotel guest rooms that, when added to the number of hotel guest rooms at the Luxury Hotel, will result in the Project having an aggregate of at least three hundred forty (340) total

1    hotel guest rooms, and providing food and beverage services, a pool, a

2    surface parking lot, and other related amenities;

3    d.  A "*Lifestyle Branded Residential Development*" (identified as PA 6 (see,

4        Original PSDA, Attachment No. 2 [Site Map])) which means the Project

5        Component that consists of Developer's construction of approximately sixty

6        (60) one and/or two-story luxury, condominium-style Resort Residential

7        Dwelling Units that would be developed and subsequently operated in

8        conjunction with the Lifestyle Hotel;

9    e.  A "*Conference and Shared Service Facility*" (identified as PA 4 (see,

10       Original PSDA, Attachment No. 2 [Site Map])) which means the Project

11       Component that consists of Developer's development and subsequent

12       operation of a conference and shared service facility containing space

13       designed and designated for conferences and banquets, back-of-house

14       support services, and management function space shared by the Lifestyle

15       Hotel and Luxury Hotel, and a surface parking lot, all as further described

16       in the Scope of Development and Specific Plan;

17   f.  A "*Permanent Golf Clubhouse*" (identified as PA 10A (see, Original PSDA,

18       Attachment No. 2 [Site Map])) which means the Project Component that

19       consists of Developer's development of a permanent public clubhouse to

20       serve the Golf Course;

21   g.  A "*Promenade Mixed-Use Village*" (identified as PAs 7 and 9 (see, Original

22       PSDA, Attachment No. 2 [Site Map])) which means the Project Component

23       consisting of Developer's development of up to two hundred twenty-five

24       thousand (225,000) salable square feet of residential space containing

25       between one hundred ten (110) and two hundred twenty-five (225) Resort

26       Residential Dwelling Units, together with commercial space comprising

27       between twelve thousand nine hundred (12,900) and forty thousand

28       (40,000) square feet of mixed-use space comprised of permanent retail and

1   seasonable stand-alone "pop-up" space, all as further described in the Scope

2   of Development and Specific Plan;

3   h.   A "*Resort Residential Village*" (identified as PA 8 (see, Original PSDA,

4   Attachment No. 2 [Site Map])) which means the Project Component that

5   consists of Developer's development and subsequent operation of

6   approximately one hundred sixty (160) Residential Dwelling Units, an on-

7   site amenity center consisting of a clubhouse and a reception and concierge

8   desk, all as further described in the Scope of Development and Specific

9   Plan;

10   i.   "*Master Site Infrastructure Improvements*" or "*MSII*" which means the

11   Project Component consisting of Developer's construction and installation

12   of all of the backbone infrastructure improvements required to serve the

13   respective Project Components, including those identified in Subparagraphs

14   (a)-(h) above and their respective Planning Areas; and

15   j.   A "*Golf Course Realignment*" which means the Project Component that

16   consisted of Developer's realignment of certain portions of the existing

17   Gold Course (as defined in the PSDA) to facilitate the development of the

18   Luxury Hotel and Luxury Branded Residential Project Components and

19   affecting those Project Areas pursuant to the PSDA and other project

20   approvals; Developer has completed the Golf Course Realignment Project

21   Component, and the City retained ownership of, and still owns, fee title to

22   all of the real property that consists of the Golf Course (PA 1 and covering

23   approximately 179 acres of the SilverRock Resort Area).

24   47.   Pursuant to the Original PSDA, the original Phase 1 Property consisted of the

25   "Luxury Hotel" and the "Luxury Branded Residential Development," and the original Phase 2

26   Property, consisted of the "Lifestyle Hotel" and the "Lifestyle Branded Residential Development,"

27   among other specified Project Components.

28   48.   Concurrent with the Original PSDA, on or about November 19, 2014, the City and

1  SDC entered into Development Agreement 2014-1001 (the "Development Agreement") pursuant

2  to state law (California Government Code section 65864 *et seq.* and referred to as the "Statutory

3  Development Agreement Law"), vesting certain development obligations with SDC and

4  subjecting SDC to the City's rights and oversight for those portions of the SilverRock Resort Area

5  to be conveyed to SDC.

6      49.    The Development Agreement required SDC to develop the Planning Areas and

7  Project Components in accordance with the PSDA.  The Development Agreement specifies that

8  approximately 145 acres of the total SilverRock Resort Area would be conveyed to SDC, covering

9  Planning Areas (PAs) 2, 3, 4, 5, 6, 7, 8, 9, and portion of 10A, and corresponding parcels of

10  property with those Planning Areas (see, Development Agreement, Recital E & Exhibits A & B).

11  At the time the Development Agreement was recorded, the SilverRock Resort Area was

12  subdivided by then-existing Parcel Map No. 33367, and the entire SilverRock Resort Area

13  consisted of Parcels 1-22 and Parcels A-N of Parcel Map 33367.  Pursuant to the State

14  Development Agreement Law, the Development Agreement was adopted by La Quinta City

15  Council Ordinance No. 520 and recorded in the Official Records for Riverside County, California

16  ("Recorder's Office") on December 18, 2014, as Instrument No. 2014-0484106.

17      50.    The recorded Development Agreement runs with the land and places all parties on

18  constructive notice of those terms and conditions.  Indeed, the Original PSDA was incorporated by

19  reference into the Development Agreement, and where there is a conflict between the

20  Development Agreement and the Original PSDA, the Original PSDA and any amendments to the

21  Original PSDA would control.  (Development Agreement, § 2.1.2; Original PSDA, § 612.)  A true

22  and correct copy of Ordinance No. 520 and the recorded Development Agreement is attached in

23  the COE as **Exhibit 2**.

24                          **Amendments to the PSDA**

25      51.    Pursuant to the Original PSDA, the City and SDC had the authority to amend the

26  Original PSDA by mutual agreement of the parties.  Between October 29, 2015, and November

27  16, 2023, the City and SDC entered into five amendments to the PSDA.

28      52.    The City and SDC entered into Amendment No. 1 to the Original PSDA ("First

Amendment") dated October 29, 2015 to, among other things, update the Site Map and the various timeframes within the Original PSDA.

53.     On or about April 18, 2017, the City and SDC entered into Amendment No. 2 to the Original PSDA ("Second Amendment") to modify from the Phase 1 Property and Phase 2 Property in the Original PSDA (and the associated phased development obligations) to the "Phase 1A Property" and the "Phase 1B Property," with corresponding "Phase 1A" and "Phase 1B," all as defined in the Second Amendment.  In addition to those properties, additional phased properties were created: "Phase 1C (Golf Course) Property," "Phase 1D (Ahmanson Ranch House) Property," and "Phase 1E (Perimeter Landscaping and Trails) Property."  In connection with proposed modifications by SDC for the phasing of development of the Project Components tied to Planning Areas 2, 3, 4, 5, 6, 7, 8, 9, and portion of 10A (see above), the City processed and approved, pursuant to the California Subdivision Map Act (Government Code section 66410 *et seq.*, and referred to as the "Map Act") and applicable City law, Parcel Map No. 37207, which re-subdivided the SilverRock Resort Area in the following parcels: Parcels 1-20 inclusive and Parcels A-G inclusive.  With the adoption of Parcel Map No. 37207 and approval of the Second Amendment, the "Parcels" applicable to the respective "Planning Areas," for purposes of SDC's development of the Project, were tied to the Parcels identified in Parcel Map No. 37207.  A true and correct copy of the Second Amendment and its Exhibits "A" through "D" (which exhibits relate to Parcels and PAs for the Phase 1A Property and Phase 1B Property) is attached in the COE as **Exhibit 3**.

54.     As a part of the Second Amendment, the City and SDC modified the property subject to the PSDA, as amended, to include the Phase 1A Property and Phase 1B Property, which comprised approximately 44.6 acres and 84.2 acres, respectively, and approximately 130 acres total.  The Phase 1A Property consists of Parcels 1, 3, 4, 5, and 6 of Parcel Map No. 37207, and Phase 1B Property consists of Parcels 7, 8, 9, 10, 11, and 12, and Parcels D, E, F, and G of Parcel Map No. 37207.  Together, the Phase 1A Property and Phase 1B Property correspond, with some modifications to parcel boundaries and acreage, to the Project Components and acreage attached to Planning Areas 2, 3, 4, 5, 6, 7, 8, 9, and portion of 10A from the Original PSDA.  (See,

Paragraph 46, above; also see, Second Amendment, Recitals A, E & F, and Exhibit A [Site Map], Exhibit B [Parcel Map No. 37207], Exhibit C [Legal Descriptions of Phase 1A Property and Phase 1B Property], and Exhibit D [Schedule of Acreage].)

55.     By way of Grant Deed dated May 3, 2017, and recorded on November 6, 2017 as Instrument No. 2017-0463950 in the Recorder's Office, as amended by an Amendment to Grant Deed, recorded on November 28, 2018 as Instrument No. 2018-0464670 in the Recorder's Office, the City conveyed the Phase 1A Property to SDC (the "Phase 1A Property Grant Deed").  True and correct copies of Grant Deed and Amendment to Grant Deed that are the Phase 1A Property Grant Deed are attached in the COE as **Exhibit 4**.

56.     Thereafter, SDC assigned to SRPI (a Developer entity and affiliate of SDC), and SRPI assumed from Developer, with the consent of the City, all of Developer's right, title, and interest in the Phase 1A Property and the "Project Agreements" (which include the Development Agreement and PSDA, as amended) as they pertain to the Phase 1A Property by an Assignment and Assumption Agreement, recorded on November 28, 2018 as Instrument No. 2018-0465379 in the Recorder's Office.  SDC transferred to SRPI the Phase 1A Property by Grant Deed recorded on November 28, 2018 as Instrument No. 2018-0464673 in the Recorder's Office.

57.     On or about November 28, 2018, City and SDC entered into Amendment No. 3 to the Original PSDA ("Third Amendment") to, among other things: (i) Set forth amended and restated modifications for the development of the Phase 1A Property and set forth the terms and conditions for the conveyance and sale of the Phase 1B Property from the City to SDC; (ii) Modify the Master Site Infrastructure Improvements (MSII) (as defined in the Original PSDA) Phasing Plan; (iii) Modify the Schedule of Performance; (iv) Specify assignment and assumptions of interests from SDC (and any Developer entity); and (v) Incorporate provisions allowing for the closing of the construction loan for the Phase 1A Property and Phase 1B Property.  A true and correct copy of the Third Amendment and its Exhibits "A" through "D" (which exhibits relate to Parcels and PAs for the Phase 1A Property and Phase 1B Property) is attached in the COE as **Exhibit 5**.

58.     Pursuant to the Third Amendment, the City conveyed to SRPI the Phase 1B

Property by Grant Deed, dated November 28, 2018 and recorded on November 28, 2018, as Instrument No. 2018-0464674 in the Recorder's Office (the "Phase 1B Property Grant Deed"). A true and correct copy of the Phase 1B Property Grant Deed is attached in the COE as **Exhibit 6**.

59. On or about October 12, 2021, the City and SDC entered into Amendment No. 4 to the Original PSDA ("Fourth Amendment") to, among other things: (i) Set forth terms and conditions agreed upon by the City and SDC for the "Revised Capitalization" (as defined therein) to cover the then-projected remaining costs, and financing of those costs, to develop the Phase 1A Property and Phase 1B Property and all Project Components thereon (excluding the Promenade Mixed-Use Village and Resort Residential Village); (ii) Modify the Master Site Infrastructure Improvements (MSII) Phasing Plan; (iii) Modify the Schedule of Performance; (iv) Specify the operation by a single hotel operator of short-term vacation rentals at the Luxury Branded Residential Development and Lifestyle Branded Residential Development, as set forth therein; (v) Modify the rebate reduction based on transient occupancy tax ("TOT") receipts; (vi) Identify "Project Milestones" (as defined therein) of which failing to meet would result in increases to the purchase price for the "Future Resort Property Phase" if and when there is an ability for SDC to validly exercise the option to purchase the Future Resort Property (as set forth therein); (vii) If and when a valid exercise by SDC of the option to purchase the Future Resort Property occurs, clarify allowable uses on the Future Resort Property; and (viii) Incorporate provisions allowing for the closing of the construction loan financing for the Phase 1A Property and Phase 1B Property, as more particularly described in the Fourth Amendment. A true and correct copy of the Fourth Amendment (without exhibits) is attached in the COE as **Exhibit 7**.

60. On or about November 16, 2023, the City and SDC entered into the most recent amendment, Amendment No. 5 to the Original PSDA ("Fifth Amendment"). The Fifth Amendment was entered into to avoid a default under the Original PSDA, as amended, and to otherwise: (i) memorialize revised terms and conditions, agreed upon by the City and SDC, for new "Recapitalization Lenders" (as defined therein) to revise and update the City-approved financing for the development of the Phase 1A Property and Phase 1B Property, *which required SDC close escrow on the updated, City-approved financing by June 30, 2024* [emphasis added];

(ii) modify the Schedule of Performance and phasing of development; (iii) memorialize SDC's missed Project Milestones (as identified therein); and (iv) make additional clarifications pertaining to the PSDA.  A true and correct copy of the Fifth Amendment and its Exhibit A (which exhibit has the updated Schedule of Performance) is attached in the COE as **Exhibit 8**.

61.     Pursuant to the Original PSDA, as amended through the Fifth Amendment, the City's rights and remedies against SDC (and the Developer entities) have been and remain cumulative, such that the exercise or non-exercise by the City of any right or remedy available at law or in equity, including any right or remedy under the Original PSDA as amended, did not and does not exclude the ability of the City to assert any other right or remedy against SDC (or any Developer entity).

62.     The Original PSDA, and the First, Second, Third, Fourth and Fifth Amendments are referred collectively in this Complaint as the "PSDA."  Pursuant to Section 605 of the Original PSDA, which remains in full force and effect for all amendment including the Fifth Amendment, the City Manager has the authority, on behalf of the City, to enter implementing agreements and take other related contractual actions relating to the PSDA and the implementation and development of the Project Components.

63.     During the course of the amendments to the PSDA, SDC proposed to rename the development as the "Talus" project, formerly referred to as the "SilverRock" project.

**Lot Line Adjustments, Final Tract Map, and Parcels**

**Comprising the "SDC-Owned Properties"**

64.     As alleged above, the Second Amendment to the PSDA established Phase 1A and Phase 1B for development of the project, with phasing for corresponding Planning Areas with the Phase 1A Property and Phase 1B Property conveyances to SDC.  After the conveyances of the Phase 1A Property and Phase 1B Property, SDC applied for, and the City processed and approved pursuant to the Map Act and applicable City law, a series of "Lot-Line Adjustments" or "LLAs" so that Parcel boundary lines and acreage could further be modified to comply with the build-out of PAs 2, 3, 4, 5, 6, 7, 8, 9, and portion of 10A, pursuant to the PSDA, as amended.

65.     The Phase 1A Property covers the Planning Areas identified on the Site Map as

"PA 2," PA 3," and "PA 4," and the corresponding parcels for these planning areas are identified as Parcels 1, 3, 4, 5, and 6 from Parcel Map No. 37207. The following lists the Project Components with corresponding acreage represented by each planning area for a total acreage of approximately 44.6 acres.

      a.      The Luxury Hotel is located in PA 2 and is approximately 16.4 acres.

      b.      The spa site at the Luxury Hotel is located in PA 2 and is approximately 1.9 acres.

      c.      The Luxury Hotel parking lot is located in PA 2 and is approximately 3.3 acres.

      d.      The Luxury Branded Residential Development is located in PA 3 and is approximately 13.9 acres.

      e.      The Conference and Shared Service Facility is located in PA 4 and is approximately 9.1 acres.

66.    The legal description of Phase 1A Property is as follows: Parcels 1, 3, 4, 5, and 6 of Parcel Map No. 37207 per map filed in Book 242, Pages 72 through 87 inclusive, of Parcel Maps, in the office of the County Record of Riverside County, State of California.

67.    The Phase 1B Property covers the Planning Areas identified as "PA 5," "PA 6," "PA 7," "PA 8," "PA 9," and "PA 10A-1" and the corresponding parcels for these Planning Areas are identified as Parcels 7, 8, 9, 10, 11, and 12, and Parcels D, E, F, and G of Parcel Map No. 37207. The following lists the Project Components with corresponding acreage represented by each planning area for a total acreage of approximately 84.2 acres:

      a.      The Lifestyle Hotel is located in PA 5 and is approximately 11.4 acres.

      b.      The Lifestyle Branded Residential Development is located in PA 6 and is approximately 10.3 acres.

      c.      The Promenade Mixed-Use Village (Part 1) is located in PA 7 and is approximately 15.5 acres.

      d.      The Resort Residential Village is located in PA 8 and is approximately 22 acres.

1          e.       The Promenade Mixed-Use Village (Part 2) is located in PA 9 and is

2  approximately 13.5 acres.

3          f.       The Permanent Golf Clubhouse is located in PA 10A-1 and is

4  approximately 7 acres.

5          68.     The legal description of Phase 1B Property is as follows: Parcels 7, 8, 9, 10, 11, and

6  12, and Parcels D, E, F, and G, of Parcel Map No. 37207 per map filed in Book 242, Pages 72

7  through 87 inclusive of Parcel Maps, in the office of the County Record of Riverside County,

8  State of California.  (See, Second Amendment, Recitals A, E & F, and Exhibit A [Site Map],

9  Exhibit B [Parcel Map No. 37207], Exhibit C [Legal Descriptions of Phase 1A Property and Phase

10  1B Property, among other legal descriptions], and Exhibit D [Schedule of Acreage]; Third

11  Amendment, Recitals F & G, and Exhibit A [Site Map], Exhibit B [Parcel Map No. 37207],

12  Exhibit C [simplified legal description for all parcels under Parcel Map No. 37207], and Exhibit D

13  [Schedule of Acreage].)

14          69.     For the purpose of preparing and constructing the Project Components, Developer

15  submitted and the City approved four (4) Lot Line Adjustments (LLAs) to adjust acreage and

16  portions of Parcels and Parcel boundaries within and/or immediately adjacent to the Phase 1A

17  Property and Phase 1B Property, as more particularly described and depicted in those Lot Line

18  Adjustments (collectively, the "City-Approved LLAs"), which include (i) Lot Line Adjustment

19  (LLA) 2020-0005, (ii) Lot Line Adjustment (LLA) 2020-0007, (iii) Lot Line Adjustment (LLA)

20  2020-0010, and (iv) Lot Line Adjustment 2023-0003, all of which are public records on file with

21  the City and referenced in recorded instruments in the Recorder's Office when such LLA touches

22  and concerns the legal description and boundary line for a Parcel that was conveyed to SDC by as

23  either part of the Phase 1A Property or Phase 1B Property, as applicable.  True and correct copies

24  of LLAs 2020-0005, 2020-0007, 2020-0010, and 2023-0003 are attached in the COE as

25  **Exhibits 9, 10, 11, and 12**, respectively.

26          70.     The real property, and any partial improvements thereon, that have been conveyed

27  by the City to SDC (or affiliate of SDC) as the Phase 1A Property and Phase 1B Property, as those

28  Parcels therein have been modified by one or more of the City-Approved LLAs, is collectively

Rutan & Tucker, LLP
*attorneys at law*

1    referred to in this Complaint as the "**SDC-Owned Properties**."

2        71.    After processing the City-Approved LLAs, SCD applied for and the City processed

3    and approved, pursuant to the Map Act and applicable City law, the Final Tract Map No. 37730,

4    which is a subdivision of Parcel 1 and portion of Parcel 17 of Parcel Map. No. 37207.  The Final

5    Tract Map No. 37730 subdivided Parcel 1 and portion of Parcel 17 into Lots 1 through 29, and

6    enumerated lettered lots for common area, where these lots would serve as custom homesites for

7    the Luxury Branded Residential Development to be developed as part of PA 3.  As such, Lots 1

8    through 29 as shown on Final Tract Map No. 37730 are part of the SDC-Owned Properties.

9        72.    The dispute and causes of action that the City brings against the Defendants in this

10    Complaint are a result of Developer's actions on and after July 1, 2024, after Developer fell into

11    default under the Fifth Amendment, encumbering portions or all of the SDC-Owned Properties

12    with unapproved and illegal mechanics liens and deeds of trust, as Developer failed to comply

13    with the requirements under the PSDA to obtain *prior* City approval before obtaining any

14    financing, whether by secured lender or by unsecured equity investor, in furtherance of the

15    development and construction of the Project Components and corresponding Master Site

16    Infrastructure Improvements (MSII), all as more specifically alleged in the Paragraphs below.

17        <u>**The PSDA's and Grant Deeds' Restrictions on Refinancing and**</u>

18        <u>**the Recordation Of Deeds of Trust and/or Other Liens**</u>

19        73.    Due to the unique location of the SDC-Owned Properties, and the project to be

20    developed on the SDC-Owned Properties, as confirmed by the PSDA itself, "[t]he qualifications

21    and identity of Developer [SDC] as the developer and operator of high quality commercial resort

22    developments are of particular importance to the City."  (Original PSDA, § 603.)  To that end, the

23    City and SDC agreed to a series of provisions in the PSDA to ensure that the City's interest in this

24    regard would be protected.

25        74.    Section 603.1 of the Original PSDA generally prohibits the transfer of any of

26    SDC's interest in the SDC-Owned Properties (defined generally as "Transfer[s]" in the PSDA),

27    unless the proposed Transfer is either (a) approved by the City, "in its sole and absolute

28    discretion," or (b) if the Transfer occurs as the result of a series of specifically defined transactions

1   and events.  (See, Original PSDA, § 603.1(a)-(e); see also, Third Amendment, ¶ 5 [adding

2   additional Transfers for sales for Project Components on PAs 7, 8, and 9 if certain conditions are

3   met by SDC, and which have not been met].)  Under the PSDA, only SDC (or City-approved

4   SDC-affiliated entity) may own any portion or all of the SDC-Owned Properties and perform the

5   contractual obligations for a highly complex phased development and construction project.  No

6   other person or entity may own the fee interest to any portion or all of the SDC-Owned Properties

7   without the City's prior consent.

8       75.     As relevant here, the Original PSDA Section 603.1(b) and (c), restated by the Third

9   Amendment ("Section 603.1"), authorize: (i) an assignment to third parties, such as through the

10  grant of a deed of trust necessary for land acquisition, construction or permanent financing of the

11  project, or (ii) a Transfer to a lender that ultimately forecloses on such a deed of trust.  However,

12  for a deed of trust to be valid, Section 603.1 expressly requires that such financing agreements

13  *must be permitted* pursuant to Section 311 of the Original PSDA.

14      76.     Section 311.1 of the Original PSDA grants the City the right to review and either

15  approve or disapprove of the financing that SDC (or any Developer entity) wishes to utilize in

16  connection with the development of the project.  Pursuant to Section 311.1, *SDC (or any*

17  *Developer entity) has an affirmative obligation to notify the City of proposed financing and*

18  *obtain the City's prior approval for that financing*.  Moreover, other provisions in the PSDA

19  specifically require SDC (or any Developer entity) to receive the City's prior approval of any

20  financing for the construction of the project on the SDC-Owned Properties.

21      77.     For instance, Section 211 of the PSDA requires SDC (or any Developer entity) to

22  obtain the City's prior approval for any financing of the Master Site Infrastructure Improvements

23  (MSII) that would attach to any Project Components, and Section 304.4 of the PSDA expressly

24  provides that SDC (or any Developer entity) may *not* obtain building permits for any Project

25  Component until such time as SDC has satisfied, among other enumerated conditions, with respect

26  to such Project Component, that the City has approved the Project Component Financing pursuant

27  to Section 311.1 and that financing has closed escrow and be available to SDC.  As alleged above,

28  the requirements of Section 311.1, as with all terms and conditions in the PSDA, are incorporated

by reference into the Development Agreement and run with the land for the SDC-Owned Properties.

78.     Additionally, both the Phase 1A Property Grant Deed and Phase 1B Property Grant Deed also include a similar restriction on the Grantee's ability to transfer the properties at issue in those grant deeds, by prohibiting any transfer of ownership of the properties, unless the transfer was the result of a transaction or agreement that was approved pursuant to Section 603 of the PSDA.  (See Phase 1A Property Grant Deed, § 4; Phase 1B Property Grant Deed, § 4.)  Further, both grant deeds explicitly incorporate the PSDA, and its requirements, as covenants running with the land.  (See, Phase 1A Property Grant Deed, § 3; Phase 1B Property Grant Deed, § 3.)

79.     When the City has approved in the past or approves financing for future Project Component and corresponding Master Site Infrastructure Improvements (MSII) construction, said approved-financing is memorialized in writing, typically by an amendment to the PSDA.  For example, both the Fourth Amendment and Fifth Amendment reference the then City-approved "Revised Recapitalization" (see, Fourth Amendment, ¶ 2) and City-approved "Recapitalization Lenders" (see, Fifth Amendment, Recital K & ¶ 2).

80.     If SDC (or any Developer entity) fails to perform under the PSDA, as amended, including by failing to notify and/or obtain financing approval for any Project Component or corresponding Master Site Infrastructure Improvements, Section 501 of the Original PSDA generally provides that (1) prior to the City initiating any proceedings against SDC in connection with any "Default" (as defined), the City must deliver to SDC written notice of the Default, and (2) Developer shall not be considered in such Default if SDC cures such Default in thirty (30) days from the receipt of such notice or commences to cure said Default within thirty days from the receipt of such notice.

**City Learns of Developer Defaults on Loans, Leading To Foreclosure Proceedings And A Multi-Party Memorandum of Understanding and Agreement to Address Potential Default by Developer under the Fifth Amendment and Subsequent Developer Actions**

81.     As set forth in Recital K and Section 2 of the Fifth Amended, entered into November 16, 2023, the summary for the amendment revolved around SDC disclosing to the City

1   that, subsequent to the approval of the Fourth Amendment and during construction of the Luxury

2   Hotel, Lifestyle Hotel, Permanent Golf Clubhouse, and Conference and Shared Services Facility

3   Project Components and their appurtenant Master Site Infrastructure Improvements (MSII), the

4   City-approved "Lender" from the Fourth Amendment no longer was included in the "Revised

5   Capitalization" approved by the City under the Fourth Amendment and that construction had

6   halted on these Project Components and MSII from SDC's failure to pay contractors and

7   subcontractors.  To address the situation, SDC proposed, and the City approved *vis-à-vis* the Fifth

8   Amendment, the following creditors and financing/funding sources: First Pathway Partners for

9   EB-5 financing (which had closed on December 9, 2022), Keillor Capital, Silver Arch Capital,

10   Lieef Real Estate Energy Partners for C-Pace funding, and Ziegler Investment Banking.  These

11   creditors, referred to as the "Recapitalization Lenders" for "Recapitalization Loans," were

12   specifically approved by the City to pay unpaid debts to contractors, subcontractors, and existing

13   loan with Poppy Bank ("Poppy") secured by a deed of trust against portions of the SDC-Owned

14   Properties.  Significantly, SDC had an obligation to close on the Recapitalization Loans by

15   January 1, 2024, with an outside closing "drop dead" deadline of June 30, 2024, by which closing

16   on all Recapitalization Loans had to occur so construction of these Project Components and

17   related MSII would resume by that date.  (*See*, Fifth Amendment, § 3 & Ex. A, p.4 [Schedule of

18   Performance].)

19        82.    SDC failed to and did not close by June 30, 2024, on the City-approved

20   Recapitalization Loans, and as of June 30, 2024, was in default under the PSDA.

21        83.    Even before the June 30, 2024 deadline, but after the November 16, 2023 effective

22   date of the Fifth Amendment, the City started to receive information that significant amounts of

23   debt from equity investors (unsecured creditors) and one other unknown and unapproved

24   apparently secured creditor, Cypress Point Holdings, LLC ("Cypress"), remained unpaid and

25   owing, but SDC never informed the City during negotiations and approval date of the Fifth

26   Amendment of these significant amounts of debt owed by SDC.

27        84.    At all relevant times for the allegations in this Complaint, the Original PSDA, all

28   amendments and implementing agreements, including the Fifth Amendment, and the Development

Agreement, have been and remain public records subject to review and inspection to anyone, including Cypress and the Unknown and Unapproved Equity Investors named as Defendants (see Paragraph 39, above).  As such, Cypress and the Unknown and Unapproved Equity Investors had sufficient time to perform due diligence into any recorded instruments, public records (including the PSDA), and any other public documents of the City, which had restrictions on the SDC-Owned Properties and set forth the City's rights and remedies to protect the City's interest in having the project developed and completed.

85.    In this regard, the City was not given the opportunity to approve, and did not approve, for any Project Component or corresponding Master Site Infrastructure Improvements, the funding apparently solicited by SDC and provided by the Unknown and Unapproved Equity Investors, nor provided by Cypress originally in the form of an equity investment (unsecured) but then subsequently, pursuant to a settlement agreement between SDC and Cypress to which the City was not made aware of, in the form of a loan secured by a real property interest in a portion of the SDC-Owned Properties.  Notably, the City was not given any notice by SDC or the opportunity to approve the recordation of the Cypress Deed of Trust.

86.    Nonetheless, on or about January 10, 2024, the City received that certain "Important Notice/Notice of Default and Election to Sell Under Deed of Trust," recorded in the Recorder's Office as Document No. 2023-0363986 ("Cypress Default Notice").  The Cypress Default Notice was caused to be recorded by Cypress, a non-party to this litigation but a party to that certain MOU (defined below), and Cypress and Poppy Bank are relevant to the immediate actions taken by the City in response to SDC's failure to disclose material information concerning the amount of unpaid debt involved with the construction of the various Project Components.

87.    Upon learning of and receiving Cypress Default Notice, the City immediately contacted SDC to determine what had transpired to date in connection with a debt-secured interest held by Cypress.  Among other responses in order to require SDC to immediately address the Cypress Default Notice, SDC and the City entered into that certain Agreement to Waive and Modify Notice and Cure Period, dated February 7, 2024 ("Notice and Cure Agreement"), a PSDA implementing agreement whereby SDC agreed to waive the explicit notice and cure requirements

of Section 501 of the PSDA, and to modify those provisions such that the City only needed to give SDC seven (7) days, instead of thirty (30) days, to cure any default relating to the Cypress Default Notice.  If SDC failed to cure within seven (7) days, under the Notice and Cure Agreement, the City has the right to institute any proceedings pursuant to the PSDA.  A true and correct copy of the Notice and Cure Agreement is attached in the COE as **Exhibit 13**.

88.    Since the City received the Cypress Default Notice, the City received a notice from Cypress that it intended to pursue a foreclosure sale and scheduled a foreclosure sale on a portion of the SDC-Owned Properties.  Additionally, another secured creditor, Poppy, who was to be paid off by SDC with the closing of the Recapitalization Loans pursuant to the Fifth Amendment, also issued a notice of its intent to pursue a foreclosure sale and scheduled a foreclosure sale, on a portion of the SDC-Owned Properties.

89.    In response to the Cypress foreclosure and auction sale notice, the City immediately issued to SDC a NOTICE OF DEFAULT, dated April 17, 2024, requiring SDC within seven (7) days to cure the default by either (a) paying off to Cypress all debts to remove from title Cypress Default Notice and prevent any future foreclosure auction sale, or (b) enter into a forbearance agreement with Cypress and any other lienholders with a deed of trust to delay any foreclosure auction sale to allow for payments of SDC's debt owed to Cypress.  A true and correct copy of the City's April 17, 2024 Notice of Default (and foreclosure auction sale notice from Cypress) is attached in the COE as **Exhibit 14**.

90.    SDC failed to cure within seven (7) days its default as provided in the City's April 17, 2024 Notice of Default, and the City memorialized that failure by that certain FAILURE TO CURE NOTICE and CONFIRMATION OF DEFAULT, dated April 25, 2024, in which, among other provision, the City asserted it intends to exercise its rights under the PSDA as outlined in the April 17, 2024 Notice of Default, to protect the City's interests in the SDC-Owned Properties and the resumption and completion of the development and construction of the Project Components and appurtenant MSII.  A true and correct copy of the City's April 25, 2024 Failure to Cure Notice and Confirmation of Default is attached in the COE as **Exhibit 15**.

91.    Similarly, and in response to Poppy foreclosure and auction sale notice, the City

1    immediately issued to SDC a NOTICE OF DEFAULT, dated May 14, 2024, requiring SDC within

2    seven (7) days to cure the default by either (a) paying off to Poppy all debts to remove from title

3    Poppy's default notices and prevent any future foreclosure auction sale, or (b) enter into a

4    forbearance agreement with Poppy, Cypress, and any other lienholders with a deed of trust to

5    delay any foreclosure auction sale to allow for payments of SDC's debt owed to Cypress.  A true

6    and correct copy of the City's May 14, 2024 Notice of Default (and foreclosure auction sale notice

7    from Poppy) is attached in the COE as **Exhibit 16**.

8           92.    Plaintiff is informed and believes, and thereupon alleges, that SDC has not paid off

9    either Poppy or Cypress for the entire amounts of the debts owed to them and the grounds for their

10   respective notices of foreclosure auction sales as of the date of this Complaint.

11          93.    Additionally, after the City received the Cypress Default Notice, the prime

12   contractors that SDC has engaged for the development of the Talus (SilverRock) project, RD

13   Olson Construction Inc. ("Olson") and Granite Construction Company ("Granite"), had indicated

14   that they expected full payment on remaining unpaid amounts for work completed and subject to

15   mechanics liens recorded against all or portion of the SDC-Owned Properties and the subject of a

16   pending lawsuit in Riverside County Superior Court (lead case number CVPS2301220).

17   Moreover, Montage North America, LLC ("Montage"), the parent company for the Montage and

18   Pendry branded hotels (*i.e.,* the "Luxury Hotel" and "Lifestyle Hotel" Project Components,

19   respectively), have been engaged to have the project "jump start" given that construction had

20   ceased for almost one year due to SDC's failure to pay the contractors.

21              **The Memorandum of Understanding Relating to Default and**

22           **Developer Requirements (Purchase, Sale, and Development Agreement)**

23          94.    With foreclosures looming and pursuant to the City authority to protect its interests

24   under the PSDA, the City and multiple parties—including SDC (and its affiliated entities) entered

25   into the Memorandum of Understanding and Agreement relating to Default and Developer

26   Requirements (Purchase, Sale, And Development Agreement) [Implementing Agreement], dated

27   May 24, 2024 ("**MOU**") in order to the SDC-Owned Properties from foreclosure and to provide a

28   means to move forward with resuming project construction and completion of the project.  A true

1   and correct copy of the MOU is attached in the COE as **Exhibit 17**.

2       95.    In addition to the Defendant SDC and Developer,[2] the MOU is signed by the City,

3   Cypress and Poppy, contractors Olson and Granite, Montage, and Christopher M. George

4   ("CMG") (collectively, the "**MOU Parties**").

5       96.    CMG, the founder of a mortgage bank and known for responsible lending practices,

6   expressed interest to the City and other MOU Parties that CMG may be willing to pay the debts in

7   exchange for having the right to have the development project assigned to CMG from SDC.

8       97.    The MOU may be summarized as follows:  (1) There would be forbearance on

9   Cypress' and Poppy's foreclosures, such that action sales would be postponed to allow SDC and

10  then CMG to perform under the MOU; (2) SDC had until June 30, 2024 to close on the

11  Recapitalization Loans (as defined and identified in the Fifth Amendment), which would have

12  allowed SDC to pay all debts owed by SDC and resume and complete construction of the project;

13  (3) if SDC failed to timely close by June 30, 2024, then CMG has specified rights and obligations

14  for approximately two months, including the obligations to pay off the secured creditors and

15  mechanics liens, while gaining the right to have the project and development agreements with the

16  City assigned to CMG.

17      98.    Under the MOU, SDC and its affiliates agreed that if SDC failed to obtain funding,

18  "SDC shall assign (per section 4.2) any and all interest in the PSDA, Development Agreement,

19  and all other valid agreements relating to the construction, completion, and operation of the Talus

20  project (including the hotel operator agreements), with the exception of the Olson and Granite

21  agreements and convey fee simple ownership interest to the Developer-Held Properties [*i.e.*, SDC-

22  Owned Properties]" to CMG.  (See MOU, § 4.1, p. 4.)

23      99.    As alleged above, SDC failed to obtain funding to pay off all the debts owed by

24  SDC by June 30, 2024, and as of 11:59 p.m. Pacific Standard Time on June 30, 2024, SDC was

25  again in default under the PSDA.

26  / / /

27

28    [2]  Signatories to the MOU are Defendants SDC, Robert Green Company, Green, RGC, SRPI, SRL 2, SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789.

100.    On July 1, 2024, the City issued to SDC another NOTICE OF DEFAULT under the PSDA, and specifically the Fifth Amendment, because SDC failed to close on the Recapitalization Loans by June 30, 2024.  The Notice of Default gave SDC thirty (30) days to close on the Recapitalization Loans pursuant to the 30-day cure period in Section 501 of the PSDA, and the Notice of Default expressly provided that, as long as SDC complies with its obligations under the MOU, then SDC would be deemed as taking actions to cure the default.  Concurrently, the City retained any and all rights and remedies, including judicial intervention and enforcement of its rights under the MOU, Notice and Cure Agreement, and the PSDA (including the Fifth Amendment).  A true and correct copy of the July 1, 2024 Notice of Default is attached in the COE as **Exhibit 18**.

101.    Also on July 1, 2024, CMG exercised its rights to purchase and assume the Developer's rights and obligations by sending the MOU Parties, including the Developer Defendants, CMG's Notice Of Exercising Rights And To Proceed.  A true and correct copy of the July 1, 2024 CMG Notice Of Exercising Rights And To Proceed is attached in the COE as **Exhibit 19**.

102.    The MOU remains in place and in full force and effect.

**Unauthorized Fraudulent Deeds of Trust and Mechanics Liens Recorded**

**Against the SDC-Owned Properties to Thwart the MOU**

103.    The City is informed and believes, and on that basis alleges, that SDC and its affiliates have over-leveraged SDC's holdings and valuation of the Talus project, and have many equity investors with unsecured interests, including the Unknown and Unapproved Equity Investors named as Defendants (above), none of which the City approved in accordance with the requirements of the PSDA (as explained above).  The City also is informed and believes, and on that basis alleges, that some equity investors do not even know about the other equity investors.

104.    The City is informed and believes, and on that basis alleges, that SDC and its affiliates are now intentionally and fraudulently trying to frustrate and thwart the PSDA and MOU and have encumbered all or portions of the SDC-Owned Properties with unenforceable mechanics liens and unauthorized deeds of trust without the City's approval or consent in violation of the

1 PSDA.  (*See*, Original PSDA §§ 603.1, 311.1 & 211.)

2 105.    In the MOU, SDC and its affiliates represented that it has "no knowledge of any

3 agreement with third parties that would prevent a Party from performing its obligations under this

4 Agreement."  (See MOU, § 4.6.)

5 106.    Contrary to this representation, on or about July 1, 2024, SDC executed a

6 promissory note in the principal amount of **$20,070,000** in favor of Defendant Axia, which is

7 purported to be secured by a third deed of trust against a portion or all of the SDC-Owned

8 Properties, which was recorded on July 2, 2024 as Document No. 2024-0195411 in the Recorder's

9 Office ("Axia Deed of Trust").

10 107.    On July 1, 2024, the Robert Green Company recorded a Mechanics Lien in the

11 amount of **$5,557,000** for work and/or materials described as "DEVELOPMENT

12 MANAGEMENT SERVICES (OVERSEE PROJECT DESIGN AND CONSTRUCTION)" of the

13 Montage Residences consisting of Lots 1-29 & C, D, E, G, H Conchilla Court [*i.e.,* Lots 1 through

14 29 as shown on Final Tract Map No. 37730].  The Mechanics Lien was recorded on July 1, 2024

15 as Document No. 2024-0194774 in the Recorder's Office.

16 108.    On July 1, 2024, Robert Green Residential, Inc., an affiliate of SDC, recorded a

17 Mechanics Lien in the amount of **$2,610,323** for work and/or materials described as "GENERAL

18 CONTRACTING SERVICES TO COMPLETE THE (29) MONTAGE RESIDENCES"

19 consisting of Lots 1-29 & C, D, E, G, H Conchilla Court [*i.e.,* Lots 1 through 29 as shown on Final

20 Tract Map No. 37730].  The Mechanics Lien was recorded on July 1, 2024 as Document No.

21 2024-0194775 in the Recorder's Office.

22 109.    On July 2, 2024, the Robert Green Company recorded a Mechanics Lien in the

23 amount of **$772,734** for work and/or materials described as "DEVELOPMENT MANAGEMENT

24 SERVICES (OVERSEE PROJECT DESIGN AND CONSTRUCTION)" of the Meeting

25 Conference and Shared Services Project, located at 52-005 Talus Way (formerly SilverRock Way)

26 APN 777-490-072 & 076, La Quinta, CA 92253.  The Mechanics Lien was recorded on July 2,

27 2024 as Document No. 2024-0196344 in the Recorder's Office.

28 110.    On July 2, 2024, the Robert Green Company recorded a Mechanics Lien in the

amount of **$25,059** for work and/or materials described as "DEVELOPMENT MANAGEMENT

SERVICES (OVERSEE PROJECT DESIGN AND CONSTRUCTION)" of the Pendry Hotel

Project, located at 52-155 Talus Way (formerly SilverRock Way) APN 777-490-073, 074, 075 &

080 La Quinta, CA 92253.  The Mechanics Lien was recorded on July 2, 2024 as Document No.

2024-0196346 in the Recorder's Office.

111.    On July 2, 2024, the Robert Green Company recorded a Mechanics Lien in the

amount of **$358,373** for work and/or materials described as "DEVELOPMENT MANAGEMENT

SERVICES (OVERSEE PROJECT DESIGN AND CONSTRUCTION)" of the Golf Clubhouse

Project, located at 52-245 Talus Way (formerly SilverRock Way) APN 777-490-077, 078 & 079

La Quinta, CA 92253.  The Mechanics Lien was recorded on July 2, 2024 as Document No. 2024-

0196347 in the Recorder's Office.

112.    On July 2, 2024, the Robert Green Company recorded a Mechanics Lien in the

amount of **$144,702** for work and/or materials described as "DEVELOPMENT MANAGEMENT

SERVICES (OVERSEE PROJECT DESIGN AND CONSTRUCTION)" of the Pendry

Residences and Clubhouse Project Buildings 1-11 & Clubhouse, APN 777-490-046, La Quinta,

CA 92253.  The Mechanics Lien was recorded on July 2, 2024 as Document No. 2024-0196348 in

the Recorder's Office.

113.    None of the Developer Defendants, not even Green himself, notified the City of

any actions taken or planned to be taken, starting July 1, 2024, that were intended to either (i)

allegedly convert unapproved and unknown equity interests in the Talus project to a "debt

interest" secured by a deed of trust, or (ii) allegedly claim mechanics liens against SDC-Owned

Properties for work allegedly completed or to be completed by SDC (or any Defendant

Developer).  In fact, the City learned about the July 1 and July 2, 2024 recorded instruments,

including the purported Axia Deed of Trust and purported mechanics liens recorded by the

Defendant Developer against its own real property, through communications from other MOU

Parties.

114.    Upon learning of Developer's actions, on July 10, 2024, the City issued to SDC a

CEASE AND DESIST DEMAND FOR UNAUTHORIZED TRANSACTIONS ("July 10, 2024

Cease And Desist Demand"), in violation of the PSDA and MOU.  The Cease and Desist Demand immediately commanded SDC and its affiliates, including The Robert Green Company, to cease-and-desist executing and recording deeds of trust, mortgages, mechanics liens, fixture filings, assignments of rents, or any other instruments purporting to evidence a secured interest in the SDC-Owned Properties.  Additionally, the City demanded that SDC and its Developer affiliates, including The Robert Green Company, immediately terminate and release, and remove from title all purported secured interests described in the mechanics lien and deed of trust recorded on July 1, 2024 and July 2, 2024.  A true and correct copy of the July 10, 2024 Cease And Desist Demand (with attached unauthorized recorded documents) is attached in the COE  as **Exhibit 20**.

115.    Instead, SDC and its affiliates have blatantly disregarded the City's cease-and-desist letter.  The City is informed and believes, and on that basis alleges, that SDC stated that it does not intend to comply with the City's Cease And Desist Demand.  A true and correct copy of an e-mail communication from Defendant Green, sent to City Manager Jon McMillen, defying the Cease And Desist Demand is attached in the COE as **Exhibit 21**.

116.    After receiving the e-mail communication from Defendant Green defying the Cease And Desist Demand, Defendant Green subsequently communicated to City Manager Jon McMillen that the amounts identified in the Mechanics Liens recorded by the Robert Green Company were incorrect, but regardless of any incorrect amounts, the City is informed and believes, and on that basis alleges, that the Mechanics Liens, regardless of purported amount, recorded by the Robert Green Company against any portion or all of the SDC-Owned Properties are unenforceable and unauthorized.

117.    Indeed, even after the July 10, 2024 Cease And Desist Demand from the City, the City received information, once again Contrary to SDC's representation in Section 4.6 of the MOU and without the approval from the City required under the PSDA, that SDC (or SDC-affiliated Developer Defendant) had executed and recorded deeds of trust purported to secure indebtedness owed to the Unknown and Unapproved Equity Investors -- all of which were executed and recorded against the SDC-Owned Properties *while SDC was and remains in default* **--** including the following:

a.    A Second Deed of Trust And Fixture Filing With Assignment Of Rents, dated July 3, 2024, and recorded on July 5, 2024, as Document No. 2024-0199178 in the Recorder's Office, purportedly securing a promissory note of indebtedness for the following: (i) $1,446,086 for Defendant Parekh, (ii) $7,015,701 for Defendant McCoy, (iii) $749,559 for Defendant Billings Realty, (iv) $7,169,256 for defendant Heuser, (v) $2,109,250 for Defendant Green, and (vi) $2,473,066 for Eric and Hector D Beranek ("Parekh et al. Deed of Trust");

b.    A Second Deed of Trust And Fixture Filing With Assignment Of Rents, dated July 3, 2024, and recorded on July 5, 2024, as Document No. 2024-0199180 in the Recorder's Office, purportedly securing a promissory note of indebtedness for $3,816,000 for Defendant Traub Family Trust ("Traub Family Trust Deed of Trust");

c.    A Second Deed of Trust And Fixture Filing With Assignment Of Rents, dated July 3, 2024, and recorded on July 5, 2024, as Document No. 2024-0199181 in the Recorder's Office, purportedly securing a promissory note of indebtedness for a total of $3,816,000 for the following Defendants: Heuser, SVR Capital, Kurtin Family Trust, Kevin/Theresa Green Family Trust, Duclos, Holker IRA, Cimarusti, Fruhwirth, Parr, Welk, LTMDP, Leitstein, Hoehn, Goetz, Fredricks, and Mack Trust ("Heuser et al. Deed of Trust"); and

d.    The Axia Deed of Trust, Parekh et al. Deed of Trust, Traub Family Trust Deed of Trust, and Heuser et al. Deed of Trust are collectively referred to as the "Unauthorized Deeds of Trust," as none of the purported creditors or their respective funding contributions were approved by the City, all in violation of the PSDA, and all were entered into and recorded after SDC was in default and in complete contradiction to the City's July 1, 2024 Notice of Default and the MOU.

118.    The City is informed and believes, and on that basis alleges, that SDC and its affiliates have, since July 1, 2024, and continue and/or intend to continue, intentionally and fraudulently, to try to frustrate and thwart the PSDA and MOU and have encumbered all or portions of the SDC-Owned Properties with unenforceable mechanics liens and unauthorized deeds of trust without the City's approval or consent in violation of the PSDA.

119.    As such, immediate judicial intervention and remedies are necessary and pursued

1  by the City in accordance with its rights under the PSDA, as amended, and MOU.

2  **FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

3  **(Against Defendants SDC, Robert Green Company, Green, Schuster, RGC, SRPI, SRL 2,**

4  **SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789, and DOES 1-50)**

5  120.    The City realleges and incorporates herein all previous allegations of this

6  Complaint by reference as if fully set forth herein.

7  121.    As alleged above, the City and SDC entered into the PSDA (as amended through

8  the Fifth Amendment to date).  Pursuant to the PSDA, including Sections 603.1, 211, 304.4, and

9  311.1, SDC (or any Developer entity) was required to receive the City's approval prior to

10  obtaining and utilizing any financing for the construction of the project on the SDC-Owned

11  Properties.

12  122.    Additionally, both the Phase 1A Property Grant Deed and Phase 1B Property Grant

13  Deed include a similar restriction on the Grantee's ability to transfer the properties by prohibiting

14  any transfer of ownership of the properties, unless the transfer was the result of a transaction or

15  agreement that was approved pursuant to Section 603 of the PSDA.  (See Phase 1A Property Grant

16  Deed, § 4; Phase 1B Property Grant Deed, § 4.)

17  123.    Defendants breached the MOU, PSDA and Phase 1A Property and Phase 1B

18  Property Grant Deeds through the execution and recordation of the Unauthorized Deeds of Trust.

19  124.    Defendants also breached the Fifth Amendment by failing to close on the

20  Recapitalization Loans by June 30, 2024.

21  125.    As alleged above, Defendants and the City entered the MOU to save the SDC-

22  Owned Properties from foreclosure and to provide a means to move forward with resuming project

23  construction and completion of the project.

24  126.    Under the MOU, SDC and its affiliates agreed that if SDC failed to obtain funding,

25  "SDC shall assign (per section 4.2) any and all interest in the PSDA, Development Agreement,

26  and all other valid agreements relating to the construction, completion, and operation of the Talus

27  project (including the hotel operator agreements), with the exception of the Olson and Granite

28  agreements and convey fee simple ownership interest to the Developer-Held Properties [*i.e.,* the

1    SDC-Owned Properties]" to CMG.  (See MOU, § 4.1, p. 4.)

2        127.    In the MOU, SDC and its affiliates represented that it has "no knowledge of any

3    agreement with third parties that would prevent a Party from performing its obligations under this

4    Agreement."  (See MOU, § 4.6.)

5        128.    Defendants breached the MOU by encumbering the SDC-Owned Properties with

6    unauthorized mechanics liens and the Unauthorized Deeds of Trust without the City's approval or

7    consent in violation of the PSDA.  (See Original PSDA §§ 603.1, 311.1 & 211.)

8        129.    The City has performed all conditions, covenants, and promises required of the

9    City under the PSDA, the Phase 1A Property and Phase 1B Property Grant Deeds, and the MOU.

10        130.    As a proximate result Defendants' breach, the City has been damaged because it

11    will lose the bargained for benefit and contractual right of selecting the proper developer for the

12    project, and giving the City the ability to review and approve any financing agreements that would

13    materially affect and encumber the SDC-Owned Properties.  Likewise, the City has been forced to

14    bring this immediate lawsuit to protect its interests in controlling the City-authorized developer

15    that would have ownership and ultimate development of the SDC-Owned Properties.  As such, the

16    City will incur attorney's fees and costs in prosecuting this action.

17        131.    Additionally, the City will suffer damages from the resulting delay in developing

18    the Talus project, which prevents the City from generating new revenues from the development.

19    In 2014, the City's new revenues from the development was estimated to be **$47,700,000** over a

20    15-year period.  The daily amount of revenues estimated as of 2014 was $8,712.33.[3]  Adjusting for

21    inflation based on the Consumer Price Index, the daily amount of new revenues estimated as of

22    May 2024 is **$11,586.96** per day.  The City has suffered damages and will continue to suffer

23    damages in a sum according to proof.

24    / / /

25    / / /

26    / / /

27

28    [3] This amount was calculated by dividing $47,700,000 by 15 years, which equals $3,180,000 per year or $8,712.33 per day ($3,180,000 ÷ 365 days).

**SECOND CAUSE OF ACTION FOR FRAUD**

**(Against SDC, Robert Green Company, Green, Schuster, RGC, SRPI, SRL 2,**

**SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789, and DOES 1-50)**

132.    The City realleges and incorporates herein all previous allegations of this Complaint by reference as if fully set forth herein.

133.    As a condition of the PSDA, the Phase 1A Property Grant Deed, and the Phase 1B Property Grant Deed, Green, as an authorized agent and/or alter ego of Defendants, made material misrepresentations to the City that were in fact false and misleading.  Specially, Green represented to the City in the PSDA and Phase 1A Property and Phase 1B Property Grant Deeds that Defendants would obtain the City's approval prior to obtaining and utilizing any financing for the construction of the project on the SDC-Owned Properties or transferring any interests in the SDC-Owned Properties.

134.    In entering the PSDA and Phase 1A Property and Phase 1B Property Grant Deeds, Defendants knew their representations were false and/or made with reckless disregard of the truth.

135.    Defendant Developer did not intend to obtain the City's prior approval before encumbering the SDC-Owned Properties.  Defendant Developer clearly did not intend to obtain the City's prior approval by failing to obtain the City's prior approval regarding the Unauthorized Deeds of Trust.

136.    As alleged above, the City and MOU Parties, including SDC and affiliated Developer entities, subsequently entered the MOU to save the SDC-Owned Properties from foreclosure and to provide a means to move forward with resuming project construction and completion of the project.

137.    Under the MOU, SDC and its affiliates represented that, if SDC failed to obtain funding, "SDC shall assign (per section 4.2) any and all interest in the PSDA, Development Agreement, and all other valid agreements relating to the construction, completion, and operation of the Talus project (including the hotel operator agreements), with the exception of the Olson and Granite agreements and convey fee simple ownership interest to the Developer-Held Properties [*i.e.,* SDC-Owned Proeperties]" to CMG.  (See MOU, § 4.1, p. 4.)

138.    In the MOU, SDC and its affiliates represented that it has "no knowledge of any agreement with third parties that would prevent a Party from performing its obligations under this Agreement." (See MOU, § 4.6.)

139.    Defendant Developer clearly had no intent of transferring all SDC's interests in the PSDA, Development Agreement, and all other valid agreements and did not intend to convey a fee simple ownership interest in the SDC-Owned Properties to CMG.  To thwart the MOU, Defendants intentionally encumbered the SDC-Owned Properties with unenforceable mechanics liens and the Unauthorized Deeds of Trust without the City's approval or consent in violation of the PSDA.  (See Original PSDA §§ 603.1, 311.1 & 211.)

140.    The City reasonably and justifiably relied on Defendants' representations.

141.    As a direct and proximate result of Defendants' misrepresentations and fraud, the City has been damaged in an amount to be determined by this Court.

142.    The acts and conduct of Defendant Developer, and each of them, were done in a manner with conscious disregard of the City's rights.  Defendant Developer intentionally made false misrepresentations to induce the City to enter the Fifth Amendment as well as the PSDA, Development Agreement, Phase 1A Property and Phase 1B Property Grant Deeds, and MOU with Defendant Developer.  Defendants repeatedly engaged in this pattern of behavior for their own benefit with a specific intent to defraud and injure the City.  Accordingly, such malevolent actions constitute fraud, oppression, and malice under Civil Code section 3294.  Hence, the City is entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION FOR SLANDER OF TITLE**

**(Against SDC, Robert Green Company, Green, Schuster, RGC, SRPI, SRL 2, SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789, all Unknown and Unapproved Equity Investors, and DOES 1-50)**

143.    The City realleges and incorporates herein all previous allegations of this Complaint by reference as if fully set forth herein.

144.    The City conveyed both the Phase 1A Property and Phase 1B Property to SDC pursuant to the Phase 1A Property Grant Deed and Phase 1B Property Grant Deed.  As part of

both those grant deeds, the City reserved the legal right to review and approve any financial arrangements that could impact the ownership of the SDC-Owned Properties, and the City recorded its interest to continue to enforce the terms of the PSDA on the SDC-Owned Properties.

145.    The Phase 1A Property and Phase 1B Property are also subject to the Development Agreement, which was recorded against the SDC-Owned Properties in general, and further confirms that the PSDA (and its various amendments) would apply to the project and the real property on which the project will be developed (including the Phase 1A Property and Phase 1B Property) on an ongoing basis.

146.    The City, therefore, has a legal interest in the SDC-Owned Properties in so far it has the right to approve any potential transfer of the SDC-Owned Properties, or any financing agreement that could result in a transfer of ownership of the SDC-Owned Properties to any secured lender.  As such, any such transfer or financing agreement that is not approved by the City is without legal effect and is therefore voidable.  Furthermore, SDC, as the Grantee of both the Phase 1A Property and Phase 1B Property, lacked the legal authority to convey this City interest in either property without the consent of the City.

147.    The City is informed and believes, and based thereon alleges that the Unknown and Unapproved Equity Investors, with SDC's consent, recorded the Unauthorized Deeds of Trust without the City's consent, even though the Development Agreement, the PSDA, and the Phase 1A Property and Phase 1B Property Grant Deeds all include explicit language stating that the City must approve such an arrangement before it can be recorded against the SDC-Owned Properties. The City is further informed and believes, and based thereon alleges, that some of the unknown defendants, specifically those additionally designated as Does 1 through 50, claim interests in the SDC-Owned Properties adverse to the City as assignees and successors of the Unknown and Unapproved Equity Investors or as unauthorized and unapproved transferees of an interest in a portion or all of the SDC-Owned Properties.

148.    The City is further informed and believes, and on that basis alleges that the Unknown and Unapproved Equity Investors, SDC, and the other Developer entities had either constructive or actual knowledge (or both) of the fact that the Unauthorized Deeds of Trust could

1   not be recorded without the City's consent because the parties were either party to the Phase 1A

2   Property and Phase 1B Property Grant Deeds or the PSDA, or because they had constructive

3   knowledge of the content of those documents due to the fact that the recorded Development

4   Agreement referenced the PSDA and because the Phase 1A Property and Phase 1B Property

5   Grand Deeds were recorded.

6          149.    The City is informed and believes, and based thereupon alleges, that the

7   Unauthorized Deeds of Trust are false and cause doubt as to the title to the SDC-Owned

8   Properties, to which the City has the legal right to continue to review and approve any transactions

9   that could result in said properties to be conveyed from SDC (or any Developer entities) to other

10  parties.

11         150.    The existence of the Unauthorized Deeds of Trust impairs the City's ability to

12  enforce its rights under the Phase 1A Property and Phase 1B Property Grant Deeds, the PSDA, the

13  Development Agreement, and the MOU.

14         151.    SDC and its affiliates also recorded unenforceable and unauthorized mechanics

15  liens against the SDC-Owned Properties.  The existence of these mechanics liens also impair the

16  City's ability to enforce its rights under the Phase 1A Property and Phase 1B Property Grant

17  Deeds, the PSDA, the Development Agreement, and the MOU.

18         152.    As a result of SDC (and Developer entities), the Unknown and Unapproved Equity

19  Investors, and Does 1 through 50's aforementioned actions and failures to act, the City has been

20  forced to institute this action for slander of title, and the City has incurred and will continue to

21  incur attorneys' fees and costs in prosecuting this action.

22         153.    The City has suffered damages and will continue to suffer damages in a sum

23  according to proof.

24              **FOURTH CAUSE OF ACTION FOR QUIET TITLE**

25                        **(Against All Defendants)**

26         154.    The City realleges and incorporates herein all previous allegations of this

27  Complaint by reference as if fully set forth herein.

28         155.    The City conveyed both the Phase 1A Property and Phase 1B Property to SDC

1    pursuant to the Phase 1A Property Grant Deed and Phase 1B Property Grant Deed.  As part of

2    both those grant deeds, the City reserved the legal right to review and approve any financial

3    arrangements that could impact the ownership of the SDC-Owned Properties, and also recorded its

4    interest to continue to enforce the terms of the PSDA on the SDC-Owned Properties.

5         156.   The Phase 1A Property and Phase 1B Property are also subject to the Development

6    Agreement, which was recorded against the SDC-Owned Properties, and further confirms that the

7    PSDA (and its various amendments) would apply to the project and the real property on which the

8    project will be developed (including the SDC-Owned Properties) on an ongoing basis.

9         157.   The City, therefore, has a legal interest in the SDC-Owned Properties in so far it

10   has the right to approve any potential transfer of the SDC-Owned Properties, or any financing

11   agreement that could result in a transfer of ownership of the SDC-Owned Properties to any

12   secured lender.  As such, any such transfer or financing agreement that is not approved by the City

13   is without legal effect and is therefore void or voidable.  Furthermore, SDC, as the Grantee of both

14   the Phase 1A Property and Phase 1B Property, lacked the legal authority to obtain financing for

15   any Project Component or corresponding Master Site Infrastructure Improvements resulting in a

16   secured interest in the SDC-Owned Properties without the consent of the City.

17        158.   The Unknown and Unapproved Equity Investors with SDC's consent recorded the

18   Unauthorized Deeds of Trust without the City's consent even though the  PSDA, the Development

19   Agreement by incorporating the PSDA, and the Phase 1A Property and Phase 1B Property Grant

20   Deeds all include explicit restrictive language stating that the City must approve such a financing

21   arrangement before a secured interest can be recorded against the SDC-Owned Properties.  The

22   City is also informed and believes, and based thereon alleges that some of the unknown

23   defendants, specifically those additionally designated as Does 1 through 50, claim interests in the

24   SDC-Owned Properties adverse to the City as assignees and successors of the Unknown and

25   Unapproved Equity Investors or as unauthorized and unapproved transferees of an interest in a

26   portion or all of the SDC-Owned Properties.

27        159.   The City is seeking to quiet title against the claims of SDC and the Unknown and

28   Unapproved Equity Investors, and each of them, and Does 1 through 50, inclusive, as follows:

Rutan & Tucker, LLP
*attorneys at law*

a.      The Unauthorized Deeds of Trust purports to secure the respective purported promissory notes of the respective Unknown and Unapproved Equity Investors against portions of the SDC-Owned Properties, title to which said properties are now held by SDC (or one of Developer's affiliated entities);

b.      The Unknown and Unapproved Equity Investors, and each of them, and Does 1 through 50, inclusive, refuse to cancel or reconvey the Unauthorized Deeds of Trust;

c.      The City is informed and believes, on that basis alleges, that SDC maintains that the Unauthorized Deeds of Trust are legally enforceable, and were lawfully recorded against the impacted portions of the SDC-Owned Properties; and

d.      The claims of these Defendants, and all of them, are without any right whatsoever, and such Defendants have no right, title, estate, lien or interest whatever in any portion of the SDC-Owned Properties.

e.      SDC and its affiliates, including the Robert Green Company, have also recorded unenforceable and unauthorized mechanics liens on the SDC-Owned Properties and refuse to cancel these mechanics liens.

160.    The City seeks to quiet title as to the SDC-Owned Properties as of June 30, 2024 – the date upon which SDC was in default under the Fifth Amendment.

161.    As a result of Developer's, the Unknown and Unapproved Equity Investors, and Does 1 through 50's aforementioned actions and failures to act, the City has been forced to institute this action for quiet title and has incurred and will continue to incur attorneys' fees and costs in prosecuting this action.

**FIFTH CAUSE OF ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF**

**(Against SDC, Robert Green Company, Green, Schuster, RGC, SRPI, SRL 2,**

**SR Lodging, SR Lifestyle, SR Luxury, RGC/PA789, and all Unknown and Unapproved**

**Equity Investors)**

162.    The City realleges and incorporates herein all previous allegations of this Complaint by reference as if fully set forth herein.

163.    An actual controversy has arisen and now exists between the parties regarding their

respective rights, duties and obligations with respect to the SDC-Owned Properties. Specifically, the City contends that the Unauthorized Deeds of Trust were unlawfully recorded against portions of the SDC-Owned Properties for the reasons stated above and are therefore invalid and should be declared as null and void. Additionally, the City contends that the unenforceable and unauthorized mechanics lien recorded by the Robert Green Company and Robert Green Residential, Inc., are null and void because the liens cannot be held by the property owner under the Doctrine of Merger.

164. The City is informed and believes, and on that basis alleges, that the Defendants dispute these contentions and assert the Unauthorized Deeds of Trust and mechanics liens are valid and proper.

165. The City is further informed and believes, and on that basis alleges, that SDC and the Developer Defendants have failed and will continue to breach the Developer Defendant's obligations to cooperate in good faith and perform the Developer's obligations under the MOU, including the obligation to convey fee title of the SDC-Owned Properties in accordance with the MOU.

166. The City desires a judicial determination and decree, pursuant to Code of Civil Procedure section 1060, establishing the respective rights, duties and obligations of the parties with regard to the City's contentions and the above-described actions.

167. The City has no adequate remedy at law to prevent or mitigate this ongoing imminent harm and the actions described above, have exhausted all available remedies, and therefore issuance of declaratory and injunctive relief is necessary to restrain and enjoin Defendants, and all others acting in concert, from in any way seeking to encumber the SDC-Owned Properties without the City's prior approval, and to compel and enjoin the Developer Defendants to perform the Developer's obligations under the MOU.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants as follows:

On the First Cause of Action for Breach of Contract:

1. For general damages in an amount to be proved at trial;

1          2.      For consequential damages in an amount to be proven at trial;

2    <u>On the Second Cause of Action for Fraud</u>:

3          1.      For general damages in an amount to be proven at trial;

4          2.      For special damages to be proven at trial;

5          3.      For punitive damages in the sum to be proven at trial.

6    <u>On the Third Cause of Action for Slander of Title</u>:

7          1.      For general damages in an amount to be proven at trial;

8          2.      For special damages to be proven at trial;

9          3.      For a judgment declaring the Unauthorized Deeds of Trust, and each of them, as

10   void and of no force or effect.

11         4.      For a judgment declaring the mechanics lien recorded by Defendants as void and of

12   no force or effect.

13   <u>On the Fourth Cause of Action for Quiet Title</u>:

14         1.      For a judgment declaring the Unauthorized Deeds of Trust as void and of no force

15   or effect.

16         2.      For a judgment declaring the mechanics lien recorded by Defendants as void and of

17   no force or effect.

18   <u>On the Fifth Cause of Action for Declaratory Relief</u>:

19         1.      For a judgment declaring the Unauthorized Deeds of Trust as void and of no force

20   or effect.

21         2.      For a judgment declaring the mechanics lien recorded by Defendants as void and of

22   no force or effect.

23         3.      For a judgment declaring Developer Defendants, and each of them, is in breach of

24   their obligations under the MOU and shall perform according to the terms and conditions set forth

25   therein.

26         4.      For injunctive relief consistent with the judgments issued with the declaratory

27   relief.

28   / / /

On all Causes of Action:

    1.    For costs of suit against Defendants;

    2.    For attorneys' fees if and to the extent allowed by law;

    3.    For pre-judgment and post-judgment interest; and

    4.    For such further relief as the Court deems just and appropriate.

Dated: July 24, 2024

RUTAN & TUCKER, LLP
WILLIAM H. IHRKE
TRAVIS VAN LIGTEN
SAMANTHA LAMM

By: _William H. Ihrke_

William H. Ihrke
Attorneys for Plaintiff
CITY OF LA QUINTA

Rutan & Tucker, LLP
*attorneys at law*

2934/015610-0204
20858814.2 a07/24/24

-42-

COMPLAINT