# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SilverRock Development Company, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11647 (MFW)<br><br>(Jointly Administered)<br><br>Hearing Date: March 12, 2025 10:30 a.m. (ET)<br>Objection Deadline: March 5, 2025 at 4:00 p.m. (ET) |

## MOTION FOR ENTRY OF ORDER (I) AUTHORIZING AND APPROVING (A) BID PROCEDURES AND (B) FORM AND MANNER OF NOTICE OF BID PROCEDURES

The Debtors and Debtors-in-Possession in the above captioned cases (the "Cases") hereby file this Motion requesting the relief set forth herein. The form of order (the "Bid Procedure Order" or "Order") is attached hereto as Exhibit A. The proposed bid procedures (the "Bid Procedures") are attached to the Order as Exhibit 1. In support of the Motion, the Debtors respectfully state:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. 157 and 1334, and the Local Rules of this Court. This is a core proceeding as defined in 28 U.S.C. 157(b)(2). The Court has authority to enter a final order granting the relief requested herein pursuant to 28 U.S.C. 157(b)(1). Venue is proper pursuant to 28 U.S.C. 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 105(a), 363, 365, 541, 1107(a) and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), and rules

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: SilverRock Development Company, LLC (5730), RGC PA 789, LLC (5996), SilverRock Lifestyle Residences, LLC (0721), SilverRock Lodging, LLC, (4493), SilverRock Luxury Residences, LLC (6598) and SilverRock Phase 1, LLC (2247). The location of the Debtors' principal place of business and the Debtors' mailing address is 343 Fourth Avenue, San Diego, CA 92101.

1

2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure ("BR") and Local Rules 2002, of the Bankruptcy Court for the District of Delaware ("LBR").

## I. BACKGROUND

3. The Debtors filed the Cases on August 5, 2024, and the Cases have been administratively consolidated pursuant to order of this Court. (Dkt No. 22). Christopher Sontchi is the sole and independent manager of the Debtors, and Douglas Wilson is the Debtors' Chief Restructuring Officer.

4. The Debtors believe that the proper course for these Cases is through a confirmed plan which includes approval of the sale of the Debtors' assets at the highest realizable price to a buyer with the financial capability and development competence to finish construction and development of the Project Opportunity (defined below), which consists of a master planned resort community that includes a Pendry Hotel, a Montage Hotel, Pendry-branded residences, Pendry-branded bungalows, Montage-branded residences, a golf clubhouse and shared conference center, several undeveloped planning areas, a possible option to purchase additional real estate from the City of La Quita (the "City"), and related contracts, including branding agreements with Montage Hotel and Resorts and Pendry Hotels and Resorts, plans, development rights, drawings, permits, existing site improvements, and equipment.[2] This Motion, along with the order to engage Jones

---

[2] As more specifically described and detailed in that certain *Declaration of Jon McMillen in Support of City of La Quinta's Opposition to Motion of Debtors Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Granting DIP Lender Liens and Super-Priority Claims; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 67] (the "McMillen Declaration"), the City and Debtor SilverRock Development Company LLC entered into that certain Purchase, Sale, and Development Agreement dated November

Lang Lasalle ("JLL") as real estate broker (Dkt. No. 312) to market the Project Opportunity are critical steps to reaching that goal.

## II. THE BID PROCEDURES AND MARKETING PLAN

5. JLL, a nationally and internationally recognized real estate firm, is working both with the Debtors and the City to devise an appropriate marketing plan to realize optimal value from the sale of the Project Opportunity. Debtors, JLL, and the City all anticipate realizing such value requires marketing and selling the Project Opportunity as a whole, rather than by its component parts. In terms of the necessary time to professionally, competitively and effectively market the Project Opportunity, JLL has advised that 6-8 months are necessary to get to the closing of a sale. The process of marketing, receiving and considering bids, and selling the Project Opportunity to the most qualified bidder is the subject of this herein Motion.

6. The anticipated timeline agreed to by Debtors, JLL, and the City to market the Project Opportunity is as follows:

        a) File motion for approval of the Bid Procedures (the "Motion") no later than February 19, 2025;

---

19, 2014 (the "Original PSDA"), as amended by Amendment No. 1, dated October 29, 2015, Amendment No. 2, dated April 18, 2017, Amendment No. 3, dated November 28, 2018, Amendment No. 4, dated October 12, 2021, and Amendment No. 5, dated November 16, 2023 (together, the "PSDA") and that certain Statutory Development Agreement, dated November 19, 2014, by and between SilverRock Development Company and City, adopted pursuant to California Government Code section 65864 *et seq.* and recorded in the Office of the Riverside County Official Records on December 18, 2014, as Document No. 2014-0484106 (the "Development Agreement"), which concern the purchase, sale and development of two luxury resort hotels with attached residences, appurtenant golf clubhouse and conference center, and other amenities known as "SilverRock" and referred to herein as the "Project." The term, "Project Opportunity," means and includes the opportunity to negotiate for the purchase the portions of the Project that are owned by the Debtors, the purchase, or option to Purchase, property that is owned by the City, and the commitment to develop the Project on terms as may be agreed upon between the purchaser and the City.

    b) Hearing on the Motion and entry of an order approving the relief requested in the Motion no later than March 12, 2025;

    c) Obtain an order authorizing the Debtors to enter into a definitive agreement with a Stalking Horse Bidder (as defined herein and in the Bid Procedures) no later than May 16, 2025;

    d) Potential Bidders shall submit to Debtors and JLL their qualifications to be considered Qualified Bidders (as these terms are defined herein as in the Bid Procedures) no later than June 7, 2025;

    e) Submit final bids that are not contingent on due diligence or similar discretionary considerations no later than July 1, 2025;

    f) Complete the Sealed Bid Auction (as this term is defined herein and in the Bid Procedures) and select a successful bidder (and if appropriate, the next-highest bidder) no later than August 15, 2025; and

    g) File and serve notice identifying the Successful Bidder and Next-Highest Bidder no later than August 18, 2025.

7. It is understood that some of these dates might have to be adjusted due to unforeseen circumstances to accommodate the Court's calendar at the time, and to accommodate the City, including any legal requirements to notice and hold public meetings. The dates may also be adjusted by mutual agreement between Debtors and the City.

8. The proposed bidding procedures, attached to the Order as Exhibit 1, contain terms typical for a process through which the sale of a complex set of assets is consummated after a well-conceived marketing plan is executed in order to increase the likelihood that the Debtors will receive the greatest possible price because they promote a competitive and fair bidding process.

9. The Debtors and JLL will oversee implementation of the Bid Procedures, which will center around both the selection of a Stalking Horse Bidder and the completion of a Sealed

Bid Auction[3]. While any Potential Bidder-individual or entity- may submit a Bid, only Qualified Bidders will be considered as part of the Sealed Bid Auction for selection of the Successful Bidder and Next-Highest Bidder. Qualified Bidders will consist of one or more Potential Bidders that the Debtors and JLL, in consultation with the City, approve as capable of financing and developing the Project Opportunity. Debtors, in conjunction with JLL and the City, will select, from among the Qualified Bidders, a Stalking Horse Bidder to set a baseline price (the "Stalking Horse Initial Bid") for the Sealed Bid Auction. The Stalking Horse Bidder will sign a binding contract with the Debtors agreeing to purchase the Project Opportunity in the event no Bids by other Qualified Bidders are made. The terms of this agreement will be made public.

10. After the Stalking Horse Initial Bid is set, JLL will begin soliciting Bids from Qualified Bidders wishing to purchase the Project Opportunity for more than the Stalking Horse Initial Bid. The Bids, consisting of each Qualified Bidder's best and highest offers, will be sealed and each Qualified Bidder must agree to purchase the Project Opportunity in the event that it is selected as the winning, or Successful Bidder. Each Qualified Bidder will be required to tender a Good Faith Deposit, as that term is defined in the Bid Procedures, to be held in escrow by the Debtors until such time that the Sealed Bid Auction is complete. To conclude the Sealed Bid Auction, the Debtors, with the approval of the City, will select the two most attractive Bids as the Successful Bid and Next-Highest Bid, respectively.

---

[3] The Debtors and JLL, subject to the consent of the City, may decide, in the best interests of the bankruptcy estate, to later convert the Sealed Bid Auction into a live and in-person Public Auction.

11. As the Bidding Procedures are attached to the Bidding Procedures Order, they are not herein restated in their entirety. Pursuant to Local Rule 6004, certain of the key terms of the Bidding Procedures are highlighted in the chart below:[4]

| **MATERIAL TERMS OF THE BIDDING PROCEDURES AND BIDDING PROCEDURES ORDER** | |
|---|---|
| **Provisions Governing Qualification of Bidders and Qualified Bids** <br> Local Rule 6004-1(c)(i)(A)-(B) | o Qualified Bidders must fully disclose their identities and provide the contact information of the specific person(s) whom the Debtors or its advisors should contact (including any equity holder or other financial backer if the Qualified Bidder is an entity formed for the purpose of consummating the proposed Sale) in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Qualified Bidder; <br><br> o Qualified Bidders must set forth all pre-petition and post-petition relationships with other bidders, the Debtors, officers of Debtors, major creditors or equity security holders, or other parties in interest for these Cases. <br><br> o Qualified Bidders must set forth the purchase price they intend to pay, where said purchase price constitutes the Qualified Bidder's best and highest offer, along with physical or environmental assumptions that affect the purchase price being offered, and the source of the funds the Qualified Bidder intends to use to pay such purchase price; <br><br> o Qualified Bidders must acknowledge that except as is described in the Motion and Bid Procedures Order, their Bid is not subject to any bidding, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement |

---

[4] This summary is qualified in its entirety by the provisions of the Bidding Procedures. To the extent that there is any inconsistency between the terms of the Bidding Procedures and this summary, the terms of the Bidding Procedures shall control. Capitalized terms used but not defined prior to or in this summary shall have the respective meanings ascribed to such terms later in the Motion or in the Bidding Procedures, as applicable.

|  |  |  |
|---|---|---|
|  |  | (the "Bidding Fee"),[5] and including an express waiver of any substantial contribution administrative expense claim under Section 503(b) of the Bankruptcy Code related to bidding for the Project Opportunity; <br><br> o Qualified Bidders must commit to close the contemplated transaction(s) by a Closing Date of no later than October 10, 2025 (unless otherwise agreed); <br><br> o A Qualified Bidder must provide that its Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence; <br><br> o Qualified Bidders must acknowledge they have had an opportunity to conduct any and all due diligence regarding the Project Opportunity and has relied solely upon its own independent review, investigation and/or inspection of any documents and any other information in making the Bid; <br><br> o Qualified Bidders must agree to serve as a backup bidder (the "Next-Highest Bidder") if its Bid is the next highest or best bid after the Successful Bid (the "Next-Highest Bid") with respect to the Project Opportunity through the Closing Date; <br><br> o Qualified Bidders must provide a proposed schedule for due diligence and closing, which in no event may be later than October 10, 2025 and; <br><br> • Qualified Bidders must execute a purchase agreement in form and substance reasonably satisfactory to the Debtors that will be binding upon any Qualified Bidder selected as the Successful Bidder (a "Qualified Bid Purchase Agreement"); <br><br> • Qualified Bids must be accompanied by adequate information (the "Adequate Experience Information"), which may include (i) (i) information demonstrating (in the Debtors' reasonable business judgment) that the Qualified Bidder has the financial |

---

[5] This provision shall not apply to the Stalking Horse Bidder, which is entitled to receive a Court-approved Break Up Fee pursuant to the terms of these Bid Procedures.

|  | capacity to consummate the proposed Sale, (ii) evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or comparable committee or governing body) with respect to the submission of its Bid, (iii) evidence of the Potential Bidder's experience in the management and development of real estate projects comparable to the Project Opportunity, and (iv) such additional information regarding the Qualified Bidder as the Qualified Bidder may elect to include. By submitting a Bid, Qualified Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale; and |
|---|---|
|  | • Qualified Bids must include a deposit in the form of a cashier's check or wire transfer, payable to the order of the Debtors, in an amount to be proposed by Qualified Bidders and negotiated by the Qualified Bidders and Debtors, which funds will be deposited into an escrow account at an accredited institution to be identified and established by the Debtors (a "<u>Good Faith Deposit</u>"), and (ii) written evidence, documented to the Debtors' satisfaction, that demonstrates the Qualified Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the Project Opportunity (provided, however, that the closing shall not be contingent in any way on the Successful Bidder's financing), and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided further that such commitments may have covenants and conditions acceptable to the Debtors). The Debtors reserve the right to increase the Good Faith Deposit for one or more Potential Bidders.<br>• |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule 6004-1(b)(iv)(O) | This Motion seeks, and the proposed Bidding Procedures Order approves, relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h). *See* Bidding Procedures Order ¶ 16 |
| **Provisions for Selecting a Stalking Horse Bidder and** | Pursuant to ¶ 10 of the Bidding Procedures and the Stalking Horse Designation Procedures as described herein. |

| | |
|---|---|
| **Providing Protections to Stalking Horse Bidder**<br>Local Rule 6004-1(c)(i)(C) | |
| **Modification of Bidding Procedures**<br>Local Rule 6004-1(c)(i)(D) | ¶ 25 of the Bidding Procedures sets forth the Debtors' reservation of rights to, in its reasonable business judgment and with approval of the City, in a manner consistent with its fiduciary duties and applicable law, modify these Bidding Procedures. |
| **Closing with Next-Highest Bidder**<br>Local Rule 6004-1(c)(i)(E) | ¶ ¶ 13, 20, and 26 of the Bidding Procedures set forth the procedure through which Debtors, with the approval of the City, will select, and, if necessary, close a Sale, with the Next-Highest Bidder. At the Buyer Selection Deadline, Debtors, with the City's approval, shall select the Successful Bidder and the Next-Highest Bidder. Debtors will notice the identity of these two parties no later than one business day after the Buyer Selection Deadline and then move for Court approval to close the Sale with the Successful Bidder. In the event the Successful Bidder fails to close, Debtors may, but will not be obligated to, move to sell the Project Opportunity to the Next-Highest Bidder. Debtors will return the Good Faith Deposit of the Successful Bidder and Next-Highest Bidder three business days after the Sale closes, or, in the event the Successful or Next-Highest Bidder fails to close due to a breach or failure to perform, Debtors will retain the Good Faith Deposit as liquidated damages, pursuant to ¶ 24 of the Bidding Procedures. |
| **Provisions Governing the Sealed Bid Auction**<br>Local Rule 6004-1(c)(ii) | The Sealed Bid Auction process is described throughout the Bidding Procedures. The Sealed Bid Auction contains the following steps:<br><br>1) Debtors, with the approval of the City and the Court, will select a Stalking Horse Bidder no later than May 16, 2025. The Stalking Horse Bidder will submit the Stalking Horse Initial Bid, a binding agreement to purchase the Project Opportunity in the event no other Bids are received. The identity of the Stalking Horse Bidder and terms of the Stalking Horse Initial Bid will be made public and serve as a baseline for Qualified Bidders to submit subsequent Bids.<br>2) Only Qualified Bidders may participate in the Sealed Bid Auction. Potential Bidders will have until June 7 , 2025 to submit information to the Debtors and JLL that may qualify them as Qualified Bidders. New Qualified Bidders will not be allowed to participate in the Sealed Auction Bid. |

|  |  | 3) All Qualified Bids must be submitted to the Debtors and JLL no later than July 1, 2025. Notwithstanding the Stalking Horse Initial Bid, Debtors will not share the contents of any Qualified Bid with any party other than the City. Each party submitting a Qualified Bid must enter into a binding agreement to consummate the Sale in the event that Qualified Bid is selected as the Successful Bid or Next-Highest Bid.<br>4) No later than August 15, 2025, the Debtors, with approval of the City, shall select the Successful Bid and Next-Highest Bid from among the Stalking Horse Bid and submitted Qualified Bids.<br>5) No later than August 18, 2025, the Debtors shall serve notice of the Successful Bid and Next-Highest Bid.<br>6) With approval of the City, the Debtors, in their reasonable business judgment and in the best interest of the bankruptcy estates, may complete the Bidding Process through a live, in-person Auction rather than a Sealed-Bid Auction. |

### A. The Bid Procedures Contemplate Approval of Breakup Fee and Other Protections

12.     As it has become customary in attempting to market and sell assets like the Project Opportunity in a value-maximizing manner, the Debtors believe it is important to have the ability to enter into a Stalking Horse Agreement with a potential Qualified Bidder. Also, consistent with the marketing of this kind of asset, the Debtors foresee that it may be necessary to afford a Stalking Horse Bidder certain protections (the "Bid Protections").

13.     In the event that the Debtors, with the consent of the City, select a Stalking Horse Bidder, then the Debtors shall seek authority to enter a Stalking Horse Agreement, with a Breakup Fee, not to exceed 3% of the applicable Qualified Bid. In the event that Debtors obtain the consent of the City and the U.S. Trustee with respect to the Stalking Horse Agreement, then they may submit an order to this Court approving such Stalking Horse Agreement under certification of counsel (the "Stalking Horse Order").

10

14. In the event that the City and the U.S. Trustee do not each consent to the proposed Stalking Horse Agreement and entry of the Stalking Horse Order, the Debtors shall be authorized to file a notice seeking an expedited hearing on not less than seven (7) calendar days' notice (the "Stalking Horse Hearing") seeking approval of the Stalking Horse Agreement. All parties in interest shall have the right at the Stalking Horse Hearing to object to the Debtors' entry into a Stalking Horse Agreement on any grounds, including to object to the Breakup Fee and the form of Stalking Horse Order. To the extent that the Debtors seek to award a Breakup Fee in excess of 3% of the applicable Qualified Bid, even if the City and the US Trustee consents, the Debtors must seek Court approval of such Breakup Fee but may do so on an expedited basis.

15. The Debtors intend to provide copies of any Stalking Horse Agreement and, in their discretion, may provide a form purchase agreement if no Stalking Horse Agreement has been entered into, to all potential bidders. The procedures described herein regarding the selection of and Bid Protections afforded to a Stalking Horse Bidder shall be referred to as the "Stalking Horse Designation Procedures."

16. A breakup fee is a fee paid by the seller to the stalking horse bidder in the event such bidder is out-bid by another buyer. The reason for such fee is that it provides an incentive for a bidder to make the initial bid as a stalking horse and know that if she is not the prevailing bidder, she will at least recoup the costs of her initial research and due diligence and some return for the stalking horse's time and effort. Incentivizing someone to become a stalking horse is generally believed to induce others to participate in the sale. *In re Asarco L.L.C.*, 650 F.3d 593 (5th Cir. 2011); *In re O'Brien Envtl. Energy, Inc.*, 181 F. 3d 527 (3d Cir. 1999).

17.     Out of an abundance of caution, the Debtors desire to be clear that any Breakup Fee will be payable solely from the proceeds received by the Debtors at a closing on the sale of the Project Opportunity.

18.     The buyer of the Project Opportunity (the "Buyer") will be eligible to receive the protections as a good faith buyer. A purchase agreement under 11 U.S.C. 363 "negotiated, proposed, and entered into ….in good faith, without collusion … [resulting from] arm's length bargaining with … parties represented by independent counsel" is entitled to good faith purchase protections. These include that the sale cannot be avoided or undone (11 U.S.C. 363(m)), that the sale cannot be avoided if the price was not controlled by an agreement among the potential bidders (11 U.S.C. 363(n)) and that the sale cannot be avoided because it was for fair and reasonable consideration, for the highest and best offer, and for reasonably equivalent value. *In re TriDimension Energy, L.P.*, 2010 Bankr. Lexis 4838 (Bankr. N.D. Tex. Nov.19, 2010).

19.     After the Buyer is selected, be it the Successful Bidder or the Next-Highest Bidder, Debtors either will file a motion (the "Sale Motion") for an order to sell the Project Opportunity at the price submitted by the Buyer or will file a plan that provides for the approval of the sale. Consummation of the Sale requires subsequent Bankruptcy Court approval. In addition to the approval of the Bankruptcy Court, consummation of a sale will require that the Successful Bidder enter into contracts directly with the City related to the acquisition of City-owned property and the development of the SilverRock project and satisfaction of agreed conditions to closing.

### III.     BASIS FOR RELIEF REQUESTED

**A.  The Court Should Approve the Proposed Bid Procedures**

20. The Court should approve the Bid Procedures as set forth in Exhibit 1 to the attached Order because such procedures, coupled with JLL's marketing plan, will ensure that the sale of the Project Opportunity yields the highest possible value. The Bid Procedures allow the Debtors, in consultation with the City, to conduct the Buyer selection process in a controlled, fair, and transparent manner that will follow on a marketing effort designed to attract financially and competent bidders capable of closing the purchase and completing the Project Opportunity.

21. The decision to sell substantially all assets of a chapter 11 debtor is justified by the business judgment of, in this case, the CRO and the Independent Manager, in consultation with JLL. The business judgment of the CRO and Independent Manager enjoy a presumption that in making decisions, they "acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995). *In re Johns-Manville Corp.*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986).

22. Debtors in possession, just as chapter 11 trustees, have a fiduciary and statutory duty to obtain the highest and best offer for the debtor's assets. *In re Mondie Forge Inc.*, 148 B.R. 499 (Bankr. N.D. Ohio 1992). To that end, courts have uniformly recognized that procedures intended to achieve that result, procedures which involve robust marketing and competitive bidding are appropriate if not mandated in the context of a bankruptcy transaction. *Integrated Resources, Inc.*, 147 B.R. 650 (Bankr. S.D,N.Y. 1992).

23. In this case, the Independent Manager and CRO, on behalf of the Debtors, have discharged their duties with utmost fealty. They have reviewed the extensive documents and history of the Project Opportunity, consulted extensively with JLL, and many meetings and conferences with the City of La Quinta, secured creditors, and other stakeholders in the Project

Opportunity, and will soon be engaging in preliminary discussions with possible buyers to select Qualified Bidders and a Stalking Horse Purchaser.

24. Based on their experience, consultation with JLL and the City, and their deep familiarity with the Project Opportunity, it is the CRO and Independent Manager's judgement that the Bid Procedures should be approved.

25. Debtors have sound business justifications for seeking approval of this Motion at this time. First, Debtors are required to file the Motion under the terms of the DIP Credit Agreement with the City, which will be executed pursuant to this Court's final order approving DIP financing, with the City as lender (the "Final DIP Order") (Dkt. No. 330).[6] In addition, the Independent Manager and CRO are of the opinion that it is useful for the creditor body and the City to see how the sale of substantially all of the Debtors' assets, manifested in the Project Opportunity, is coupled with the marketing plan which would conclude in a chapter 11 plan. This process will yield the highest realizable price for the Project Opportunity, which is the goal of the Independent Manager and CRO. The roadmap as set forth is transparent, coherent and justified, and filing this Motion along with the order appointing JLL as real estate brokers and the Final DIP Order marks a significant achievement by the Debtors.

26. The CRO and Independent Manager have sound business justification for seeking approval of the specific bid procedures set forth herein. A robust and widely cast marketing effort coupled with a plan avoids what the bankruptcy court in the Second Circuit case described as the

---

[6] As stated on the record, the Final DIP Order remains subject to possible amendment based on comments presently under discussion with the City's title insurer.

threat of "a powerful bullying creditor …. forcing a sale to cash out quickly, leaving other creditors without chapter 11 projections". *In re Chrysler LLC*, 576 F.3d 108 (2d Cir. 2009).

### IV. RELIEF REQUESTED

27. By this Motion, the Debtors seek entry of (a) the Bidding Procedures Order, (b) approving the Bidding Procedures, including, but not limited to, the form and manner of notice thereof, and (c) an order granting related relief.

### V. NOTICE

28. Notice of this Motion will be provided to the following, or their counsel, if known: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' twenty (20) largest unsecured creditors (excluding insiders); (ii) counsel to the City; (iii) all known holders of liens upon the DIP Collateral; and (iv) all parties that have filed notices of appearance pursuant to Bankruptcy Rule 2002.

29. No prior request for the relief sought herein has been made to this or any other court.

### VI. CONCLUSION

30. Based on the foregoing, any additional pleadings which may be submitted, any evidence and the arguments of counsel at the hearing on the Motion, the Debtors requests that this Court enter an order approving the Bid Procedures to be used in connection with the marketing plan to be designed and executed by JLL and such other relief as may be requested by the Debtors and necessary and justified under the circumstances.

**WHEREFORE**, the Debtors respectfully request that the Court (a) grant the relief requested herein and (b) grant such other and further relief to the Debtors as the Court may deem proper and just.

Respectfully Submitted,
Dated: February 19, 2025                **ARMSTRONG TEASDALE LLP**

Wilmington, Delaware

*/s/ Jonathan M. Stemerman*
Jonathan M. Stemerman (No. 4510)
Eric M. Sutty (No. 4007)
Denisse Guevara (No. 7206)
1007 North Market Street
Third Floor
Wilmington, Delaware 19801
Telephone: (302) 416-9670
jstemerman@attlp.com
esutty@atllp.com
dguevara@atllp.com

-and-

Victor A. Vilaplana (Approved *Pro Hac Vice*)
823 La Jolla Rancho Road
La Jolla, CA 92037
Telephone: (619) 840-4130
vavilaplana@gmail.com

-and-

Benjamin M. Carson (Approved *Pro Hac Vice*)
5965 Village Way, STE E105
San Diego, CA 92130
Telephone: (858) 255-4529
ben@benjamincarsonlaw.com

*Counsel for the Debtors*