# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re**<br><br>**SilverRock Development Company, LLC et al**[1]<br><br>**Debtors.** | Chapter 11<br><br>Case No.: 24-11647-MFW<br><br>Jointly Administered<br><br>**Hearing Date:**<br> March 12, 2025<br><br>**Obj. Deadline:**<br> March 7, 2025 |

**ORDER (I) (A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] of the Debtors in the above-captioned chapter 11 cases (the "Cases"), seeking, an order (a) approving certain bidding procedures attached hereto as Exhibit 1 (the "Bidding Procedures") for the sale of all or substantially all of Debtors' assets (the "Sale") the Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "Bidding Procedures Hearing"); and the Court having considered the statements of counsel and the evidence presented

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: SilverRock Development Company, LLC (5730), RGC PA 789, LLC (5996), SilverRock Lifestyle Residences, LLC (0721), SilverRock Lodging, LLC (4493), SilverRock Luxury Residences, LLC (6598) and SilverRock Phase I, LLC (2247). The location of the Debtors' principal place of business and the Debtors' mailing address is 343 Fourth Avenue, San Diego, CA 92101.

[2] Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

at the Bidding Procedures Hearing; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.      The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (0). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105 and 363. Venue of the Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The Debtors have offered good and sufficient reasons for, and the best interest of their estates will be served by, this Court granting the Motion to the extent provided in this Order, including approving the Bidding Procedures, attached hereto as Exhibit 1, and form and manner of notice thereof.

C.      Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required. Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

D.      In accordance with Local Rule 6004-1, the Debtors have properly filed and noticed the Motion. The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary for Debtors and their estates.

E.      The Bidding Procedures were proposed in good faith.

F.      The Bidding Procedures are fair, reasonable and appropriate under the circumstances, and are reasonably designed to maximize the value to be achieved for sale of the Assets (as such term is defined below).).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** to the extent provided herein.

2.      All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

3.      The Bidding Procedures, attached as <u>Exhibit 1</u> to this Order, are hereby approved in their entirety, as modified herein, incorporated by reference as if fully set forth herein, and shall govern all Bids and Bid Proceedings relating to the Project Opportunity. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures, subject to the consent and/or approval of the City, where required pursuant to the Final DIP Order, the MOU and/or other agreements between the City and the Debtors.

4.      Working with JLL, Debtors, in consultation with the Consultation Parties (as that term is defined in the Bidding Procedures) and  the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, will select the Stalking Horse Bidder from among the Qualified Bidders, file a motion to approve the Stalking Horse Bidder no later

3

than May 5, 2025, and obtain an order to enter into a definitive agreement, including a term sheet and Break Up Fee, describing the Stalking Horse Bidder's Qualified Bid, no later than May 16, 2025 (the "Stalking Horse Selection Deadline"). The deadline for Potential Bidders to submit information that would permit them to be Qualified Bidders is June 7, 2025 (the "Submission Deadline.") The deadline for Qualified Bidders to submit a sealed Qualified Bid, in accordance with the Bidding Procedures shall be July 1, 2025, at 4p.m. (prevailing Eastern Time the "Sealed Bid Deadline"). The deadline for the Debtors, working with JLL in consultation with the Consultation Parties and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, to select the Successful Bidder and Next-Highest Bidder shall be August 15, 2025 (the "Buyer Selection Deadline"). Debtors, in consultation with the Consultation Parties and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, may agree to extend the Stalking Horse Selection Deadline, the Submission Deadline, the Sealed Bid Deadline, or the Buyer Selection Deadline by mutual agreement without further order of the Court; *provided that* the Debtors shall file a notice of any such extended deadlines and serve notice of same on all Potential Bidders and Qualified Bidders.

5.      All Potential Bidders and Qualified Bidders are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bidding Process and the terms and conditions of the transfer of the Project Opportunity.

6.      The Stalking Horse Designation Procedures, described in Paragraphs 6-8 of this Order, are approved, and the Debtors, in consultation with the Consultation Parties and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, are authorized to seek approval of any Stalking Horse Agreement, which may consist only

4

of a term sheet with proposed purchase and sale terms and a proposed Breakup Fee, with any Stalking Horse Bidders Bidder in accordance with the Stalking Horse Designation Procedures provided in the Motion, as modified herein. In such instance, the Debtors shall file a supplement to the Motion (the "Stalking Horse Supplement") seeking approval of the Stalking Horse Agreement with no less than ten calendar days' notice of the objection deadline to: (a) the U.S. Trustee; (b) the City; (c) the Consultation Parties; and (d) all parties who have filed appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in these cases (the "Stalking Horse Notice Parties"), with no further notice being required; *provided that* the Stalking Horse Supplement sets forth the Stalking Horse Bid, the proposed Breakup Fee, and the Stalking Horse Agreement finalized with the Stalking Horse Bidder.

7) Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (each a "Stalking Horse Objection") shall: (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Stalking Horse Notice Parties within ten calendar days after the service of the Stalking Horse Supplement.

8) If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid that is in no event fewer than ten calendar days after the service of the Stalking Horse Supplement. If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the objection deadline, the Debtors will submit the Stalking Horse Approval Order to the Court, which the Court may enter without a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement. For the avoidance of doubt, the Court is not approving any Breakup Fee by and through this Order.

5

9) No later than one business day following the conclusion of the Bidding Process, the Debtors will file a notice identifying the Successful Bidder and the Next-Highest Bidder and a notice of motion for approval to sell the Debtors' Assets (as defined herein).

10) All parties that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

11)      Subject to those rights expressly reserved by the City pursuant to the Final DIP Order, and subject further to the Debtors first satisfying their burden of proof, the Buyer shall be entitled to all legal protections typically afforded to a good-faith buyer of real estate under both the Bankruptcy Code and under California law. Nothing in this Order is intended to modify the provisions contained in the Final DIP Order (Dkt No. 330) or memorandum of understanding ("MOU") attached to the Final DIP Order.  In the event of a conflict between this Order and the Final DIP order, the terms of the Final DIP Order shall govern.   Further, nothing in this Order is intended to abrogate the rights of credit bidders under Bankruptcy Code Section 363(k) (subject to the credit bidders  otherwise being  Qualified Bidders.)

12) The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

13) Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, this Order shall be immediately effective and enforceable upon entry of this Order. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

14) The Court shall retain jurisdiction over any matter or dispute arising from or relating to the interpretation or implementation of this Order.

<u>**EXHIBIT 1**</u>

**(THE BIDDING PROCEDURES)**

## BIDDING PROCEDURES

1.      On August 5, 2024, SilverRock Development Company, LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Set forth below are the bidding procedures (the "<u>Bidding Procedures</u>")[4] to be used with respect to the sale or disposition (the "<u>Sale</u>") of the Debtors' Assets (as defined herein).

**Any party interested in bidding on the Debtors' Assets should contact Debtors' real estate broker, Jones Lang LaSalle ("JLL"), Attn: Jeff Adkison (jeff.adkison@jll.com) and Debtors' CRO, Douglas Wilson (dwilson@douglaswilson.com).**

### SUMMARY OF KEY BIDDING PROCEDURES DATES

| DATE | DEADLINE / EVENT |
|---|---|
| March 12, 2025 at 10:30 A.M.   (ET) | Bidding Procedures Hearing. |
| May 5, 2025 | Deadline for Debtors to file the Stalking Horse Supplement |
| May 16, 2025 | Deadline for Debtors to obtain an order approving designation of  Stalking Horse Bidder |

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion of Debtors for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (and (IV) Granting Related Relief (the "Motion").

| | |
|---|---|
| June 7, 2025 | Deadline to approve additional Qualified Bidders as overbidders |
| July 1, 2025 | Last day for Qualified Bidders to submit highest and best sealed offers to JLL and the Debtors (the "the Sealed Bid Deadline") |
| August 15, 2025 | Deadline for Debtors to select the Successful Bidder and Next-Highest Bidder (the "Buyer Selection Deadline") |
| August 18, 2025 | Deadline to file and serve Notice identifying the Successful Bidder and Next-Highest Bidder and to file a Notice of Motion for an Order to Sell the .Assets (as defined herein). |
| September 12, 2025 | Deadline to obtain an order to sell the Assets (as defined herein) to the Successful Bidder, or, as necessary, to the Next-Highest Bidder |
| October 10, 2025 | Deadline to close the Sale of the Assets (as defined herein) |

## I.  DESCRIPTION OF THE ASSETS TO BE SOLD

3.    The Debtors are seeking to sell their right, title and interest in and to the assets comprising the Debtors' property that is part of the Project Opportunity (as that term is defined in the Bidding Procedures Motion and modified herein) (such estate assets, collectively, the "Assets") free and clear of all liens, claims, and encumbrances thereon. Such Assets include certain real property owned by the Debtors that is part of a master planned resort community that includes a Pendry Hotel, a Montage Hotel, Pendry-branded residences, Pendry-branded bungalows, Montage-branded residences, a golf clubhouse and shared conference center, and several undeveloped planning areas, and related contracts, including branding agreements with Montage

Hotel and Resorts and Pendry Hotels and Resorts, plans, development rights, drawings permits and equipment.

4.      The Project Opportunity also includes additional real estate (the "<u>Phase II Real Estate</u>") owned by the City of La Quinta (the "City").

To obtain the best and highest offer for the Sale of their Assets, the Debtors have determined in their business judgment that they will market their Assets in conjunction with the City's marketing of the Phase II Real Estate c collectively. Notwithstanding the foregoing, and for the avoidance of any doubt, the Debtors are only seeking Court approval to sell their Assets "free and clear" pursuant to 11 U.S.C. § 363(b) and (f). Any such sale will not include the Phase II Real Estate, which is not property of the Debtors' estates. Instead, any sale of the Phase II Real Estate will be conducted outside of these Chapter 11 Cases and is therefore not subject to the jurisdiction of the Bankruptcy Court. To the extent the Successful Bidder for the Debtors' Assets in the Chapter 11 Cases intends to purchase some or all of the Phase II Real Estate, the Successful Bidder is entitled to negotiate the terms of any such sale with the City subject to and in accordance with applicable law.

In selecting the Successful Bidder, Debtors will only consider what is in the best interests of the Debtors and their estates. The Sale of the  Assets shall be subject to a competitive Sealed Bid as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"). The Debtors will only consider "all-asset" bids for the Assets and will not accept bids to purchase Assets piecemeal in parts or parcels,.

## II.    CONFIDENTIALITY AGREEMENT

5.    Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into (unless previously entered into) with the Debtors, on or before the Sealed Auction Bid Deadline, an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (the "Confidentiality Agreement"). Further, to participate in the diligence process and receive access to due diligence information, a party shall submit to the Debtors or their advisors and the City and its advisors sufficient information, as reasonably determined by the Debtors and the City, to allow the Debtors and the City to determine that the interested party (a) intends to access the Data Room for a purposes consistent with these Bidding Procedures, (b) has the financial wherewithal to consummate the purchase and development of the Project Opportunity, and (c) the experience necessary to manage and develop the Project Opportunity. Each person or entity that enters into the Confidentiality Agreement with the Debtors on or before the Bid Deadline is hereinafter referred to as a "Potential Bidder."

6.    After a Potential Bidder enters into a Confidentiality Agreement with the Debtors, the Debtors shall provide access to the Data Room.

### III.    QUALIFIED BIDDERS AND STALKING HORSE BIDDER

7.      Qualified Bidders, as defined in these Bid Procedures, are Potential Bidders, who, in the determination of JLL, the Debtors, in consultation with the Consultation Parties[5] and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, have the financial and development capabilities to complete the Project Opportunity.  Only Qualified Bidders may participate in the Sealed Bid process.

8) As appropriate throughout the Bidding Process, the Debtors will consult with  the Consultation Parties and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU and shall (a) coordinate with Qualified Bidders regarding the conduct of their respective due diligence, (b) evaluate bids from Qualified Bidders on the Assets, (c) following consultation with the City, negotiate any bid made to acquire the Assets, and (d) following consultation with  the Consultation Parties and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, make such other determinations as are provided in these Bidding Procedures (collectively, the "Bidding Process").

9) In consultation with the Consultation Parties and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, the Debtors will select a Stalking Horse Bidder. Upon designation of a Stalking Horse Bidder, the Debtors shall file a

---

[5] The Consultation Parties, as described herein, shall consist of secured creditors Poppy Bank, Cypress Point Holdings, LLC, Construction Loan Services II, LLC d/b/a Builders Capital, R.D Olson Construction, Inc., Keillor Capital (on behalf of creditors RAF Pacifica Loan Opportunity Fund I, LLC and The Arnold Fishman Revocable Trust dated July 15, 1999), and interested party Traub Family Revocable, but only to the extent they execute Non-Disclosure Agreements with Debtors that among other things, verify they are not Potential Bidders, will not be financing Potential Bidders, and will not use the information provided to them for the benefit of any Potential Bidder. For the avoidance of doubt, after a party becomes a Consultation Party, they are forever barred from participating in the Bidding Process as a Bidder. .

Stalking Horse Supplement on notice consistent with the procedures outlined in the Order granting the Motion. The selection and approval of the Stalking Horse Bidder shall be in accordance with the Stalking Horse Designation Procedures described in Paragraphs 6 through 8 of the Order.

IV.    **DUE DILIGENCE**

10) The Debtors have established a confidential electronic data room concerning the Project Opportunity (the "Data Room") and will grant each Potential Bidder, as applicable, access to such Data Room. Up to and including the Bid Deadline (such period, the "Diligence Period"), the Debtors shall afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances. The Debtors or JLL may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide access to such materials to all Potential Bidders. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Project Opportunity in conjunction with submitting its Bid.

11) Subject  the provisions of the Order and these Bid Procedures regarding consultation with the Consultation Parties and the City, and the City's rights under the MOU, neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Project Opportunity to any person or entity who is not a Potential Bidder and who does not otherwise comply with the participation requirements set forth above.

12) The provision of information in the Data Room or otherwise does not constitute a representation or warranty by the Debtors, JLL, the CRO, or any of their agents or representatives regarding any matter, including without limitation the condition of the Project or the terms or conditions that the Debtors may require in connection with any transaction pursuant to these Bid Procedures.  The City's provision of information or documentation to the Debtors or their agents that may be included in the Data Room or otherwise disseminated to in connection with the marketing of the Phase II Real Estate or possible development agreements similarly shall not constitute a representation or warranty by the City or any of its agents regarding any matter.  The sale of the Assets shall be as is, where is, with all faults.

## V.    <u>SEALED BID DEADLINE</u>

13)  A Qualified Bidder that desires to make a Bid shall deliver written copies of its Bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to Jones Lang LaSalle ("<u>JLL</u>"), Attn: Jeff Adkison (jeff.adkison@jll.com) and Debtors' CRO, Douglas Wilson (dwilson@douglaswilson.com)  no later than **<u>July 1, 2025 at 4:00 p.m. (prevailing Eastern Time)</u>** (as may be extended, with the consent of the City, a "<u>Sealed Bid Deadline</u>"). As soon as reasonably practicable following the Sealed Auction Bid Deadline, the Debtors will provide to the City and the Consultation Parties copies of all Bids (with such distribution permissible by electronic means).  This disclosure to the City and the Consultation Parties notwithstanding, all Bids, other than the Stalking Horse Initial Bid, shall remain confidential as part of the Sealed Bid process.

14) The Debtors, the CRO and JLL are authorized to provide to the City and Consultation Parties all information and documents made available to them by any Bidder, subject to the City

and Consultation Parties entering into NDA's on substantially the same terms that govern the Bidders.

## VI.    BID REQUIREMENTS

15) In order for a Bid to become a Qualified Bid, it must comply with the following requirements (collectively, the "Bid Requirements"):

a) be accompanied by a letter or email:

    i.    fully disclosing the identity of the Potential Bidder and providing the contact information of the specific person(s) whom the Debtors or its advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale) in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder;

    ii.    setting forth any and all of pre-petition and post-petition relationships with other bidders, the Debtors, officers of Debtors or their affiliates, major creditors or equity security holders, or other parties in interest for these Cases.

    iii.    setting forth the purchase price to be paid by such Potential Bidder-where said purchase price constitutes the Potential Bidder's best and highest offer- along with physical or environmental assumptions that affect the purchase price being offered, and the source of the funds the Potential Bidder intends to use to pay such purchase price , including whether the proposed purchase price includes a credit bid component, and, if so, the amount of the proposed credit bid;

    iv.    except as is described in the Motion and Bid Procedures Order, providing that the Bid, except with respect to a Stalking Horse Bidder, is not subject to any bidding, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement (the "Bidding Fee"), and including an express waiver of any substantial contribution administrative expense claim under Section 503(b) of the Bankruptcy Code related to bidding for the Project Opportunity;

    v.    containing a commitment to close the contemplated transaction(s) by a Closing Date of no later than October 10, 2025 (unless otherwise agreed);

    vi.    providing that such Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

    vii.    containing an acknowledgment that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Assets and has relied solely upon its own independent review, investigation and/or inspection of any documents and any other information in making the Bid, and that the sale is as is, where is, with all faults;

    viii.    providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Bid is the next highest or best bid after the Successful Bid (as defined below) (the ''Next-Highest Bid") with respect to the Assets through the Closing Date;

    ix.    providing an outline of the Potential Bidder's proposed schedule for due diligence and closing, which in no event may be later than October 10, 2025 and;

b)  be accompanied by an executed purchase agreement in form and substance reasonably satisfactory to the Debtors that will be binding upon any Qualified Bidder selected as the Successful Bidder (a "Qualified Bid Purchase Agreement");

c)  be accompanied by adequate information (the "Adequate Experience Information"), which may include (i) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (ii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable committee or governing body) with respect to the submission of its Bid, (iii) evidence of the Potential Bidder's experience in the management and development of real estate projects comparable to the Project Opportunity, and (iv) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale; and

d)  be accompanied by (i) a deposit in the form of a cashier's check or wire transfer, payable to the order of the Debtors, in an amount to be proposed by Qualified Bidders and negotiated by the Qualified Bidders and Debtors, determined by the Debtors in their reasonable business judgment, which funds will be deposited into an escrow account to be identified and established by the Debtors (a "Good Faith Deposit"), and (ii) written evidence, documented to the Debtors' satisfaction, that

demonstrates the Qualified Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the Assets (provided, however, that the closing shall not be contingent in any way on the Successful Bidder's financing), and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided further that such commitments may have covenants and conditions acceptable to the Debtors). The Debtors reserve the right to increase the Good Faith Deposit for one or more Potential Bidders.

e) If the bid is proposed by a group or committee to which Bankruptcy Rule 2019 applies, such group or committee must promptly file the statement required by Bankruptcy Rule 2019 as a condition to becoming a Qualified Bidder.

16) For the avoidance of doubt, any sale of the Assets is expressly subject to consultation with the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU.

17) The Debtors and JLL will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above. The Debtors shall inform Potential Bidders whether or not their Bids have been designated as Qualified Bids and, in the event the Debtors inform a Potential Bidder that it has not submitted a Qualified Bid, it shall provide information as to what is needed for the Potential Bidder to submit a Qualified Bid, thereby becoming a Qualified Bidder.  The Stalking Horse Initial Bid notwithstanding, except regarding Debtors' s disclosures to the City and Consultation Parties, as described herein, all Bids shall remain confidential.

18) As part of the Sealed Bid process, a  Qualified Bid will be evaluated by the Debtors based upon any and all factors that the Debtors deem pertinent in their reasonable business judgment, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder, (c) experience and

qualification of the Qualified Bidder and (d) any other factors that the Debtors may reasonably deem relevant.

19) The Debtors, in their business judgment, and in consultation with the Consultation Parties and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, reserve the right to reject any Bid if such Bid, among other things:

    a) requires any indemnification of the Potential Bidder in any Qualified Bid Purchase Agreement submitted as part of the Bid;

    b) is not received by the Sealed Auction Bid Deadline;

    c) does not comport with the Bid Requirements;

    d) is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the Assets;

    e) does not, in the Debtors' determination (after consultation with the City), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estates;

    f) does not, in the Debtors' determination (after consultation with the City) include satisfactory evidence of the Bidder's financial capacity or experience in the management and development of real estate projects comparable to the Project Opportunity; or

    g) Includes or omits terms or conditions relating to the development of the Assets that are unacceptable to the Debtors.

20) Any Bid rejected pursuant to the foregoing shall not be deemed to be a Qualified Bid; provided that the Debtors and the City have the right to work with the parties to any rejected Bid to cure any such defects. In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it as soon as reasonably practicable, but no later than three (3) business days after the Sealed Bid Deadline.

## VII.    BIDDING PROCESS

21) Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate in the Sealed Bid process[6] and be selected as a Successful or Next-Highest Bidder. If the only Qualified Bid the Debtors receive is from the Stalking Horse Bidder, then the Stalking Horse Bidder shall be deemed the Buyer and Successful Bidder.

22) The Debtors, in consultation with the Consultation Parties and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, shall determine which Qualified Bid constitutes the Successful Bid.  In so doing, the Debtors shall take into account any factors the Debtors  reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things, the following: (a) the amount and nature of the consideration, including any obligations to be assumed; (b) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid; (c) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals and entry into direct agreements with the City related to the acquisition of City-owned property and the development of the Project) and the timing thereof; (d) the net benefit to the Debtors' estates, and; (e) the tax consequences of such Qualified Bid,

---

[6] In consultation with the Consultation Parties and City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, Debtors retain the right ,to change the Sealed Bid process into a public auction held in person or by Zoom, if Debtors determine, in their reasonable business judgment, that a public auction is in the best interest of their estates.  If Debtors decide to change the Sealed Bid process into a public auction, they shall provide at least 14-days advanced notice to all Consultation Parties and participating Qualified Bidders and seek further order from this Court, on shortened notice of five business days,  in full compliance with all federal and local bankruptcy rules

23) At or before the Buyer Selection Deadline, the Debtors will: (a) in consultation with the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, determine, consistent with the Bidding Procedures, which bid constitutes the highest and best bid (the "Successful Bid"); and (b) notify all Qualified Bidders participating in the Bidding Process the name of the maker of the Successful Bid (the "Successful Bidder"), and the amount and other material terms of the Successful Bid. The Debtors shall designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the Assets in the event that the Successful Bidder does not close the Sale. Unless the Bankruptcy Court orders otherwise, upon application by the Debtors, the Debtors shall not consider any Bids submitted after the conclusion of the Buyer Selection Deadline and any and all such Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

24) No later than one business day after the Buyer Selection Deadline, the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder for the Project Opportunity (or subset thereof) and any applicable Next-Highest Bidder, the amount of the Successful Bid and the Next-Highest Bid and, if the Successful Bidder or the Next-Highest Bidder is a credit bidder, what portion of the bid is a credit bid and what portion (if any) is cash. If the Successful Bidder or the Next-Highest Bidder is a special purpose entity, the notice shall also identify the entity or entities that are the equity holders, or who otherwise control, the special purpose entity. At the same time, the Debtors shall serve notice of the same on all contract counterparties whose contracts are to be assumed and assigned and to all creditors who have filed an appropriate request for service of notices in accordance with Bankruptcy Rule 2002. Simultaneously, Debtors shall also provide notice of motion to sell the Assets to the Successful Bidder.

25) All bidders participating in the Bidding Process and Sealed Bid process will be deemed to have consented to the core jurisdiction and constitutional authority of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Bidding Process, the Sale, and all agreements entered into in connection with any proposed sale transaction.

## VIII.    RETURN OF GOOD FAITH DEPOSIT

26) The Good Faith Deposits of all Qualified Bidders shall be held in escrow but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Debtors shall retain any Good Faith Deposit submitted by the Successful Bidder. At the closing of a Sale contemplated by a Successful Bid, the applicable Buyer will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided. The Good Faith Deposits of any Next-Highest Bidder shall be retained until three (3) business days after the closing of the Sale. The Good Faith Deposits of any other Qualified Bidders will be returned as soon as reasonably practicable, but no later than three (3) business days following the Buyer Selection Deadline.

27) If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the applicable Qualified Bid Purchase Agreement or any other form of purchase agreement reasonably satisfactory to the Debtors, the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Buyer (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.  As actual damages would be difficult to ascertain in the event of a breach or failure to perform prevents the Buyer from consummating the Sale, Debtors' retention of the Good Faith Deposit

22

represents a fair and reasonable estimate of the damages Debtors would incur as a result of such breach.

## IX.    RESERVATION OF RIGHTS AND MODIFICATIONS

28) Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties  and the City, without prejudice to any of the City's approval rights as set forth in the Final DIP Order and MOU, and upon obtaining Court order to make a material modification,   reserve the right to modify these Bidding Procedures with respect to extending the deadlines set forth herein, waiving terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), and imposing additional terms and conditions with respect to any or all potential bidders; *provided, however*, that any such modification of these Bidding Procedures shall not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order (not including these Bidding Procedures) or any other order of the Bankruptcy Court entered in these cases, and shall be disclosed to each Qualified Bidder at or prior to the Buyer Selection Deadline.

## X.    NEXT-HIGHEST BIDDER

29) Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable purchase agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Project Opportunity (or subset thereof), the Next-Highest Bidder will be deemed to be the Buyer for the Project Opportunity, and the Debtors will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid as approved by further order of the Bankruptcy Court.

23

[*Remainder of Page Intentionally Left Blank*