**EXHIBIT A**

**Proposed Order**

Case 24-11647-MFW    Doc 513-2    Filed 06/05/25    Page 1 of 8

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SILVERROCK DEVELOPMENT COMPANY, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 24-11647 (MFW)<br><br>(Jointly Administered)<br><br>Ref. Docket No. __ |

**ORDER (I) APPROVING THE DEBTORS' SELECTION OF A STALKING HORSE BIDDER; (II) APPROVING BREAK-UP FEE IN CONNECTION THEREWITH; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) approving TBE RE Acquisition Co II LLC as the stalking horse bidder (the "Stalking Horse Bidder") for the sale of the Property; (ii) approving the payment of the $2 million break-up fee (the "Break-Up Fee") to the Stalking Horse Bidder in connection therewith, and (iii) granting related relief; and this Court having entered an order on March 13, 2025 [Docket No. 396] (the "Bid Procedures Order") approving, among other things, the Bid Procedures attached thereto as Exhibit 1; and the Debtors having determined, after extensive negotiations and in consultation with the City of La Quinta, California (the "City") and the Consultation Parties (as defined in the Bid Procedures Order), that in their business judgment TBE RE Acquisition Co II LLC should be designated as the Stalking Horse Bidder with respect to the Assets; and upon adequate and sufficient notice of the Motion, the Proposed Stalking Horse LOI, and all other related transactions contemplated thereunder and in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: SilverRock Development Company, LLC (5730), RGC PA 789, LLC (5996), SilverRock Lifestyle Residences, LLC (0721), SilverRock Lodging, LLC (4493), SilverRock Luxury Residences, LLC (6598) and SilverRock Phase I, LLC (2247). The location of the Debtors' principal place of business and the Debtors' mailing address is 343 Fourth Avenue, San Diego, CA 92101.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Motion.

this Order; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and the Court having reviewed and considered the Motion and all relief related thereto including the Stalking Horse Declaration and any objections thereto; and upon the full record in support of the relief requested by the Debtors in the Motion; and this Court having jurisdiction over this matter; and that this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper; and it further appearing that the legal and factual bases set forth in the Motion and at the hearing (if any) establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the full record of these chapter 11 cases and all other pleadings and proceedings, including the Motion and the Stalking Horse Declaration; and after due deliberation thereon, and good and sufficient cause appealing therefor, IT IS HEREBY

**FOUND, CONCLUDED AND DETERMINED THAT:**[3]

A.  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The legal bases for the relief requested in the Motion are sections 105, 363 and 503 of title 11 of the United States Code, as amended (the "<u>Bankruptcy Code</u>") and rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

---

[3]  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The relief granted herein is in the best interests of the Debtors, their estates, and other parties in interest.

C.      The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the designation of the Stalking Horse Bidder for the Assets and (ii) approve the provision of the Break-Up Fee to the Stalking Horse Bidder in accordance with the terms of this Order and the Proposed Stalking Horse LOI.

D.      The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Assets will be realized. The Break-Up Fee was negotiated by the Stalking Horse Bidder and the Debtors and their respective advisors at arms'-length and in good faith. Accordingly, the Break-Up Fee is reasonable and appropriate and represents the best method for maximizing value for the benefit of the Debtors' estates. The Debtors have demonstrated that the provision of the Break-Up Fee is an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, and of substantial benefit to the Debtors' estates by inducing the Stalking Horse Bidder's bid, which bid establishes a floor for other bidders for the Assets, thereby ensuring that the Debtors receive the highest or best bid possible for the Assets.  The Debtors have also demonstrated (i) that the Stalking Horse Bidder required the provision of the Break-Up Fee as a condition to agreeing to be the Stalking Horse Bidder, (ii) the amount of the Break-Up Fee is reasonable in the context of the Purchase Price and in the context of break-up fees approved in similar cases in this district, and (iii) that the Break-Up Fee provides a substantial benefit to the Debtors' estates by inducing the Stalking Horse Bidder's Bid.

E.      Due, sufficient, and adequate notice of the hearing on the Motion and the relief requested in the Motion and the relief granted herein has been given under the circumstances and the nature of the relief requested, and no other or further notice thereof is required.

F.      The Break-Up Fee (i) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (ii) provides substantial benefit to the Debtors' estates by aiding in the Debtors' ability to designate a baseline bid and solicit higher and better bids for the Assets; (iii) is reasonable and appropriate, including in light of the size and nature of the transaction set forth in the Proposed Stalking Horse LOI, the Purchase Price, and the efforts expended by the Stalking Horse Bidder, and (iv) will enable the Debtors to promote a sale of the Property with the greatest benefit to their estates.

G.      The Break-Up Fee was negotiated by the Debtors and the Stalking Horse Bidder in good faith and at arms-length in consultation with the City and the Consultation Parties.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on the terms set forth herein.

2.      Any objections filed in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein or at the hearing on the Motion, are hereby overruled.

3.      TBE RE Acquisition Co II LLC is hereby designated as the Stalking Horse Bidder with respect to the Assets and the terms of the Proposed Stalking Horse LOI attached as <u>Exhibit B</u> to the Motion are hereby binding upon the Stalking Horse Bidder (the "<u>Designated Stalking Horse LOI</u>"). The Stalking Horse Bidder is hereby deemed a Qualified Bidder for all purposes in connection with the Bidding Procedures, any auction, and the Sale.

4.      In accordance with the terms of the Designated Stalking Horse LOI, the Stalking Horse Bidder shall deposit the $5 million bid deposit (the "<u>Bid Deposit</u>") within three (3) business

days of entry of this Order into escrow in an account established by the Debtors solely for the purpose of holding such deposit.

5. Without prejudice to the Debtors' fiduciary obligations to obtain the highest or otherwise best offer available for the Assets and the Debtors' sale process which remains ongoing, Debtors shall reasonably cooperate with the Stalking Horse Bidder in connection with the negotiation of the Amended Development Documents and obtaining City council and other governmental approvals that are required for the Stalking Horse Bidder's development plan and the purchase of the Assets by the Stalking Horse Bidder (including, without limitation, by executing and delivering such consents, applications, submissions, and other instruments, and providing such information as shall be reasonably required with regard thereto), provided that, with regard to the foregoing, if the Stalking Horse Bidder is not ultimately selected as the Successful Bidder or the Next-Highest Bidder or otherwise ceases to perform in accordance with the Designated Stalking Horse LOI, promptly thereafter the Stalking Horse Bidder shall cause all such applications and submissions applicable to be withdrawn and/or otherwise ineffective.

6. If the Stalking Horse Bidder is ultimately selected as the Successful Bidder, the Bid Deposit shall be funded to Stewart Title of California Inc. to serve as the Deposit required under the terms of the PSA (the "PSA Deposit"). If the Stalking Horse Bidder is selected as the Next-Highest Bidder, the Bid Deposit shall continue to be held by the Debtors until the Successful Bidder sale closes. If the Stalking Horse Bidder is unable, despite its reasonable good faith efforts to reach agreement with the City regarding the Amended Development Documents on or before the Sealed Bid Deadline (July 29, 2025 (subject to extension as provided in the Bid Procedures Order)), then the Bid Deposit shall be returned and no Break-Up Fee shall be payable to the Stalking Horse Bidder. Further, if the Stalking Horse Bidder is not ultimately selected as the

Successful Bidder or the Next-Highest Bidder, the Bid Deposit shall be returned to the Stalking Horse Bidder in accordance with the terms of the Bid Procedures Order.

7. Pursuant to Bankruptcy Code sections 105, 363 and 503, the Break-Up Fee is hereby approved and the Debtors are hereby authorized to pay the Break-Up Fee to the Stalking Horse Bidder from sale proceeds and pursuant to the terms of the Designated Stalking Horse LOI and this Order. For the avoidance of doubt, the Break-Up Fee shall only be payable if (i) the Stalking Horse reaches agreement with the City regarding the Amended Development Documents prior to the Sealed Bid Deadline (July 29, 2025 (subject to extension as approved in the Bid Procedures Order)), and (ii) after all bids are received, (x) the Debtors, in consultation with the City and the Consultation Parties, determine to select other bidders as the Successful Bidder and Next-Highest Bidder or (y) determine to select another bidder as the Successful Bidder and select the Stalking Horse Bidder as the Next-Highest Bidder, but the sale to the Successful Bidder closes. Under such circumstances, the obligation to pay the Break-Up Fee to the Stalking Horse Bidder from sale proceeds shall be entitled to administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, shall be payable out of the sale proceeds at the closing to a purchaser other than the Stalking Horse Bidder, and the Debtors' obligation to pay the Break-Up Fee to the Stalking Horse Bidder shall survive termination of the Designated Stalking Horse LOI. For the avoidance of doubt, no Qualified Bidder of an alternative transaction with respect to the Assets shall be granted, entitled to payment of, or receive, any break-up fee, topping fee, bidding fee, or other consideration in exchange for bidding. For further avoidance of doubt, if the Stalking Horse Bidder does not undertake reasonable good faith efforts to reach agreement with the City regarding the Amended Development Documents on or before July 29, 2025, the Break-Up Fee shall not be payable.

8. The Debtors are hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Order.

9. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

10. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7052, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11. Nothing in this Order modifies or limits the rights or remedies of the City as set forth in the *Amended Final Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Priming Liens and Superpriority Administrative Expense Status, and (III) Granting Related Relief*, entered April 15, 2025 at Docket No. 437.

12. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.