**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SILVERROCK DEVELOPMENT COMPANY, LLC, *et al.*,<br><br>      Debtors.[1] | Chapter 11<br><br>Case No.: 24-11647 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: April 7, 2026 at 10:30 a.m. (ET)**<br>**Obj. Deadline: March 31, 2026 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE COMBINED DISCLOSURE STATEMENT AND PLAN ON AN INTERIM BASIS FOR SOLICITATION PURPOSES ONLY; (II) APPROVING SOLICITATION AND VOTING PROCEDURES, INCLUDING (A) FIXING THE RECORD DATE, (B) APPROVING THE SOLICITATION PACKAGES AND PROCEDURES FOR DISTRIBUTION THEREOF, AND (C) APPROVING THE FORM OF BALLOT AND ESTABLISHING VOTING AND TABULATION PROCEDURES; (III) SCHEDULING A COMBINED HEARING AND ESTABLISHING RELATED NOTICE AND OBJECTION PROCEDURES; AND (IV) GRANTING RELATED RELIEF**

The debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors")

in the above-captioned chapter 11 cases, by and through their undersigned counsel, hereby submit

this motion (this "Motion") for entry of an order (the "Interim Approval and Procedures Order"),

substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 1125, 1126,

and 1128 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), rules 2002,

3003, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and rule 3017-2 of the Local Rules of the United States Bankruptcy Court for the District

of Delaware (the "Local Rules"), (i) approving the *Combined Disclosure Statement and Joint*

*Chapter 11 Plan of Liquidation of SilverRock Development Company, LLC and its Debtor*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: SilverRock Development Company, LLC (5730), RGC PA 789, LLC (5996), SilverRock Lifestyle Residences, LLC (0721), SilverRock Lodging, LLC (4493), SilverRock Luxury Residences, LLC (6598) and SilverRock Phase I, LLC (2247). The location of the Debtors' principal place of business and the Debtors' mailing address is 343 Fourth Avenue, San Diego, CA 92101.

*Affiliates* (as amended, modified or supplemented from time to time, the "Combined Disclosure Statement and Plan") on an interim basis and for solicitation purposes only;[2] (ii) approving solicitation and voting procedures with respect to the Combined Disclosure Statement and Plan, including (a) fixing the Record Date, (b) approving the Solicitation Packages and procedures for distribution thereof, and (c) approving the form of Ballot and establishing voting and tabulation procedures; (iii) scheduling a final, combined hearing (the "Combined Hearing") to consider (a) final approval of the adequacy of information in the Combined Disclosure Statement and Plan pursuant to section 1125 of the Bankruptcy Code and establishing related notice and objection procedures; and (iv) granting related relief.  In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.      Pursuant to Local Rule 9013-1(f), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these chapter 11 cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2]    Capitalized terms used, but not yet defined, shall have the meaning given to them below or as defined in the Combined Plan and Disclosure Statement.

4.      The bases for the relief requested herein are sections 105(a), 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, and 3020, and Local Rule 3017-2.

## BACKGROUND

**A.      General Background**

5.      On August 5, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  No official committee of unsecured creditors has been appointed in these cases.

6.      The factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in more detail in the *Declaration of Robert S. Green, Jr. in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 13] (the "First Day Declaration").  As set forth in the First Day Declaration, the Debtors' business operations centered around the real estate development of a 525-acre master planned community in the City of La Quinta, California (the "Project").

**B.      The Debtors' DIP Financing**

7.      On August 29, 2024, the Debtors filed the *Motion of Debtors Pursuant to Sections 105, 361, 362,363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing from the City Of La Quinta; (II) Granting Non-Priming DIP Lender Liens and Super-Priority Claims; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 125] (the "DIP Motion").

3

8.      On each of October 1, 18, and 31, 2024, and December 6, 2024, the Court granted certain relief sought in the DIP Motion on an interim basis [Docket Nos. 162, 188, 208 & 243, respectively] (collectively, the "Interim DIP Orders"). Through the Interim DIP Orders, the Debtors obtained interim funding in the amount of $2,690,965 (the "Interim Funding") pursuant to a term sheet (the "Interim DIP Term Sheet") between the Debtors and the City (also referred to herein as the "DIP Lender").  The City provided the Interim Funding under the Interim Term Sheet without priming any of the Project's existing secured creditors.

9.      On December 12, 2024, the Debtors filed the *Motion of Debtors Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, for an Order (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Granting DIP Lender Priming Liens and Super-Priority Claims; and (III) Granting Related Relief* [Docket No. 246], which was approved by the Court on January 23, 2025 [Docket No. 330] (as amended, the "Final DIP Order").[3]

10.      On January 23, 2025, the Debtors and the City entered into that certain *Debtor-in-Possession Credit Facility Loan and Security Agreement* (the "DIP Credit Agreement") memorializing the terms of the DIP Term Sheet in accordance with the Final DIP Order.

11.      On August 29, 2025, the Debtors filed a motion [Docket No. 653] (the "DIP Amendment Motion") to approve an amendment (the "DIP Amendment") to the DIP Credit Agreement. As described in more detail in the DIP Amendment Motion, the DIP Amendment provides the Debtors with, among other things, access to up to $2 million in additional liquidity

---

[3]  On April 25, 2025, the Court entered an amended Final DIP Order [Docket No. 437], which included (i) a statement that the DIP Credit Facility is secured by a deed of trust and similar references; (ii) references to an additional parcel number and the Preliminary Title Report filed in the chapter 11 cases [Docket No. 425], requested by the title insurance company, which amendment to the Preliminary Title Report was also reflected in Exhibit 3 to the Final DIP Order, as requested by the title insurance company.

provided on a subordinated basis and the agreement of the City to waive or credit $2.25 million of the original DIP Facility (as defined in DIP Amendment Motion). The DIP Amendment Motion further extended certain milestones with respect to the wind-down of these cases and the plan and disclosure statement contemplated by this Motion.

12.     On October 23, 2025, the Court entered an order approving the DIP Amendment Motion [Docket No. 760].

**C.     The Sale**

13.     As set forth in the *Motion for Entry of Order (I) Authorizing and Approving (A) Bid Procedures and (B) Form and Manner of Notice of Bid Procedures* [Docket No. 358] and the *Debtors' Motion for Entry of an Order (I) Approving the Sale of the Purchased Assets to the Successful Bidder Free and Clear of all Claims, Liens, Interests, and Encumbrances; (II) Approving the Consensual Termination or Rejection of Ground Leases, Effective as of the Closing Date; (III) Approving Form of Grant Deed; and (IV) Granting Related Relief* [Docket No. 621] (the "Sale Motion"), the Debtors have prosecuted these chapter 11 cases, in part, in pursuit of a sale of substantially all of their tangible assets to a buyer with the financial capability and development competence to finish construction and development of the Project.

14.     As a result of these efforts, the Debtors successfully marketed their assets, appointed a stalking horse bidder, held an auction, and filed the Sale Motion to, among other things, approve the Debtors' entry into that certain purchase and sale agreement (the "PSA") with TBE RE Acquisition Co II, LLC (the "Successful Bidder") and the consummation of the sale of the

Purchased Assets[4] to the Successful Bidder (in such capacity, the "Buyer") in accordance with the terms of the PSA.

15.    On October 14, 16, 17, and 21, 2025, the Court held a hearing to consider the relief requested in the Sale Motion.  On October 23, 2025, the Court entered an order [Docket No. 759] approving the sale of substantially all of the Debtors' assets to the Buyer (the "Sale").

**D.    The Appeal of the Sale Order**

16.    On November 3, 2025, Builders Capital filed an appeal (the "Appeal") of the Sale Order in the United States District Court for the District of Delaware (the "District Court").   On November 7, 2025, Builders Capital filed an emergency motion for stay pending appeal of the Sale Order [Docket No. 788] (the "Bankruptcy Stay Motion") in this Court.  On November 13, 2025, the Debtors and Turnbridge filed objections [Docket Nos. 795 and 796] to the Bankruptcy Stay Motion, and the City filed a joinder to the objections [Docket No. 797].  On November 13, 2025, the Court held a hearing to consider the Motion for Stay wherein it denied the Motion for Stay, and on November 14, 2025, entered an order memorializing the same [Docket No. 802].

---

[4]    Pursuant to the Sale Motion "Purchased Assets" was defined to include certain real property owned by the Debtors consisting of approximately 134+- acres located in the City of La Quinta, County of Riverside, CA, as legally described in the form of Grant Deed attached hereto as Exhibit 4 to the Sale Motion, consisting of APNs:  with APNs 777-060-083, 777-060-085, 777-060-075, 777-060-078, 777-490-058, 777-490-063, 777-490-064, 777-490-065, 777-490-066, 777-490-037, 777-490-057, 777-490-059, 777-490-068, 777-490-042, 777-490-076, 777-490-074 and 777-490-075 and 777-490-077 and 777-490-079 and 777-490-080, 777-490-046, 777-490-071, 777-060-082, 777-060-084,  777-510-001 through 023, 777-510-025, 777-520-001 through 018, and 777-490-053,054 and 055, including any existing appurtenant rights, permits, entitlements, and improvements, which APNs correspond to Parcels 1, 2, 3, 4, 5, 6, 7, 8, 9A, 9B, and 12 in the legal description of the real property set forth in Schedule A of that certain preliminary title report dated February 19, 2025 Revision No. 1 Order No. 2306435, the real property described in the legal description set forth in Schedule A of that certain preliminary title report dated June 23, 2025 Order No. 2661369, and the real property described in the legal description set forth in Schedule A of that certain preliminary title report dated July 8, 2025 Order No. 2664882, all from Stewart Title of California (the "Real Property"), and (ii) and all of the Debtors' right, title, and interest in and to all personal property, including, without limitation, all building materials, supplies, equipment, inventory, temporary fencing, scaffolding, signage, HVAC units, doors, windows, fixtures, any other tangible personal property of any kind (whether or not yet incorporated into the Real Property or stored thereat and only to the extent owned by the Debtors) (collectively, the "Personal Property") located on or at the Real Property and owned by the Debtors. For the avoidance of doubt,  a portion of the Real Property is owned by the Debtors as undivided tenants-in-common with non-Debtor SilverRock Land II, LLC, a Delaware limited liability company ("SR Land" and such property, the "TIC Property") and the entirety of the TIC Property was included in the Purchased Assets.

17.     On November 17, 2025, Builders Capital filed its statement of issues on appeal and record designation.  On November 19, 2025, Builders Capital filed an emergency motion for stay pending appeal of the Sale Order in the District Court (the "USDC Stay Motion") [District Court Docket No. 8].  The Debtors, the City and Turnbridge agreed to an expedited briefing schedule on the USDC Stay Motion.  On November 24, 2025, the Debtors filed an objection to the USDC Stay Motion along with a declaration from the Independent Manager of the Debtors in support of the same. *See* District Court Docket Nos. 19 & 20.  The Buyer also filed an objection to the USDC Stay Motion [District Court Docket Nos. 16 & 18], and the City filed a joinder and declaration from City Manager, Jon McMillen in opposition to the USDC Stay Motion. *See* District Court Docket Nos. 21 & 22.

18.     The District Court entered an order denying the USDC Stay Motion on December 5, 2025. *See* District Court Docket Nos. 25 (Memorandum denying USDC Stay Motion); & 26 (Order denying same).  Following the Closing Date (defined below), on December 19, 2025, Builders Capital filed its opening brief (the "Opening Brief") [District Court Docket No. 27]. On January 2, 2026, the Buyer, the City, and the Debtors (together, the "Appellees") filed the Appellees' Joint Motion to Dismiss Appeal (the "Motion to Dismiss") [District Court Docket No. 29] in the District Court.

19.     Upon the commencement of the Mediation (defined below), the Appellees and Builders Capital agreed to six (6) stays of these briefing deadlines to allow the Mediation to continue.

20.      Now that the Mediation has concluded, the Debtors anticipate that Builders Capital will file its response to the Motion to Dismiss on March 20, 2026 and the Appellees' answering brief is due to be filed on March 31, 2026.

21.     The Debtors believe the Appeal is meritless and reserve all rights with respect to the Appeal. For the avoidance of doubt, nothing herein shall be construed as an admission or waiver related thereto.

**E.      The Closing of the Sale and the Mediation**

22.      The Debtors closed the Sale to the Buyer on December 9, 2025 (the "Closing Date").

23.     On December 10, 2025, the Debtors filed that certain *Debtors' Motion for Entry of an Order (I) Appointing a Mediator; (II) Referring Matters to Mandatory Mediation; (III) Authorizing and Approving the Mediation Procedures; (IV) Determining the Value of the Secured Claims of Certain Creditors Pursuant to 11 U.S.C. § 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (V) Authorizing the Debtors to Surcharge Collateral Pursuant to 11 U.S.C. § 506(c); and Granting Related Relief* (the "Initial Allocation and Mediation Motion") [Docket No. 834].

24.     On December 16, 2025, the Court held a hearing with respect to the mediation-related relief in the Initial Allocation and Mediation Motion. Consistent with the Court's ruling at the hearing and as discussed on the record at the hearing, the mediation procedures order made the mediation voluntary and formalized certain other aspects of the mediation. The court entered the revised form of order on December 23, 2025 and appointed James C. Bastian, Jr. to serve as mediator (the "Mediator") in accordance with the mediation procedures described therein. *See* Docket No. 864.

25.     Thereafter, between late December and March 13, 2026, the Mediator conducted the mediation (the "Mediation") among the Debtors, the City, R.D. Olson Construction, Inc. ("RDO"), Poppy Bank ("Poppy"), Builders Capital, RAF Pacifica Loan Opportunity Fund I and Arnold Fishman, as Trustee of The Arnold Fishman Revocable Trust dated July 15, 1999 (together,

"Keillor"), the EB-5 Lenders, SR Land, Richard and Lehn Goetze, and Granite Construction Company ("Granite") (collectively, the "Mediation Parties") through a series of individual and group mediation sessions.

26.     While the Mediator made every effort, the Mediation did not result in a global settlement and on March 13, 2026, the Mediator determined to conclude the Mediation.

27.     In advance of the Combined Hearing, the Debtors will file an amended version of the Initial Allocation and Mediation Motion (the "Allocation Motion") which will seek among other things, determination of the value of certain Asserted Secured Claims under section 506(a) of the Bankruptcy Code pursuant to a revised allocation methodology that the Debtors and their advisors have refined as a result of discussions with the Mediation Parties and further analysis of the Debtors' books and records, additional research, and review of the relevant issues.

28.     Under the revised allocation methodology, the Debtors will continue to utilize a per-acre approach to allocation. The proposed allocation will also take into account the "priming caps" set forth in Exhibit 3 to the Final DIP Order. The Debtors will schedule the Allocation Motion for hearing in connection with approval of the Combined Disclosure Statement and Plan on a final basis.

**F.     The Plan and Disclosure Statement**

29.     On December 1, 2025, the Debtors filed initial versions of the Plan and Disclosure Statement which have been amended by the pleadings filed contemporaneously herewith. The Combined Disclosure Statement and Plan provides for, among other things, (i) classification and treatment of various classes of claims and interests in or against the Debtors; (ii) the creation of various reserves for creditor distributions pending resolution of remaining intercreditor issues, (iii) the substantive consolidation of the Debtors' assets and liabilities for the purposes of implementing, voting on, and calculating and making Distributions under the Plan, assessing whether the

Confirmation standards have been met, and filing certain post-Confirmation reports and paying certain fees, and (iv) the establishment of a Litigation Trust and appointment of a Litigation Trustee to implement the terms of the Plan, including the investigation and prosecution of Retained Causes of Action, the liquidation of the Debtors' remaining assets, and the Distribution of the net proceeds thereof to Holders of Allowed Claims in accordance with the relative priorities established in the Bankruptcy Code. A blackline comparing the initial plan against the Plan filed contemporaneously herewith is attached hereto at **Exhibit C**. Voting rights with respect to the Plan will flow from the classification of Claims and Interests and the Impaired or Unimpaired treatment of Claims and Interests within each Class as proposed in the Plan.  The Plan provides for thirteen (13) Voting Classes out of eighteen (18) different Classes of Claims and Interests:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired (Deemed to accept) | No |
| 2 | Priority Non-Tax Claims | Unimpaired (Deemed to accept) | No |
| 3 | Keillor Secured Claim | Impaired | Yes |
| 4 | Builders Capital Secured Claim | Impaired | Yes |
| 5 | Poppy Secured Claim | Impaired | Yes |
| 6 | RDO Secured Claim | Impaired | Yes |
| 7 | Granite Secured Claim | Impaired | Yes |
| 8 | Gauston Secured Claim | Impaired | Yes |
| 9 | California Specialty Insulation Secured Claim | Impaired | Yes |
| 10 | EB-5 Secured Claim | Impaired | Yes |

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 11 | H&E Secured Claim | Impaired | Yes |
| 12 | Vermillions Secured Claim | Impaired | Yes |
| 13 | Traub Secured Claim | Impaired | Yes |
| 14 | Robert Green Disputed Secured Claim | Impaired | Yes |
| 15 | General Unsecured Claims | Impaired | Yes |
| 16 | Subordinated Claims | Impaired (Deemed to reject) | No |
| 17 | Intercompany Claims | Impaired (Deemed to reject) | No |
| 18 | Interests | Impaired (Deemed to reject) | No |

30.     Holders of Claims in Classes 1 and 2 are Unimpaired by the Plan.  Such Holders are deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote on the Plan.  Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 are Impaired and, the extent Allowed, entitled to receive a Distribution under the Plan, as and to the extent provided for in the Plan, are therefore entitled to vote on the Plan. Holders of Claims and Interests in Classes 16, 17, and 18 are deemed to reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code and, therefore, will not be entitled to vote on the Plan. Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 shall be referred to herein as the "Voting Classes" and the Classes of Claims and Interests that are not entitled to vote on the Plan shall be referred to as the "Non-Voting Classes."

11

31.     In addition, pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan designates four (4) categories of Claims that are entitled to receive Distributions under the Plan but are not classified for purposes of voting to accept or reject the Plan.  These unclassified categories of Claims are (i) Administrative Claims, (ii) DIP Senior Claims and DIP Junior Claims, (iii) Professional Fee Claims, and (iv) Priority Tax Claims.

32.     Article XII of the Plan contains certain release, injunction, and exculpation provisions, including releases by the Debtors and the Estates of various parties.  The Plan also includes releases by Holders of Claims, as described in Article XII.C of the Plan (the "Third-Party Releases").  The Third-Party Releases bind the "Releasing Parties," which the Plan defines as:

> [A]ll Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 that vote to accept the Plan and do not timely submit a Release Opt-Out indicating such Holder's decision to not participate in the releases set forth in Article XII.C of the Plan.

Plan, Article I.A.138.  The Holders of Claims in the Voting Classes will be deemed to have forever released the Released Parties from any and all claims and causes of action to the extent provided for in Article XII.C of the Plan, unless such Holders opt out of providing such releases by following the Release Opt-Out and objection procedures described in Article XII.C of the Plan.

## RELIEF REQUESTED

33.     By this Motion, the Debtors request entry of the Disclosure Statement Order, (i) approving the Disclosure Statement on a conditional basis; (ii) approving procedures for solicitation and tabulation of votes to accept or reject the Combined Disclosure Statement and Plan, including (a) fixing the Record Date, (b) approving the Solicitation Packages and procedures for distribution thereof, and (c) approving the form of Ballot and establishing voting and tabulation procedures; (iii) scheduling the Combined Hearing and establishing related notice and objection procedures; and (iv) granting related relief.

34.     The following table sets forth the proposed dates and deadlines in connection with the solicitation and confirmation of the Combined Disclosure Statement and Plan:

| Event | Proposed Date |
|---|---|
| Objection Deadline to Interim Approval and Procedures Motion | March 31, 2026 at 4:00 p.m. (ET) |
| Interim Approval and Procedures Hearing | April 7, 2026 at 10:30 a.m. (ET) |
| Record Date | April 7, 2026 |
| Deadline to File Claims Objections for Plan Voting Purposes | April 7, 2026 |
| Solicitation Date | April 9, 2026 |
| Deadline to File Plan Supplement | April 30, 2026 |
| Deadline to File Bankruptcy Rule 3018 Motions for Plan Voting Purposes | May 1, 2026 |
| Combined Disclosure Statement and Plan Objection Deadline | May 7, 2026 |
| Voting Deadline and Deadline to Submit Opt-Out Forms | May 8, 2026 |
| Deadline for Voting Agent to File Plan Voting Report | May 13, 2026 |
| Deadline to Reply to Plan Objections | May 18, 2026 at 12:00 p.m. (ET) |
| Combined Hearing | May 20, 2026 at 10:30 a.m. (ET) and May 21, 2026 at 10:30 a.m. (ET) |

35.     The Debtors believe that the Plan is in the best interests of their estates and stakeholders.   Accordingly, and for the reasons set forth below, the Debtors submit that the solicitation and confirmation schedule proposed in this Motion should be approved.

<b><u>THE DISCLOSURE STATEMENT</u></b>

**I.      <u>The Combined Disclosure Statement and Plan Contain Adequate Information</u>**

36.     Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims with "adequate information" regarding a debtor's proposed plan.   In that regard, section 1125(a)(1) of the Bankruptcy Code provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal

tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).  A disclosure statement should provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision on whether to vote to accept or reject a plan.  *See Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote.").  Congress intended that such informed judgments would be needed both to negotiate the terms of and to vote on a plan of reorganization.  *Id.*  Thus, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

37.    Courts will consider the particular facts and circumstances of each case in evaluating whether a disclosure statement provides "adequate information" within the meaning of section 1125 of the Bankruptcy Code.  *See, e.g.*, *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of [section] 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95- 989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case.").

38.    Courts have broad discretion in determining the adequacy of the information contained in a disclosure statement.  *See*, *e.g.*, *In re Lower Bucks Hosp.*, 571 Fed. App'x 139, 142

14

(3d Cir. 2014) (quoting *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988), for the proposition that "the determination under 11 U.S.C. § 1125(a) 'is subjective and made on a case by case basis [and] . . . . is largely within the discretion of the bankruptcy court.'"); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court."); *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) (same). Because the information required to be disclosed in a disclosure statement varies according to the facts of each case, there is no mandatory list of requirements for adequacy. *See In re Phoenix Petroleum*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

39.    Nonetheless, factors considered by a court evaluating the adequacy of a disclosure statement may include: (i) the events leading to the filing of a bankruptcy petition; (ii) a description of the available assets and their value; (iii) the anticipated future of the company; (iv) the source of information stated in the disclosure statement; (v) a disclaimer that typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (vi) the present condition of the debtor while in chapter 11; (vii) claims asserted against the debtor; (viii) the estimated return to creditors under a chapter 7 liquidation; (ix) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (x) the future management of the debtor; (xi) the chapter 11 plan or a summary thereof; (xii) the estimated administrative expenses; (xiii) the collectability of any accounts receivable; (xiv) financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan; (xv) information relevant to the risks posed to creditors under the plan; (xvi) the actual or projected

15

realizable value from recovery of preferential or otherwise voidable transfers; (xvii) litigation likely to arise in a non-bankruptcy context; (xvii) tax attributes of the debtor; and (xviii) the relationship of the debtor with its affiliates. *See, e.g.*, *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); *In re Oxford Homes*, 204 B.R. 264 (Bankr. D. Me. 1997) (using similar list).  A plan proponent need not include disclosure with respect to each of the above topics in every case. *Phoenix Petroleum*, 278 B.R. at 393 (making use of similar list but cautioning that "no one list of categories will apply in every case").

40.     The Combined Disclosure Statement and Plan contain adequate information to allow Holders of Claims in the Voting Classes to make an informed decision about whether to vote to accept or reject the Plan.  Specifically, the Combined Disclosure Statement and Plan contain, among other things, a description of the following:

    a.    the terms of the Plan (Articles II, III, and IV);

    b.    the events preceding these chapter 11 cases (Article IV);

    c.    the Debtors' prepetition indebtedness (Article IV);

    d.    significant events during the chapter 11 cases (Article IV);

    e.    estimates of the Claims asserted, or to be asserted, against the Debtors and the Estates and the estimated value of the Distributions to be received by Holders of Allowed Claims (Article III);

    f.    the Debtors' available Assets and their estimated values, if any (Article VII);

    g.    risk factors affecting the Plan (Article VI);

    h.    the feasibility of the Plan (Article V);

    i.    certain tax consequences of the Plan (Article VI);

    j.    the provisions providing for the release of claims and causes of action by the Debtors and Holders of Claims (Article XII); and

16

k.      the estimated recovery that Holders of Claims would receive if the chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code (Article V).

41.      Accordingly, the Debtors submit that the Combined Disclosure Statement and Plan contain all or substantially all of the information typically considered by courts. However, through this Motion the Debtors only seek interim approval of the Combined Disclosure Statement and Plan for solicitation purposes. At the Combined Hearing, the Debtors will demonstrate on a final basis that the information set forth therein contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

42.      The Combined Disclosure Statement and Plan additionally provide sufficient notice of the injunction, exculpation, and release provisions in the Plan.  Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and entities subject to the injunction. Fed. R. Bankr. P. 3016(c).

43.      Article XII of the Plan describes the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  The injunction, exculpation, and release provisions of the Plan are in bold font making them conspicuous to anyone who reads the Plan. Accordingly, the Debtors respectfully submit that the Combined Disclosure Statement and Plan comply with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined by the Plan.

II.      **The Combined Hearing Notice Complies with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and Should be Approved**

44.      Bankruptcy Rule 3017(c) provides that, on or before the approval of a disclosure statement, a court "may set a date for a confirmation hearing." Section 105 of the Bankruptcy Code expressly authorizes the Court to "issue an order . . . that . . . provides that the hearing on approval

17

of the disclosure statement may be combined with the hearing on confirmation of the plan." *See* 11 U.S.C. § 105(d)(2)(B)(vi). Local Rule 3017-2(b)(i) provides that a plan proponent may file a motion requesting, as applicable, "(A) authority to combine the plan and disclosure statement into a single document; (B) interim disclosure statement approval; (C) approval of solicitation procedures; and (D) scheduling a joint hearing to consider final approval of the adequacy of the disclosure statement and confirmation of the proposed plan." Del. Bankr. L.R. 3017-2(b)(i). Pursuant to this authority, courts in this jurisdiction have held combined hearings for approval of disclosure statements and confirmation of plans in chapter 11 cases like the one proposed here.

45.    Accordingly, the Debtors respectfully request that the Combined Hearing at which the Court will consider final approval of the adequacy of the disclosures contained in the Combined Disclosure Statement and Plan, and confirmation of the Plan be set for **May 20, 2026 at 10:30 a.m. (ET) and May 21, 2026 at 10:30 a.m. (ET)**. The Debtors submit that the use of a combined hearing will streamline and expedite the confirmation process and allow for these chapter 11 cases to be brought to swifter conclusion, which will inure directly to benefit all stakeholders by hastening the implementation of the Plan, reducing the amount of time the Debtors remain in chapter 11, and allowing for the process by which Distributions may be made to the Holders of Allowed Claims as set forth in the Plan to occur as efficiently as possible. The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors by announcement of the adjournment or continuance at a hearing before the Bankruptcy Court or by filing a notice on the docket of these chapter 11 cases. In accordance with the Plan, the Plan may be modified, if necessary, before, during, or as a result of the Combined Hearing without further action by the Debtors and without further notice to or action, order, or approval of the Bankruptcy Court or any other entity.

46.    In the interests of orderly procedure, the Debtors further request that objections to final approval and confirmation of the Combined Disclosure Statement and Plan, if any, shall (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, and (iii) be filed with the Court and served upon counsel for the Debtors no later than **May 7, 2026 at 4:00 pm (ET)**. The Debtors and any party supporting final approval and confirmation of the Combined Disclosure Statement and Plan may, in their discretion, file a reply to any such objections and/or declaration(s) in support of the Combined Disclosure Statement and Plan no later than **May 18, 2026 at 12:00 p.m. (ET)** (the "Reply Deadline"). If the Combined Hearing is adjourned, the Debtors request that the Reply Deadline be adjourned accordingly to 12:00 p.m. (ET) two days before the Combined Hearing.

47.    All Holders of Claims and Interests will be served with the notice annexed as **Exhibit B** hereto (the "Combined Hearing Notice").  Additionally, in accordance with Bankruptcy Rule 3017(a), the Debtors also served, or caused to be served, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and any party who requested, in writing, a copy of the Combined Disclosure Statement and Plan, with the Combined Hearing Notice.  The Combined Hearing Notice identifies: (i) the date, time, and place of the Combined Hearing; (ii) the manner in which a copy of the Combined Disclosure Statement and Plan can be obtained; and (iii) the deadline and procedures for filing objections.

48.    Pursuant to Local Rule 3017-2(b)(iv), the Debtors certify that the notice of the deadline to object to final approval of the adequacy of the Combined Disclosure Statement and Plan will comply with Bankruptcy Rule 2002(b), and the proposed date for the Combined Hearing is not less than seven (7) days after such objection deadline. The Debtors respectfully request that the Court approve the Combined Hearing Notice itself as appropriate and in compliance with the

requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as the same may be waived or modified by any order granting this Motion.

## SOLICITATION AND VOTING PROCEDURES

**I.**     **Approval of Solicitation and Voting Procedures**

   **A.     Fixing the Record Date**

49.     Bankruptcy Rule 3017(d) provides that, for purposes of soliciting votes in connection with the confirmation of a chapter 11 plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

50.     In accordance with these Bankruptcy Rules, the Debtors request that the Court set **April 7, 2026** as the record date (the "Record Date") for purposes of determining:

   a.     the Holders of Claims in the Voting Classes, who will receive Solicitation Packages and are entitled to vote to accept or reject the Plan;

   b.     the Holders of Claims and Interests in the Non-Voting Classes, who will receive a Notice of Non-Voting Status (defined herein) and are not entitled to vote to accept or reject the Plan;

   c.     the amount of each Holder's Claim for solicitation and voting purposes (except as otherwise provided in this Motion); and

   d.     whether Claims have been properly and timely assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e), such that the assignee (and not the original Claim holder) can vote to accept or reject the Plan as the Holder of a Claim.

51.     The Debtors request that with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and (if applicable) cast a Ballot on account of such Claim only if all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy

Rule 3001(e) have been completed on or before the Record Date. In the event a Claim is transferred after the Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the holder of such Claim as of the Record Date.

### B. Approving Solicitation Packages and Procedures for Distribution Thereof

52. Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization:

> After the disclosure statement has been approved, the court must order the debtor in possession, the trustee, the plan proponent, or the clerk to mail the following items to creditors and equity security holders and, in a Chapter 11 case, to send a copy of each to the United States trustee:
>
> (i)     The court-approved disclosure statement;
> (ii)    The plan or a court-approved summary of it;
> (iii)   A notice of the time to file acceptances and rejections of the plan; and
> (iv)    Any other information as the court order—including any opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> Notice of the time to file an objection to a plan's confirmation and the date of the hearing on confirmation must be emailed to creditors and equity security holders in accordance with Rule 2002(b). A ballot that conforms to Form 314 must also be mailed to creditors and equity security holders who are entitled to vote on the plan. If the court's opinion is not sent (or only a summary of the plan was sent), a party in interest may request a copy of the opinion or plan, which must be provided at the plan proponent's expense.

Fed. R. Bankr. P. 3017(d).

53. In accordance with Bankruptcy Rule 3017(d), and as set forth above, the Debtors propose that, no later than **April 9, 2026** (the "Solicitation Date"), the Debtors will mail, or cause to be mailed, the following materials (the "Solicitation Package") to those record Holders of Claims in the Voting Classes: (i) the Combined Disclosure Statement and Plan; (ii) a copy of the Disclosure Statement Order; (iii) the Ballot and voting instructions (the "Voting Instructions");

21

(iv) a pre-addressed, postage pre-paid return envelope; (v) the Combined Hearing Notice (as defined herein); (vi) the Lien Priority Analysis attached as Exhibit B to the Allocation Motion; and (vii) the Allocation, attached as Exhibit C to the Allocation Motion.

54.     Furthermore, consistent with sections 1126(f) and (g) of the Bankruptcy Code, the Debtors propose to distribute, or cause to be distributed, by first-class mail, to all Holders of Claims and Interests in the Non-Voting Classes a Non-Voting Package (defined herein).

55.     The Solicitation Package, excluding a Ballot, will also be mailed to: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) various state taxing authorities; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002.

56.     The Debtors anticipate that some of the notices served in the chapter 11 cases, including, but not limited to, the Combined Hearing Notice may be returned by the United States Postal Service as undeliverable without a forwarding address.  The Debtors believe that it would be costly and wasteful to distribute Solicitation Packages to the same addresses to which undeliverable Combined Hearing Notices were distributed. Therefore, the Debtors seek the Court's approval for a departure from the strict notice rule, excusing the Debtors from distributing Solicitation Packages to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities prior to the Solicitation Date.  The Debtors further propose that they be excused from attempting to find better addresses for entities as to whom a Solicitation Package was returned by the United States Postal Service as undeliverable without a forwarding address.

57.     Moreover, the Debtors request that the Court authorize (but not require) them to distribute, or cause to be distributed, the Combined Disclosure Statement and Plan and copy of the Disclosure Statement Order to the Voting Classes in flash drive format in lieu of paper format.

The Combined Hearing Notice, Ballots and return envelopes contained in the Solicitation Packages shall be provided in paper format.

58.     The Debtors submit that good cause exists for implementing the proposed notice and service procedures, as described herein.

**C.     Approving Form of Ballot and Establishing Procedures for Voting on the Plan**

**1.     Approving Form of Ballot and Notice of Non-Voting Status, and Distribution Thereof**

*The Voting Classes*

59.     Pursuant to Bankruptcy Rule 3017(d), the Debtors propose to distribute to Holders of Claims in the Voting Classes ballots substantially in the form attached to the Disclosure Statement Order as Exhibit 3 (the "Ballot").  The form of Ballot is based upon Official Form No. 14 but has been modified to address the particular aspects of the chapter 11 cases and to include certain additional information that the Debtors believe is relevant and appropriate.

*The Non-Voting Classes*

60.     Pursuant to section 1126(f) of the Bankruptcy Code, unimpaired creditors are conclusively presumed to have accepted the Plan and solicitation of acceptance with respect to such Classes is not required.  11 U.S.C. § 1126(f).  Furthermore, pursuant to section 1126(g) of the Bankruptcy Code, impaired creditors that will not receive or retain any property under the Plan are deemed to have rejected the Plan, are not entitled to vote on the Plan and, therefore, solicitation of acceptance with respect to such classes is not required. 11 U.S.C. § 1126(g).  Accordingly, the Debtors propose that they not be required to transmit a Solicitation Package to the Non-Voting Classes.

61.     Rather, the Debtors propose to distribute to the Non-Voting Classes a package (the "Non-Voting Package"), which shall consist of (i) the Combined Hearing Notice and (ii) a

notice of non-voting status, substantially in the form annexed to the Disclosure Statement Order as Exhibit 4 (the "Notice of Non-Voting Status"), that will set forth, among other things: (a) the Non-Voting Classes under the Plan; (b) a summary of the proposed treatment for Non-Voting Classes under the Plan; (c) the date and time of the Combined Hearing (as defined herein); and (d) the deadline and procedures for filing objections to the Plan, and for parties in Non-Voting Classes to challenge the status of their Claims for voting purposes.  The Notice of Non-Voting Status will indicate that those in Non-Voting Classes may obtain a copy of the Combined Disclosure Statement and Plan on the dedicated webpage maintained by Reliable (the "Voting Agent").

### 2.   Establishing Voting Deadline for Receipt of Ballots

62.   Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims or equity interests may accept or reject a plan.  The Debtors propose that, in order to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Voting Agent at the following address so as to be received by the Voting Agent no later than **May 8, 2026** (the "Voting Deadline"), unless extended by the Debtors:

**If by First-Class Mail:**
SilverRock Ballot Processing
c/o Reliable Companies
Attn:  Gene Matthews
1007 North Orange Street, Suite 110
Wilmington, DE 19801

**If by Hand Delivery or Overnight Mail:**
SilverRock Ballot Processing
c/o Reliable Companies
Attn:  Gene Matthews
1007 North Orange Street, Suite 110
Wilmington, DE 19801

63.     Any failure to follow the voting instructions included with the Ballot may disqualify a Ballot and vote.

64.     The Debtors submit that such solicitation period is a sufficient period within which Holders of Claims in the Voting Classes can make an informed decision to accept or reject the Plan.

### D.      Approving Procedures for Vote Tabulation

65.     The Debtors propose that each Holder of a Claim in the Voting Classes shall be entitled to vote the amount of its Claim as of the Record Date.  Accordingly, solely for purposes of voting on the Plan, and not for the purpose of making Distributions on account of a Claim, and without prejudice to the rights of the Debtors or any other proper party in interest, including any liquidating trustee, in any other context, including claims objections and adversary proceedings, with respect to all Holders of Claims in the Voting Classes, the Debtors propose that the temporarily allowed amount of a Claim used to tabulate acceptance or rejection of the Plan should be as follows:

    a.    The amount of the Claim listed in the Schedules; provided that (i) such Claim is not scheduled as contingent, unliquidated, undetermined, disputed, or in the amount of $0.00, (ii) no Proof of Claim has been timely filed by the applicable Bar Date (or otherwise deemed timely filed under applicable law), (iii) such Claim has not been satisfied by the Debtors, or (iv) such Claim has not been resolved pursuant to a stipulation or order entered by the Court.

    b.    The undisputed, non-contingent, unpaid and liquidated amount specified in a Proof of Claim timely filed with the Court or the Voting Agent by the applicable Bar Date (or otherwise deemed timely filed by the Court under applicable law), to the extent such Proof of Claim has not been amended or superseded by another Proof of Claim and is not the subject of an objection filed by April 7, 2026 (or, if such Claim has been resolved pursuant to a stipulation or order entered by the Court, the amount set forth in such stipulation or order).

    c.    If applicable, the amount temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018.  Any motion pursuant to Bankruptcy Rule 3018 seeking to temporarily allow a Claim for voting purposes must be filed and served in accordance with the Disclosure Statement Order.

d.  Except as otherwise provided in subsection (c) hereof, a Ballot cast by an alleged Creditor who has timely filed a Proof of Claim in a wholly unliquidated, unknown, blank, or uncertain amount or in the amount of $0.00 that is not the subject of a claim objection filed by April 7, 2026 shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, and shall be ascribed a value of one dollar ($1.00) for voting purposes only.

e.  Except as otherwise provided in subsection (c) hereof, with respect to a Ballot cast by an alleged Creditor who has timely filed a Proof of Claim, but the Claim is the subject of a claim objection filed by April 7, 2026, the Debtors request, in accordance with Bankruptcy Rule 3018(a), that the Ballot not be counted for voting purposes.

f.  Notwithstanding subsection (e) hereof and except as otherwise provided in subsection (c) hereof, if the Debtors have requested that a Claim be reclassified, estimated and/or allowed in a fixed, reduced amount pursuant to a claim objection or estimation proceeding to such Claim, the Ballot of the Holder of such Claim shall be counted in the reduced amount requested by the Debtors and/or in the requested classification.

g.  Notwithstanding anything to the contrary contained herein, to the extent that a Holder holds duplicate Claims in the Voting Classes (by virtue of one or more timely-filed Proofs of Claims, the Schedules, or a combination of both), such Holder shall be deemed to hold a single Claim in the Voting Classes.

66.  The Debtors further request that the following voting procedures and standard assumptions be used in tabulating the Ballots:

a.  For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Creditor in the Voting Classes will be aggregated as if such Creditor held a single Claim in the Voting Classes, and the votes related to those Claims shall be treated as a single vote on the Plan; *provided, however*, that separate Claims held as of the Petition Date by different entities (even if related, affiliated or properly and timely assigned or transferred prior to the Record Date) shall not be deemed to be held by a single Creditor pursuant to this provision, and the votes with respect to any such Claims shall be treated as separate votes on the Plan.

b.  Creditors with multiple Claims within the Voting Classes must vote all such Claims to either accept or reject the Plan and may not split their vote(s) within the Voting Classes.  Accordingly, an individual Ballot that partially rejects and partially accepts the Plan on account of multiple Claims within the Voting Classes will not be counted.

c.  Each Creditor will be provided a single individual Ballot for all Claims held by such Creditor in the Voting Classes.

d.    If a Claim or Interest is transferred after the Record Date, only the Holder of such Claim as of the Record Date may execute and submit a Ballot to the Voting Agent, the transferee of such Claim shall be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim as of the Record Date, and no "cause" will exist to permit any vote change under Bankruptcy Rule 3018(a).

e.    The delivery of a Ballot will be deemed made only when the Voting Agent actually receives the original, executed Ballot.

f.    Any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed Ballot.  If multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last timely received, properly executed Ballot will be deemed to reflect that Holder's intent and will supersede and revoke any Ballot previously received.

g.    If a Holder of a Claim casts multiple Ballots on account of the same Claim, which are received by the Voting Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

h.    Except as otherwise provided in subsection (f) hereof, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline.  To be valid, a notice of withdrawal must (i) contain the description of the Claim to which it relates and the aggregate principal amount represented by such Claim, (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be actually received by the Voting Agent prior to the Voting Deadline.  The Debtors expressly reserve the right to contest the validity of any such withdrawals.

67.    The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

a.    Any Ballot that fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection, of the Plan;

b.    Any Ballot received after the Voting Deadline, except by order of the Bankruptcy Court or if the Debtors have granted an extension of the Voting Deadline with respect to such Ballot;

c.    Any Ballot containing a vote that the Bankruptcy Court determines was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

27

d.      Any Ballot that is illegible or contains insufficient information to permit the identification of the Claim Holder;

e.      Any Ballot cast by an Entity that does not hold a Claim in the Voting Classes;

f.      Any unsigned Ballot or Ballot without an original signature; and

g.      Any Ballot submitted by fax, email or electronic transmission.

68.      The Debtors also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors be unlawful. The Debtors further reserve the right to allow for the cure of any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation of all balloting rules and procedures (including the Ballot and the respective instructions thereto) by the Voting Agent and the Debtors, unless otherwise directed by the Court, will be final and binding on all parties. Any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determine. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured. Ballots previously furnished (and as to which any irregularities have not theretofore been cured) will be invalidated.

69.      **Releases**. Under the Plan, each Holder of a Claim in the Voting Classes may opt out of the releases set forth in Article XII.C of the Plan by checking the appropriate box on its Ballot and submitting its Ballot to the Voting Agent on or before the Voting Deadline or filing an objection to the releases prior to the Combined Disclosure Statement and Plan Objection Deadline. Under the Plan, the following parties will be deemed to have irrevocably and unequivocally waived any objection to the releases set forth in Article XII.C of the Plan and to be a Releasing Party under

28

the Plan: all Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 that vote to accept the Plan and do not timely submit a Release Opt-Out indicating such Holder's decision to not participate in the releases set forth in Article XII.C of the Plan; *provided, however*, that Holders of Claims in the Voting Classes whose Ballots are returned to the Debtors or their agent as undeliverable, or to whom the Debtors or their agent did not mail a Ballot, shall not be deemed to participate in the releases set forth in Article XII.C of the Plan, which entities, if any, shall be set forth in a notice filed with the Bankruptcy Court by the Debtors or the Plan Administrator within five (5) business days of the Effective Date.

70.    Each Holder of an Unimpaired Claim that does not object to confirmation of the Plan and the releases set forth in Article XII.C of the Plan or submit the opt-out form attached to the Notice of Non-Voting Status – Impaired Creditors attached hereto as **Exhibit 4** will be deemed to have consented to and granted such releases.

71.    The Debtors request that the Court establish **May 13, 2026** as the deadline for the Voting Agent to file a voting report (the "Voting Report"), verifying the results of its voting tabulations reflecting the votes cast to accept or reject the Plan.  The Voting Report will, among other things, describe every Ballot received by the Voting Agent that does not conform to the Voting Instructions or that contains any form of irregularity, including, but not limited to, those Ballots that are late, illegible (in whole or in material part), unidentifiable, lacking signatures, lacking necessary information, or damaged.

72.    If any party seeks to challenge the allowance of its Claim for voting purposes in accordance with the above procedures, the Debtors request that the Court direct such party to serve on the Debtors and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a)

29

temporarily allowing such Claim in a different amount or classification for purposes of voting to accept or reject the Plan on or before **May 1, 2026**.

73.    The Debtors submit that the proposed tabulation rules and other related vote tabulation procedures set forth above will establish a fair and equitable voting process and, therefore, should be approved.

**II.    Scheduling the Combined Hearing and Establishing Notice and Objection Procedures in Respect Thereof**

**A.    Setting the Combined Hearing**

74.    Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

75.    In accordance with Bankruptcy Rule 3017(c) and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that the Combined Hearing on (i) final approval of the disclosures contained in the Combined Disclosure Statement and Plan and (ii) confirmation of the Plan be scheduled for May 20, 2026 at 10:30 a.m. (ET) and May 21, 2026 at 10:30 a.m. (ET).  The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors by announcement of the adjournment or continuance at a hearing before the Bankruptcy Court or by filing a notice on the docket of these chapter 11 cases. In accordance with the Plan, the Plan may be modified, if necessary, before, during, or as a result of the Combined Hearing without further action by the Debtors and without further notice to or action, order, or approval of the Bankruptcy Court or any other entity.

76.    The proposed timing for the Combined Hearing is in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

### B.        Establishing Procedures for Notice of the Combined Hearing

77.        Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight (28) days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to provide to the members of the Voting Classes and Non-Voting Classes a copy of a notice of the hearing with respect to confirmation of the Plan (the "Combined Hearing Notice"), substantially in the form annexed to the Disclosure Statement Order as Exhibit 2, setting forth, among other things, (i) the date of entry of the Interim Approval and Procedures Order; (ii) the Record Date; (iii) the Voting Deadline; (iv) the time fixed for filing objections to confirmation of the Plan ("Combined Disclosure Statement and Plan Objection Deadline"); and (v) the time, date, and place for the Combined Hearing.  The Debtors will serve or cause to be served the Combined Hearing Notice on, (i) all known creditors, (ii) the U.S. Trustee, and (iii) parties requesting notice in these cases pursuant to Bankruptcy Rule 2002.

78.        Bankruptcy Rule 2002(l) provides that "[t]he court may order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." *See* Fed. R. Bankr. P. 2002(l). In addition to including the Combined Hearing Notice in the Solicitation Packages, the Debtors will cause the Combined Hearing Notice, as may be modified for publication, to be published once in the national edition of the *New York Times*, *Wall Street Journal*, or *USA Today*, as determined by the Debtors in their sole discretion, within five (5) business days of the entry of the Interim Approval and Procedures Order. The Debtors believe that publication of the Combined Hearing Notice will provide sufficient notice to persons who do not otherwise receive the Combined Hearing Notice by mail.

79.        The Debtors believe that service and publication of the Combined Hearing Notice as described above will provide sufficient notice of the Combined Hearing, and of the form and

manner of, and deadline for, any Combined Disclosure Statement and Plan Objections. Parties in interest, Creditors, and Interest Holders will receive at least twenty-eight (28) days' notice of the Combined Disclosure Statement and Plan Objection Deadline (as defined below) and at least 35 days' notice of the Combined Hearing. Such notice periods satisfy Bankruptcy Rule 2002.

80.    The Debtors submit that the foregoing procedures will provide adequate notice of the Combined Hearing and the Combined Disclosure Statement and Plan Objection Deadline (as defined below), and, accordingly, request that the Court approve such notice as adequate.

**C.    Establishing Procedures for the Filing of Combined Disclosure Statement and Plan Objections**

81.    Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." To permit the Debtors adequate time to respond to objections prior to the Combined Hearing, the Debtors request that **May 7, 2026** be fixed by the Court as the last date for filing and serving written objections to confirmation of the Plan (including any supporting memoranda) (the "Combined Disclosure Statement and Plan Objection Deadline"). The Debtors request that the Court direct that Combined Disclosure Statement and Plan Objections, if any, (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan; and (iv) be filed with the Court, together with proof of service, and served so that they are received on or before the Combined Disclosure Statement and Plan Objection Deadline by the following parties (the "Notice Parties"):

a.    Counsel to the Debtors: (x) Wilson Sonsini Goodrich & Rosati, P.C., 222 Delaware Avenue, Suite 800, Wilmington, Delaware 19801 (Attn: Erin R. Fay, Shane M. Reil, and Catherine C. Lyons (emails: efay@wsgr.com, sreil@wsgr.com, and clyons@wsgr.com)), (y) Law Offices of Benjamin M. Carson, P.C., 5965 Village Way, Suite E105, San Diego, California 92130 (Attn: Benjamin M. Carson (email: ben@benjamincarson.com)), and (z) Victor A. Vilaplana, 823 La Jolla Rancho Road, La Jolla, California 92037 (email: vavilaplana@gmail.com); and

b.      The U.S. Trustee: The Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy (email: jane.m.leamy@usdoj.gov)).

82.     If Combined Disclosure Statement and Plan Objections are filed, providing sufficient time for the Debtors and other parties in interest in these chapter 11 cases to respond in support of the Plan (or, if possible, resolve any Combined Disclosure Statement and Plan Objections) will assist the Court and may expedite the Combined Hearing.  Accordingly, the Debtors propose that they, or any other party supporting confirmation of the Plan, be afforded an opportunity to file responses to any Combined Disclosure Statement and Plan Objections (or any other pleading in support of confirmation of the Plan) on or before **May 18, 2026 at 12:00 p.m. (ET)**.

## NOTICE

83.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) the City; (iii) the Office of the United States Attorney General for the State of Delaware; (iv) the Office of the Attorney General for the State of California; (v) the Offices of the Secretaries of State for the States of Delaware and California; (vi) the Internal Revenue Service; and (vii) all parties that have filed appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in these chapter 11 cases.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

33

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: March 17, 2026
Wilmington, Delaware

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

*/s/ Erin R. Fay*

Erin R. Fay (No. 5268)
Shane M. Reil (No. 6195)
Catherine C. Lyons (No. 6854)
222 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 304-7600
E-mails: efay@wsgr.com
          sreil@wsgr.com
          clyons@wsgr.com

*-and–*

**LAW OFFICES OF BENJAMIN M. CARSON, P.C.**
Benjamin M. Carson (admitted *pro hac vice*)
5965 Village Way, Suite E105
San Diego, California 92130
Telephone: (858) 255-4529
E-mail: ben@benjamincarson.com

*-and-*

Victor A. Vilaplana (admitted *pro hac vice*)
823 La Jolla Rancho Road
La Jolla, California 92037
Telephone: (619) 840-4130
Email: vavilaplana@gmail.com

*Counsel to the Debtors and Debtors-in-Possession*