**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SILVERROCK DEVELOPMENT COMPANY, LLC, *et al.*,<br><br>         Debtors.[1] | Chapter 11<br><br>Case No.: 24-11647 (MFW)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 904, 913, 951, 952 & 1111** |

**DECLARATION OF CHRISTOPHER S. SONTCHI IN SUPPORT OF ENTRY
OF THE COMBINED ORDER (I) APPROVING ON A FINAL BASIS AND
CONFIRMING THE SECOND AMENDED COMBINED DISCLOSURE
STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF
SILVERROCK DEVELOPMENT COMPANY, LLC AND ITS DEBTOR
AFFILIATES; AND (II) GRANTING RELATED RELIEF**

I, Christopher S. Sontchi, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.       I am the Independent Manager of each of the above-captioned debtors and debtors in possession (the "Debtors") in these chapter 11 cases.  In my capacity as Independent Manager to the Debtors, I function as an independent fiduciary to the bankruptcy estates and am the final decision maker for all matters pertaining to the Debtors.   I submit this declaration (this "Declaration") in support of the *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of SilverRock Development, Company LLC and its Debtor Affiliates* [Docket No. 1111] (as may be supplemented, amended, or modified, the "Combined Disclosure Statement and Plan", the "Disclosure Statement" or the "Plan," as applicable).[2]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: SilverRock Development Company, LLC (5730), RGC PA 789, LLC (5996), SilverRock Lifestyle Residences, LLC (0721), SilverRock Lodging, LLC (4493), SilverRock Luxury Residences, LLC (6598) and SilverRock Phase I, LLC (2247). The location of the Debtors' principal place of business and the Debtors' mailing address is 343 Fourth Avenue, San Diego, CA 92101.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Combined Disclosure Statement and Plan.

2.      Except as otherwise stated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other advisors to the Debtors, my review of relevant documents, or my opinion based on my experience and knowledge of the Debtors' assets and financial conditions.

3.      I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am not being specifically compensated for this testimony other than through payments received from the Debtors in my role as their Independent Manager.

**<u>Background and Summary of Combined Disclosure Statement and Plan</u>**

4.      On August 5, 2024 (the "<u>Petition Date</u>"), the Debtors commenced these chapter 11 cases to, among other things, pursue a value-maximizing sale of the Project. After an eight-month sale process, the Debtors selected TBE RE Acquisition Co II, LLC as the Successful Bidder with respect to the Purchased Assets (the "<u>Buyer</u>"), obtained entry of the Sale Order, and closed the sale to the Buyer on December 9, 2025.

5.      Thereafter, the Debtors turned their attention to the structure of a chapter 11 plan that would provide a mechanism for distribution of net proceeds of the Sale to creditors in accordance with the Bankruptcy Code and applicable state law. In furtherance of this objective, the Debtors filed their initial plan and an initial version of the Allocation Motion (defined below) and sought to compel mediation among the various creditors asserting competing liens and interests in the collateral. Following resolution of objection from certain creditors, James C. Bastian, Jr. was appointed to serve as mediator (the "<u>Mediator</u>") for such mediation (the "<u>Mediation</u>"). *See* Docket No. 864. Thereafter, the Mediation occurred on an "office hours" style basis for approximately three months.

6.      Despite the Mediator's best efforts, the Mediation ultimately proved unsuccessful and the Mediator terminated the Mediation. Thereafter, the Debtors continued to negotiate with various parties and revised their form of plan and disclosure statement and motion to establish the value of certain secured claims under section 506(a) of the Bankruptcy Code (the "Allocation Motion") [Docket No. 913]. The Debtors noticed the Allocation Motion for hearing in connection with approval of the Plan.

7.      Several of the Debtors' creditors filed objections to the Allocation Motion and indicated they would object to the Plan on multiple grounds. Various and numerous parties also served discovery in the form of voluminous document requests, other written discovery, more than 20 deposition notices or subpoenas for more than a dozen fact witnesses and three expert witnesses. While digesting the massive amounts of discovery that was propounded and to be addressed on an expedited basis (which included the Debtors gathering tens of thousands of documents for review and potential production), it became necessary for the Debtors to explore alternatives instead of proceeding in a fashion that was sure to consume resources necessary for a Litigation Trust to function. Throughout the process, the Debtors, certain creditors, parties in interest, and the City engaged in multiple "meet and confers" to discuss, among other things, discovery parameters and the go forward process. From these "meet and confers," the terms of a global settlement began to emerge, which was then negotiated between and among such creditors, parties in interest, the Debtors, and the City for nearly two weeks. Ultimately these negotiations produced the Global Settlement filed on May 8, 2026. *See* Docket No. 1107. Also on May 8, 2026, in furtherance of the Global Settlement, the Debtors withdrew the Allocation Motion. *See* Docket No. 1108.

8.      On May 11, 2026, the Debtors filed a revised version of the Plan to, among other things, incorporate the Global Settlement. *See* Docket No. 1111. In furtherance of the same, the

3

Debtors extended the voting deadline and the deadline to confirmation of the Plan until May 13, 2026 at 4:00 p.m. (ET). *See* Docket No. 1112.

9.      Through the Global Settlement, the parties have paved the way for successful confirmation of the Plan by resolving certain matters while preserving all disputes among such non-Debtor and non-City parties as set forth therein, obtaining additional funding to complete these Chapter 11 Cases, funding a Litigation Trust to pursue Retained Causes of Action for the benefit of creditors, and winding down the Debtors' estates in the near term.

**The Disclosures Contained in the Combined Disclosure Statement and Plan Should be Approved on a Final Basis**

10.     I believe the Combined Disclosure Statement and Plan contains "adequate information" for creditors to evaluate the Combined Disclosure Statement and Plan.

11.     The Combined Disclosure Statement and Plan includes a description of: (i) the key terms of the Combined Disclosure Statement and Plan and other means for implementation; (ii) the Debtors' DIP Facility; (iii) the Debtors' corporate history, structure, business overview, including the Debtors' prepetition capital structure; (iv) the events leading to the commencement of these Chapter 11 Cases, including work performed on and investments made in connection with the Project by certain creditors; (v) certain risk factors that should be considered in connection with the Combined Disclosure Statement and Plan; (vi) the solicitation and voting procedures with respect to the Combined Disclosure Statement and Plan; (vii) the requirements for confirmation of the Combined Disclosure Statement and Plan; and (viii) certain federal tax consequences of the Combined Disclosure Statement and Plan. Attached to the Combined Disclosure Statement and Plan is a copy of the Global Settlement to be approved by the Court in connection therewith.

12. I have read and assisted in the preparation of the Combined Disclosure Statement and Plan. I believe that the Combined Disclosure Statement and Plan is accurate and contains sufficient information to allow a creditor to vote on the Combined Disclosure Statement and Plan.

13. Following the Court's entry of the *Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution Thereof, and (C) Approving the Form of Ballot and Establishing Voting and Tabulation Procedures; (III) Scheduling a Combined Hearing and Establishing Related Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 951] (the "Interim Approval and Procedures Order"), I am informed that Reliable Companies ("Reliable") solicited votes on the Combined Disclosure Statement and Plan consistent with the Interim Approval and Procedures Order. I understand that the Debtors did not solicit acceptances of the Combined Disclosure Statement and Plan from any Holder of a Claim before entry of the Interim Approval and Procedures Order.

14. I believe that the Debtors at all times took appropriate actions in connection with the solicitation of acceptances of the Combined Disclosure Statement and Plan in compliance with the Interim Approval and Procedures Order and section 1125 of the Bankruptcy Code.

**Solicitation and Tabulation of Votes**

15. Based on discussions with the Debtors' legal advisors, I am informed and believe that the solicitation process undertaken by the Debtors and Reliable was consistent and compliant with all applicable rules and regulations governing the adequacy of the disclosures contained in the Combined Disclosure Statement and Plan and the solicitation of votes to accept or reject the Plan, as well as the provisions of the Interim Approval and Procedures Order. I am informed and

5

believe that such solicitation procedures also satisfy the requirements of sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

16.    I understand that the Debtors solicited acceptances of the Plan only from the Holders of Claims in the Voting Classes, which are the only Classes that are Impaired and entitled to vote on the Plan. In addition, it is my understanding that the Debtors did not solicit votes to accept or reject the Plan from the Holders of Claims or Interests in the non-Voting Classes, as I have been advised by counsel that the non-Voting Classes are either (x) Unimpaired, and therefore, deemed to have accepted the Plan, or (y) Impaired and presumed to have rejected the Plan.

17.    I have been advised by the Debtors' counsel and believe that holders of an Impaired class of claims or interests must vote in favor of a plan by at least two-thirds in amount and more than one-half in number of the allowed claims or interests of such class to accept the plan.

18.    On May 13, 2026, the Debtors filed the *Declaration of Justin K. Edelson of Reliable Companies d/b/a Reliable Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of SilverRock Development Company, LLC and its Debtor Affiliates* [Docket No. 1116] (the "Voting Declaration"). It is my understanding that 12 of the 27 Impaired Voting Classes have accepted the Plan, four of the 27 Impaired Voting Classes rejected the Plan, and the balance of the Impaired Voting Classes did not vote.

### The Plan Satisfies the Confirmation Requirements

19.    I believe, based on my review of the Plan and my discussions with the Debtors' advisors, that the Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed. I have set forth the reasons for such belief below, except where such compliance is apparent on the face of the Plan, the Plan Supplement [Docket No. 1040], the Amended Plan

Supplement [Docket No. 1117], or the related documents, or where it will be the subject of other testimony or evidence introduced at the Combined Hearing.

      *a.*      *Bankruptcy Code Sections 1129(a)(1) and (2) and Sections 1122 and 1123*

      i.      I have been advised by counsel and believe that the Debtors, as proponents of the Plan, have complied with applicable provisions of the Bankruptcy Code as required by sections 1129(a)(1) and 1129(a)(2) of the Bankruptcy Code, respectively.

      ii.      The Debtors exercised their reasonable business judgment in creating the classification scheme under the Plan and I believe there are valid business, legal and factual reasons that justify the separate classification of the particular Claims and Interests into the Classes set forth in the Plan. The Plan provides for separate classification of Claims and Interests based on differences in the legal nature and/or priority of such Claims and Interests.

      iii.      I believe that the classification scheme satisfies section 1122 of the Bankruptcy Code because each Class is comprised of substantially similar Claims or Interests, respectively, and each instance of separate classification of similar Claims and Interests is justified by valid factual or legal reasons. I believe that similar Claims and Interests have not been placed into separate Classes, and that the Classes under the Plan were not created for purposes of improperly affecting votes on the Plan or for any other inappropriate purpose. Further, the Plan provides for the same treatment of each Claim or Interest within a Class.

      iv.      I believe that the Plan provides adequate means for its implementation, including, without limitation: (i) authorization for the Debtors and the Litigation Trustee to take all corporate actions necessary to effectuate the Plan; (ii) creation of the Litigation Trust, appointment of the Litigation Trustee, and authorization for the Litigation Trustee to take

such actions as may be necessary or appropriate to effectuate the Plan; and (iii) preservation of the Retained Causes of Action.

v.     Article VII.I of the Plan provides for the substantive consolidation of the Debtors' estates pursuant to section 1123(a)(5)(c) of the Bankruptcy Code. I believe that such substantive consolidation is necessary and appropriate because, among other things, it is consistent with (i) the Debtors' prepetition business practices which operated as a unified enterprise under common management, (ii) the Debtors' approach to the sale process in these cases which sought to maximize the value of the Real Property Assets by selling them in one transaction to a single buyer, and (iii) the Global Settlement which provides that the net proceeds of the Sale will be deposited in the Sale Proceeds Reserve Account. Holders of Claims in the Voting Classes voted in favor of the Plan notwithstanding its substantive consolidation provisions. I further believe that creditors will not be prejudiced by the Plan's substantive consolidation because (i) the liens and interests of the Secured Creditors in and to their collateral and the Remaining Disputes are expressly preserved by the Plan, (ii) the costs of efforts to deconsolidate the Debtors' assets and liabilities would be burdensome and divert the resources and attention of the Litigation Trustee and its counsel from more profitable tasks, without meaningfully affecting the distributions received by any Class. I further believe that the Debtors do not intend to use substantive consolidation to avoid payment of U.S. Trustee Quarterly Fees. For the foregoing reasons, I believe that the substantive consolidation provided by the Plan is appropriate under the circumstances and should be approved.

vi.     Article XII of the Plan provides for (i) releases by the Debtors of claims against certain parties; (ii) releases by certain parties of claims against certain non-Debtor parties; and (iii) exculpation and injunction provisions prohibiting parties from pursuing Claims

and Causes of Action released under the Plan. I believe these provisions are proper because, among other things, they are the product of arm's length negotiations, are supported by substantial consideration provided by the beneficiaries thereof, have been critical to obtaining the support of the various constituencies for the Plan, and, as part of the Plan, have received support from the creditors that voted in favor of the Plan. I believe that the releases, exculpation, and injunction provisions in the Plan are fair and equitable, are given in exchange for valuable consideration, and are in the best interests of the Debtors and their Estates.

vii.    Article XII of the Plan provides for releases of the Released Parties and Settling Creditor Released Parties by the Debtors. I believe that each of the Released Parties and Settling Creditor Released Parties have made critical contributions to the Debtors, their Estates, and the success of the Plan. In particular, the Debtor Related Parties have a unified interest in formulating and confirming the Plan, and were actively involved in these chapter 11 cases, particularly with respect to the sale process, and the negotiation of the Global Settlement. Furthermore, such release is being given in consideration of such parties' efforts in developing a value-maximizing strategy for the Debtors, including the maintenance and preservation of the Debtors' real property assets leading up to the Sale to maximize the value of the Debtors' assets for the benefit of creditors, facilitating the marketing and sale process with respect to the Debtors' assets and the closing of the Sale, participating in the Mediation, and providing continued oversight of the administration of the Chapter 11 Cases. Many or all of these parties have also agreed to reduce fees so that the Plan can be successful. As to the Settling Creditor Released Parties, releases with such Settling Creditors were necessary to facilitate the Global Settlement, which in turn contains a multitude of benefits to the Estates and these cases, including (i) staying the expensive and time-consuming discovery related to the Allocation Motion and Plan objections; (ii) obtaining

9

the benefits of dismissing the Appeal of the Sale Order; (iii) resolving the Poppy Indemnity Claim; and (iv) paving a path toward confirmation of a chapter 11 plan in these cases. Certain of the Settling Creditors preferred the Plan before it was amended and the benefits to them under such, but agreed to forgo the same in the name of a global resolution.  I do not believe that any of Settling Creditors would have agreed to the Global Settlement without the Debtors releasing the Settling Creditor Released Parties. Without the compromises in the Global Settlement and the path that such settlement has paved to confirmation, the future of these chapter 11 cases was uncertain and the costs of protracted litigation and continued administrative burn were likely to further erode creditor recoveries. In sum, I believe that all of these efforts and agreements  helped to preserve and maximize the value of the Estates.

viii.    Article XII.C of the Plan provides for certain consensual releases by the Releasing Parties (the "Third-Party Releases"). I believe each such Releasing Party was provided ample notice and had an opportunity to affirmatively opt out of the Third-Party Releases by checking the opt-out box on its Ballot or by objecting to the Plan pursuant to the Interim Approval and Procedures Order. Moreover, I believe that the Debtors provided every known Holder of a Claim entitled to vote on the Plan an opportunity to opt out of, or object to, the Third-Party Releases, and made every effort to ensure that such Holders had notice of the Third-Party Releases and the consequences of failing to opt-out of the Third-Party Releases. Specifically, in accordance with the Interim Approval and Procedures Order, the Debtors provided adequate notice of the Plan to all Releasing Parties and provided such parties sufficient time to opt-out of, or object to, the Third-Party Releases. In addition, it is my understanding that the Debtors also published the Combined Hearing Notice in the San Diego Union-Tribune and the Desert Sun, which publication clearly and conspicuously advised all parties in interest to carefully review and

consider the Plan, including the Third-Party Releases. Lastly, the Plan provides that Holders of Claims in Classes 1, 2, 28, 29, and 30, which were deemed to either accept or reject the Combined Disclosure Statement and Plan, and therefore were not entitled to vote, are not Releasing Parties subject to the Third-Party Releases. Accordingly, I believe that the Third-Party Releases are consensual, fair, and appropriate.

ix.     Article XII.D of the Plan provides certain exculpation to the Exculpated Parties. Each Exculpated Party is receiving exculpation under the Plan in its capacity as a fiduciary of the Debtors and/or their Estates, and I believe that the protection from liability that the exculpation provides to these parties is appropriate given their efforts in the Chapter 11 Cases and the Plan process and their fiduciary relationship with the Debtors and/or their Estates. I believe the exculpations contained in the Plan are fair, equitable, and reasonable.

x.     Article XII.A of the Plan contains injunction provisions (the "Injunctions") implementing the Plan's release and exculpation provisions, in part, by permanently enjoining all applicable entities from commencing or maintaining any action on account of or with respect to any such Claims or Interests released or exculpated pursuant to the Plan. Any such action would hinder the efforts of the Litigation Trustee to effectively fulfill the responsibilities contemplated in the Plan and thereby would undermine efforts to maximize value for the Debtors' creditors. Accordingly, I believe that the Injunctions are necessary to preserve and enforce the Releases and Exculpation in the Plan and that the Injunctions are narrowly tailored to achieve that purpose.

  b.     *Section 1129(a)(3)*

i.     The Plan has been proposed by the Debtors in good faith. Throughout these Chapter 11 Cases, the Debtors have focused on maximizing value for their

stakeholders, initially through the retention and employment of Douglas Wilson Companies, to serve as restructuring advisors and provide a CRO to the Debtors, and Jones Lang LaSalle North Americas, Inc. ("JLL"), to broker and close a value maximizing transaction with respect to the Project, and then through a three-month voluntary mediation process to try to devise an orderly resolution of the intercreditor disputes related to the Project, and ultimately through the negotiation of the Global Settlement with the Settling Creditors. The Plan incorporates the Global Settlement and provides funding for the Litigation Trust to prosecute the Retained Causes of Action for the benefit of creditors. The Plan has been proposed with the legitimate and honest purpose of maximizing the value for the Estates for the benefit of creditors and effectuating the successful wind-down of the Debtors' estates. Moreover, the Plan and the Global Settlement embodied therein is the product of arm's length negotiations among the Debtors and various parties-in-interest, including the City and the Settling Creditors, who support the Plan.

        *c.*      *Section 1129(a)(4)*

        i.    It is my understanding that payments made or to be made by the Debtors for services or for costs or expenses in connection with the Chapter 11 Cases incurred during the period form the Petition Date through and including the Effective Date, including all Professional Fee Claims, have been approved by, or are subject to the approval of, the Court. I also believe that all of the payments to be made under the Plan are reasonable and appropriate in the context of these Chapter 11 Cases, and I believe that the payments for the costs and expenses of the Litigation Trustee set forth in the Plan and the Litigation Trust Agreement will fairly compensate parties for providing the services necessary to the implementation of the Plan and the wind-down of the Estates.

d.    *Section 1129(a)(5)*

i.    The Debtors have disclosed in the Amended Plan Supplement that Jacob Wood of Arkus Advisory is proposed to serve as the Litigation Trustee after the Effective Date. Pursuant to the Global Settlement, the Debtors were authorized to select the Litigation Trustee. Prior to selecting Mr. Wood to serve as the Litigation Trustee, the Debtors conducted interviews and reviewed materials for several additional candidates and ultimately selected Mr. Wood due to his experience and compensation structure. I therefore believe that the appointment of the Litigation Trustee is consistent with the interests of creditors.

e.    *Section 1129(a)(6)*

i.    The Debtors' business does not involve the establishment of rates subject to approval of any governmental regulatory commission, and, as a result, the Plan does not propose the change of any such rates, and I am advised that section 1129(a)(6) of the Bankruptcy Code is inapplicable.

f.    *Section 1129(a)(7)*

i.    I am advised and believe that the Plan satisfies the "best interests test" under section 1129(a)(7) of the Bankruptcy Code because confirmation of the Plan will provide each Holder of an Allowed Claim with an equal or greater recovery than the value of any distributions if these Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code. I participated in the preparation of the summary of the anticipated recoveries under the Plan and in a hypothetical chapter 7 liquidation (the "Liquidation Analysis") and discussed its contents with the Debtors' advisors. On the basis of my discussions with the Debtors' advisors and my review of the Debtors' books and records and the other documents consulted by the Debtors' advisors in preparation of the Liquidation Analysis, I believe that the estimated liquidation values

13

set forth in the Liquidation Analysis are fair and reasonable estimates of the value of the Debtors' assets in a hypothetical liquidation under chapter 7 of the Bankruptcy Code.

ii. I further believe that, based on those estimates, each Class of Claims or Interests will receive at least as much under the Plan as such Class would receive in a hypothetical chapter 7 liquidation. In addition, because certain aspects of the Plan, such as the City Additional Funding (which will, in part, provide initial funding to the Litigation Trust), were made possible by the Global Settlement and would not be available in a chapter 7 liquidation, I believe that all creditors benefit from the structure set forth in the Plan which includes the opportunity to enhance creditor recoveries through the prosecution of the Retained Causes of Action by the Litigation Trustee.

g. *Section 1129(a)(8) and 1129(b)*

i. Classes 1 and 2 are deemed to have accepted the Plan. Classes 3–11, 13, 20, and 25 voted to accept the Plan. However, I understand that Holders of Claims in Classes 16–17 and 26–27 voted to reject the Plan and that Holders of Claims in Classes 28, 29, and 30 are deemed to reject the Plan (collectively, the "Rejecting Classes"). As such, I am advised and believe that the Plan does not meet the requirements of section 1129(a)(8) of the Bankruptcy Code but may still be confirmed if it satisfies the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

ii. I believe that the Plan does not discriminate unfairly with respect to the Rejecting Classes. Here, the Plan's treatment of the Rejecting Classes is proper because all similarly situated Holders of Claims and Interests will receive the same treatment and the classification scheme in the Plan rests on a legally acceptable rationale. Classes 16–17 and 26–27 are not similarly situated—legally or otherwise—to the Claims or Interests in any other Class.

14

Likewise, Class 28 Subordinated Claims, Class 29 Intercompany Claims, and Class 30 Interests are not similarly situated—legally or otherwise—to the Claims or Interests in any other Class.

     iii. The Plan is also "fair and equitable" with respect to the Classes 16, 17, and 26 because it satisfies the requirements of section 1129(b)(2)(A) of the Bankruptcy Code. Section 1129(b)(2)(A) of the Bankruptcy Code provides that a plan is "fair and equitable" with respect to a class of secured claims if, among other alternatives, it provides that the holders of such claims shall retain the liens securing such claims to the extent of the allowed amount of such claims as of the plan effective date and deferred cash payments of such amount or that holders of such claims receive the indubitable equivalent of such claims. *See* 11 U.S.C. § 1129(b)(2)(A)(i) and (iii).  Here, the Plan provides that Holders of Secured Claims in Classes 16, 17, and 26 will receive, in exchange for full and final satisfaction of such Secured Claim, payment of such Secured Claim in full in Cash, except to the extent that the Holder of such Secured Claim and the Debtors or the Litigation Trustee, as applicable, agree to less favorable treatment for such Holder, after resolution of the Remaining Disputes. *See* Plan, Art. III. Article VII.I.1 further provides that each Secured Creditor under the Plan retains its security interest in its collateral or the proceeds thereof at all times, including after vesting in the Litigation Trust.

     iv. With respect to Class 27, which is comprised of the Holders of General Unsecured Claims, as well as Classes 28, 29, and 30, which were deemed to reject the Plan and not entitled to vote thereon, the Plan satisfies the "absolute priority rule" of section 1129(b)(2)(B) of the Bankruptcy Code because no class junior to such Classes will receive or retain property under the Plan on account of such junior interest. 11 U.S.C. § 1129(b)(2)(B).

h.    *Section 1129(a)(9)*

i.    I have been advised and believe that the treatment of Administrative Claims and Priority Tax Claims in the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

i.    *Section 1129(a)(10)*

i.    It is my understanding that Classes 3–11, 13, 20, and 25, which are Impaired, have accepted the Plan, regardless of the votes of any insider(s).

j.    *Section 1129(a)(11)*

i.    The Plan provides for the completion of the Debtors' liquidation and the distribution of the Debtors' Remaining Assets in accordance with the priority scheme set forth in the Bankruptcy Code and the terms of the Plan. I believe that confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors, and the Plan provides adequate means for its implementation.

k.    *Section 1129(a)(12)*

i.    Article XVI.E of the Plan provides that the Debtors and the Litigation Trust shall be and remain obligated to pay Statutory Fees to the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") until the earliest of the Debtors' cases being closed, dismissed, or converted to cases under chapter 7 of the Bankruptcy Code. I believe that the Debtors have adequate means to make such payments.

l.    *Section 1129(a)(13) – Section 1129(a)(16)*

i.    I am advised that sections 1129(a)(13) – 1129(a)(16) are inapplicable to these Chapter 11 Cases and the Debtors.

*m.*        *Section 1129(c)*

i.        The Plan is the only chapter 11 plan that has been proposed in these Chapter 11 Cases.

*n.*        *Section 1129(d)*

i.        The Plan does not have as one of its principal purposes the avoidance of taxes or the avoidance of the requirements of Section 5 of the Securities Act of 1933 (the "Securities Act"). The Debtors commenced these Chapter 11 Cases with a bona fide need and objective and not to avoid taxes or the application of Section 5 of the Securities Act. Specifically, the Debtors prosecuted these cases, in part, to pursue a value-maximizing sale of the Project to a bidder with the development expertise and financial wherewithal to realize its potential for the benefit of their creditors.

*o.*        *Section 1123(b)(2)*

i.        Article VIII of the Plan provides for the rejection of executory contracts and unexpired leases, that have not been previously assumed or rejected under section 365 of the Bankruptcy Code. The Debtors are winding down and have no need for any such contracts and leases, which could continue to incur expenses for the Litigation Trust if not rejected. Therefore, I believe that the Debtors have exercised sound business judgment in rejecting those agreements through the Plan.

*p.*        *Re-Solicitation of the Plan Was Not Required*

i.        I believe that the modifications made in the further amended Plan filed on May 11, 2026 [Docket No. 1111] are consensual as between the Debtors and the Settling Creditors, do not result in a material adverse change in the treatment of non-settling creditors, and are otherwise immaterial and understand that, therefore, such modifications do not require re-

solicitation of votes from previously accepting creditors. Moreover, the Debtors filed notices of the Global Settlement, extensions of the Plan Objection Deadline, and the amended Plan as soon as such documents could be filed and served such documents on all parties that received the solicitation version of the Plan. The Debtors also extended the deadlines to vote on or object to the Plan to May 13, 2026, and all creditors were able to submit new or revised Ballots by electronic mail.

**Reasonableness of Global Settlement**

20.     As described above, the Plan embodies the terms of the Global Settlement, which was reached as a result of extensive and hard-fought negotiations between and among the Debtors, the City, and the Settling Creditors.

21.     Pursuant to the Global Settlement and subject to the terms thereof and the Plan, (i) the Remaining Disputes, along with all rights to discovery related to the same, will be preserved for later resolution or litigation; (ii) Builders Capital, the Debtors, the City, and the Buyer have agreed that the Appeal of the Sale Order will be dismissed with prejudice on terms acceptable to such parties; (iii) the net Sale proceeds will be placed in the Sale Proceeds Reserve Account to be distributed upon the final determination or resolution of the Remaining Disputes by the Third-Party Disbursing Agent; (iv) the Poppy Indemnity Claim was resolved; (v) the Settling Creditors will execute consensual releases of the City and the Buyer and receive the releases from the Debtors under the Plan; and (vi) the City Additional Funding will be available to fund administrative costs of these Chapter 11 Cases and the Litigation Trust to, among other things, pursue the Retained Causes of Action to augment recoveries to creditors of the Debtors' Estates. The incorporation of each of these components was critical to build consensus around the Global

Settlement and to stave off litigation that would have been destructive to creditor recoveries in these Chapter 11 Cases and jeopardized the Debtors' ability to confirm a chapter 11 plan.

22.     I believe, in my business judgment, that the terms of the Global Settlement are fair and reasonable in the circumstances of these Chapter 11 Cases and in light of the significant efforts by the City and the Settling Creditors toward consensual confirmation of the Plan. I was involved in the negotiation of the Global Settlement with the City and the Settling Creditors and believe that all negotiations occurred in good faith and were conducted at arm's length by parties represented by sophisticated, independent counsel. I further believe that absent the Global Settlement, it is unlikely that the Litigation Trust would have sufficient funding to, among other things, investigate and prosecute the Retained Causes of Action. As a result, I believe that the Global Settlement is in the best interests of all creditors in these Chapter 11 Cases.

## Conclusion

23.     I believe, in my business judgment, that the Plan will enable the Holders of Allowed Claims to realize the highest possible recoveries under the circumstances of these Chapter 11 Cases. I therefore conclude in my business judgment that the Plan is in the best interests of creditors and respectfully request that the Court enter an order confirming the Plan.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: May 19, 2026
Wilmington, Delaware

By: */s/ Christopher S. Sontchi*
Christopher S. Sontchi
Independent Manager
SilverRock Development Company, LLC, *et al.*

19