**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SilverRock Development Company, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11647 (MFW)<br><br>(Jointly Administered)<br><br>**Objection Deadline: June 24, 2026 @ 4:00 p.m. ET)**<br>**Hearing Date: July 30, 2026 @ 10:30 a.m. (ET)** |

**MOTION FOR ENTRY OF AN ORDER (I) VALUING COLLATERAL PURSUANT TO 11 U.S.C. § 506(a) AND (II) GRANTING RELATED RELIEF**

Construction Loan Services II, LLC d/b/a Builders Capital ("Builders") hereby submits this motion (this "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, creating a briefing schedule and setting a hearing at which this Court will determine the value of collateral pursuant to section 506(a) of chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rule 3012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and granting such other and further relief as it appropriate under the circumstances. In support of the Motion, Builders respectfully states as follows:

**PRELIMINARY STATEMENT**[2]

1. The Debtors' cases have been pending since 2024. The Debtors' sole asset was sold

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: SilverRock Development Company, LLC (5730), RGC PA 789, LLC (5996), SilverRock Lifestyle Residences, LLC (0721), SilverRock Lodging, LLC (4493), SilverRock Luxury Residences, LLC (6598) and SilverRock Phase I, LLC (2247). The location of the Debtors' principal place of business and the Debtors' mailing address is 343 Fourth Avenue, San Diego, CA 92101.

[2] Capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below.

in December 2025 and the Plan confirmed in May 2026; however, the Debtors—now the Litigation Trustee—still cannot make distributions to creditors. No distributions can be made until the secured creditors' collateral is valued. Once the collateral is valued, undisputed claims can be paid from the Sale Proceeds and disputed or competing claims can be resolved through litigation, negotiation, or mediation, as appropriate.

2. For better or worse, the only way to efficiently move forward is with this Court's intervention. There are too many parties and too many complicated and interconnected interests to successfully mediate this dispute—a fact established by the three months of mediation on this exact issue that concluded without result.

3. Accordingly, by this Motion, and with the input of all creditors asserting a claim to the Sale Proceeds, Builders asks this Court to implement a process that creates a realistic schedule for expert and other discovery and briefing and sets a hearing at which this Court will determine the value of the individual parcels and lots that comprise the Real Property Assets. Builders anticipates presenting a valuation concurrently with those of other secured creditors as part of the process.

4. The relief requested in this Motion is consistent with 11 U.S.C. § 506 and necessary to implement the Plan approved by this Court last month. For that reason, and those set forth below, Builders requests that this Court enter the Proposed Order and create an orderly process and setting a hearing at which this Court will value the Real Property Assets.

**JURISDICTION AND VENUE**

5. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

6. Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Builders confirm its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these chapter 11 cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief sought herein are sections 105(a) and 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012.

## BACKGROUND

### A. General Background

5. On November 19, 2014, the City of La Quinta, California (the "City") and SilverRock Development Company, LLC ("SilverRock"), entered into that certain *Purchase, Sale, and Development Agreement* (as amended, the "PSDA"). Through the PSDA, SilverRock and the City agreed to develop the Debtors' 134+ acres of real property (the "Real Property Assets") into a luxury living, golfing, and tourism destination (collectively, the "Project").

6. The Project was to be developed in two phases: Phase 1A and Phase 1B. Phase 1A consisted of the development of 29 "ultra-luxury" residences on 29 separate lots, a number of "lifestyle" residences on separate lots, and two hotels on their own individual parcels. Phase 1B consisted of the development of single-family residential homes.

7. Given the size and complexity of the Project, certain Debtors borrowed money from multiple lenders[3] to support the development of the Project. The loans sourced to develop the Real Property Assets were secured by different parcels and lots within the Project and, in certain instances, had different payment priorities.

**B. Bankruptcy and Sale of Real Property Assets**

9. On August 5, 2024, SilverRock and its affiliated debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

8. On August 15, 2025, the Debtors moved to sell the Real Property Assets to TBE RE Acquisition Co. II, LLC. Docket No. 621.

9. On October 23, 2025, the Bankruptcy Court entered an order [Docket No. 759] (the "Sale Order")[4] that approved, among other things, the sale of the Real Property Assets for a total purchase price of $65,000,000 (the "Sale Proceeds").

10. Although the Sale Order provided that the Real Property Assets were sold for the $65,000,000 purchase price, neither the Sale Order nor any other order of this Court allocated the Sale Proceeds among the various parcels and lots that make up the Real Property Assets or valued any secured creditor's collateral.

11. The sale closed on December 9, 2025. Docket No. 833.

---

[3] Builders was one of the Debtors' lenders. On November 22, 2022, Builders made three loans to Debtor SilverRock Luxury Residences LLC, totaling in aggregate approximately $40,000,000.

[4] On November 3, 2025, Builders timely appealed the Sale Order. On May 26, 2026, Builders' appeal was dismissed with prejudice and the Sale Order was vacated in part. Docket 1154.

**C. Mediation**

10. On December 10, 2025, the Debtors filed an emergency motion seeking to allocate the Sale Proceeds and compel mediation. Docket No. 834.

11. From December to March, the Debtors, the City, and a considerable number of the Debtors' secured creditors, including Builders, attempted to mediate their disputes. Notwithstanding the mediator's best efforts and the good faith participation of the mediation parties, the issues being mediated, which included the relative value of the various parcels and lots that make up the Real Estate Assets, proved too complicated—because of, among other reasons, the number of parties involved and the multitude of complex and interdependent issues—to resolve consensually.

12. On March 13, 2026, after three months of effort, the mediator terminated the mediation via . Docket No. 917.

**D. Confirmation of the Plan**

13. On March 17, 2026, the Debtors filed the *Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of SilverRock Development Company, LLC and its Debtors Affiliates* [Docket No. 904] (the "Initial Plan").

14. On March 24, 2026, the Debtors filed their amended motion seeking to impose an allocation of the Sale Proceeds on the Debtors' secured creditors [Docket No. 913] (the "Revised Allocation Motion").

15. Multiple creditors, including Builders, objected to the Revised Allocation Motion alleging, among other things, that (a) the Debtors' attempt to value secured claims was materially flawed and (b) because the Revised Allocation Motion chose which secured creditors would receive value on their liens and which would not, it was seeking an adjudication of the validity,

priority, and extent of liens and required an adversary proceeding under Bankruptcy Rule 7001(b).[5] *See, e.g.*, Docket Nos. 939, 943, 945, 963.

16. Notwithstanding the multiple objections, the Debtors incorporated their proposed allocation in the Initial Plan.

17. On April 22, 2026, this Court held a status conference at which it heard the secured creditors' request to extend the schedule for the Revised Allocation Motion to allow appropriate discovery, including expert discovery, on the value of each lot and parcel comprising the Real Property Assets. Although this Court denied the request, this Court encouraged the "parties to talk more." Apr. 22, 2026, Trans. 32:4-15.

18. Thereafter, and as requested by this Court, the parties engaged in good faith negotiations, which resulted in the filing of the Global Settlement Term Sheet on May 8, 2026. Docket No. 1107.

19. Pursuant to the Global Settlement Term Sheet, the Debtors withdrew the Revised Allocation Motion and filed the *First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of SilverRock Development Company, LLC and its Debtors Affiliates* [Docket No. 952]. The Debtors subsequently filed the *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of SilverRock Development Company, LLC and its Debtors Affiliates* [Docket No. 1111] (the "<u>Plan</u>").

20. The Plan incorporated the Global Settlement Term Sheet and, among other things, created a Litigation Trust, which would receive and hold the Sale Proceeds in escrow for the

[5] Unlike the Revised Allocation Motion, Builders is proposing that this Court value *just the collateral*—a necessary predicate for determining the value of the secured claims. To the extent there are any disputes as to the validity, priority, or extent of a lien, those disputes can be resolved via adversary proceeding as required by Bankruptcy Rule 7001(b) either concurrently with this Motion or subsequently. To that end, Builders has already filed in adversary complaint against Poppy Bank seeking, among other things, a declaratory judgment that Builders' claims were senior to Poppy Bank's. Adv. Proc. No. 26-50232 (MFW) (Bankr. D. Del. Apr. 9, 2026).

benefit of the secured creditors asserting claims against the Sale Proceeds. The Plan expressly contemplated that the valuation of the Real Property Assets would occur post effective date.

21. On May 21, 2026, this Court confirmed the Plan [Docket No. 1152] (the "Confirmation Order").

22. On June 5, 2026, the Plan became effective (Docket No. 1163), the Litigation Trust was created, and the Litigation Trustee was appointed. Until the Real Property Assets are individually valued, the Litigation Trustee cannot make any material distributions to creditors.

**RELIEF REQUESTED**

23. To facilitate implementation of the Plan and distributions to creditors, Builders seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, setting:

- a schedule and procedures for discovery, including expert discovery, on the value of the Real Property Assets with discovery to be concluded no later than August 17, 2026;
- a briefing schedule pursuant to which all parties asserting a secured claim, including Builders, file simultaneous opening briefs on August 24, 2026, and responsive briefs by August 31, 2026;
- a hearing in September 2026 for this Court to assess the evidence and arguments and determine the value of the Real Property Assets; or
- such other schedule as the Court may determine is appropriate after hearing from parties in interest at a status conference to be set by the Court.

**BASIS FOR RELIEF**

24. Section 506(a)(1) of the Bankruptcy Code allows this Court to value a secured creditor's collateral as a predicate to determining the amount of a creditor's secured claim against the estate. 11 U.S.C. § 506(a)(1). A valuation for purposes of Section 506(a)(1) is fact specific and requires this Court to determine the value of the secured creditor's collateral "in light of the purposes of the valuation and of the proposed disposition or use of such property." *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 954, 961 (1997); *see also In re Heritage Highgate*, 679

F.3d 132, 140 (3d Cir. 2012).

25. As set forth above, the Real Property Assets were sold for the Sale Proceeds—$65,000,000—and the value of the Real Property Assets, taken as a whole, equals the Sale Proceeds. However, no creditor has a lien on the entirety of the Real Property Assets. Instead, each secured creditor has a security interest in one or more of the lots and parcels that comprise the Real Property Assets. Accordingly, determining the value of a secured creditor's claim requires that this Court first determine the value of the individual lot or parcel that makes up such creditor's security.

26. Builders acknowledges there is disagreement among the Debtors' secured (and ostensibly secured) creditors as to the value of each creditor's collateral. Builders is therefore asking this Court to set a schedule that will allow each secured creditor to put forth its own valuation and for those valuations to be tested at a hearing at which this Court will determine the value of the Real Property Assets. Once this Court has determined the value of the parcels and lots that comprise the Real Property Assets, the Litigation Trust can begin making distributions to creditors with undisputed claims on property and resolve any priority or other disputes through the appropriate proceedings.

27. Until the lots and parcels that comprise the Real Property Assets are individually valued, no secured creditor will receive a distribution. The requested relief is therefore a predicate to implementation of the Plan, is consistent with 11 U.S.C. § 506(a) and the Confirmation Order, and is necessary and appropriate.

**NOTICE**

28. Notice of this Motion will be provided to the following parties or their respective counsel: (a) the Debtors, (b) the U.S. Trustee; (c) the DIP Lender; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; (e) the Litigation Trustee; and (f) all parties whose rights are affected by the Motion. Builders respectfully submits that, in light of the nature of the relief

requested, no further notice is necessary.

**CONCLUSION**

WHEREFORE, Builders respectfully requests that the Court enter the Proposed Order.

June 10, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James O'Neill*
James O'Neill, Esq. (DE Bar No. 4042)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652 4400
Email: joneill@pszjlaw.com

- and -

Ira D. Kharasch, Esq. (*pro hac vice* ECF 940)
Gregory V. Demo, Esq. (*pro hac vice* ECF 935)
Jordan A. Kroop, Esq. (*pro hac vice* ECF 941)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: ikharasch@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

- and -

**POLSINELLI PC**
Michael L. Schuster (*pro hac vice* ECF 925)
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: (720) 931-1188
Facsimile: (302) 252 0291
Email: mschuster@polsinelli.com