**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SILVERROCK DEVELOPMENT COMPANY, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11647 (MFW)<br><br>(Jointly Administered)<br><br>Re: Docket No. 1342 |

**MOTION OF JACOB WOOD (I) TO MODIFY CERTAIN PROVISIONS OF THE FINAL ORDER PURSUANT TO PARAGRAPH 18 AND (II) TO EXTEND THE APPLICABLE COMPLIANCE DEADLINES**

Jacob Wood ("Wood"), through undersigned counsel, moves for entry of an order, substantially in the form attached as **Exhibit A** (the "Proposed Order"), modifying certain provisions of the Final Order entered September 28, 2026 [Docket No. 1342] (the "Final Order"). A blacklined copy of the Proposed Order is attached as **Exhibit B**. Under paragraph 18 of the Final Order, Wood seeks relief from requirements that would compel personal testimony protected by the Fifth Amendment of the United States Constitution. He also requests an extension of the affected deadlines while the Court considers that relief. In support, Wood states as follows:

**PRELIMINARY STATEMENT**

1. This Motion turns on the line between producing existing entity records and giving compelled personal testimony. A custodian must produce the entity's records even if they incriminate him, but that obligation does not extinguish his privilege against compelled testimony beyond the production. *Curcio v. United States*, 354 U.S. 118, 123-25, 128 (1957); *Braswell v.*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: SilverRock Development Company, LLC (5730), RGC PA 789, LLC (5996), SilverRock Lifestyle Residences, LLC (0721), SilverRock Lodging, LLC (4493), SilverRock Luxury Residences, LLC (6598) and SilverRock Phase I, LLC (2247). The location of the Debtors' principal place of business and the Debtors' mailing address is 343 Fourth Avenue, San Diego, CA 92101.

*United States*, 487 U.S. 99, 113-14 (1988). Wood accepts the first proposition and invokes the second.

2. **What Wood will produce.** Pursuant to the Final Order, and without waiving his personal Fifth Amendment privilege concerning additional accounts, records, or disclosures, Wood will produce existing Litigation Trust records, property, credentials, and access devices in his possession, custody, or control that he holds in a representative capacity. Final Order ¶¶ 9(a)–(d), 10. He will also produce the existing bank records in his possession, custody, or control for Wells Fargo account ending in 1563 (the "1563 Records") and Axos Bank account ending in 0395 (the "Axos Bank Records"). *Id.* ¶ 2(a)–(b). Wood has no records for, or access to, Axos Bank account ending in 0403. These productions are made under the compulsion of the Final Order and do not constitute Wood's admission of, or agreement with, the factual findings set forth therein.

3. **What Wood challenges.** Wood seeks relief from the sworn certification under paragraph 9(e) and both personal accounting requirements under paragraph 13. He also seeks a carve-out from personal production under paragraphs 9(a)–(b), and overlapping paragraph 10 demands, to the extent compliance requires him to identify additional accounts or select records through his own determination that they contain Trust assets or traceable proceeds. That identification or selection would itself be testimonial: it would communicate Wood's personal knowledge about the accounts and movement of funds, beyond the contents of the existing records.

4. The challenged disclosures concern the matters addressed in the Court's findings in paragraphs B through D and could furnish a link in the chain of evidence against Wood. The requested relief leaves in place the account freezes, preservation requirements, the authority of James Romey of Arete Partners as successor Litigation Trustee (the "Successor Trustee"), direct depository production, and the independent obligations of Arkus Advisory US Inc. ("Arkus"). The

Successor Trustee is vested with the Trust's records and authority and can obtain information from existing records, the depositories, and other independent sources. These mechanisms reduce the practical impact of resolving Wood's privilege claims before disclosure.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and paragraph 18 of the Final Order, under which the Court retained jurisdiction to interpret, implement, enforce, and modify the Final Order. This is a core proceeding under 28 U.S.C. § 157(b)(2).

6. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Wood consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory and rule-based predicates for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 9006(b)(1) and 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rules 9006-2 and 9013-1, and paragraph 18 of the Final Order.

## BACKGROUND

9. On May 21, 2026, the Court entered an order [Docket No. 1152] (the "Confirmation Order") confirming the Debtors' chapter 11 plan and approving the Amended Litigation Trust Agreement [Docket No. 1147] (the "LTA").

10. On September 16, 2026, the parties identified therein (the "Joint Movants") filed a Joint Emergency Motion [Docket No. 1297] (the "Joint Motion"). The Court thereafter entered an Interim Order [Docket No. 1298] and an Amended Interim Order [Docket No. 1309]. The Court held an evidentiary hearing on September 25, 2026, and entered the Final Order on September 28, 2026. Capitalized terms used but not defined herein have the meanings given to them in the Final Order.

11. Wood was represented at the September 25 hearing by counsel who had been engaged shortly before the hearing, as counsel advised the Court on the record, and who had not received the sealed pleadings. Since the hearing, undersigned counsel has reviewed the Final Order and the pleadings underlying it and evaluated the Fifth Amendment implications of the certification, accounting, and personal-production requirements challenged here. Wood timely files this Motion seeking relief from those requirements.

12. The Final Order removed Wood as Litigation Trustee for cause and terminated his rights, powers, duties, authority, and control, "except for his obligations to comply with this Order, complete turnover, and render the accounting required below." Final Order ¶ 3. Wood may not, among other things, "hire, terminate, or direct professionals of the Litigation Trust" or "represent that he has authority to bind or act for the Litigation Trust." *Id.* ¶ 3(c), (g).

13. The Final Order vests the Successor Trustee, "without further act," with "all rights, powers, duties, obligations, privileges, claims, records, property, and authority of the Litigation Trustee." *Id.* ¶ 4. It directs "Axos, Wells Fargo, Arkus, existing Litigation Trust professionals, and all other persons" to cooperate in transferring ownership, signatory authority, access, credentials, records, and control to the Successor Trustee, and provides that "Wood's consent, signature, or further authorization is not required." *Id.*

14. The Final Order also freezes the Affected Accounts and imposes preservation requirements, *id.* ¶¶ 5–7, and directs Axos and Wells Fargo to produce directly to the Successor Trustee and counsel for the Joint Movants, within forty-eight hours, a certification identifying every Affected Account at the institution, statements and transaction detail, transfer records, signature cards, and records identifying every person with signatory or other control authority. *Id.* ¶ 8. Wells Fargo's production must include "records sufficient to identify the source and disposition of funds transferred into, out of, or among the Affected Accounts." *Id.*

15. Paragraph 9 requires Wood and Arkus to transmit, within seven days after receiving actual notice, the documents described in paragraph 8 that are in their possession, custody, or control; reconciliations and general-ledger entries concerning the Affected Accounts; communications with depositories concerning ownership, balances, transactions, access, or control; and Litigation Trust credentials and access devices. Final Order ¶ 9(a)–(d). Paragraph 9(e) separately requires a sworn certification identifying every account containing a Litigation Trust Asset and every person with authority over it.

16. The production demand extends to the "Affected Accounts" defined in paragraph 2. Those include specified Trust-related accounts and Wells Fargo account ending in 1563. Paragraph 2(b) also reaches other Wells Fargo accounts titled individually or jointly in Wood's name, held for his benefit, or subject to his control, if they received a direct or indirect transfer of Litigation Trust Assets or contain traceable funds or proceeds. Paragraph 2(c) reaches accounts at other institutions containing Trust assets or traceable proceeds. The challenged demand thus selects additional records by their connection to Trust funds, rather than simply demanding statements for an identified account.

17. Paragraph 10 requires turnover of Litigation Trust Assets, records, and related property, and provides: “Nothing in this paragraph requires disclosure of privileged material to any person other than the Successor Trustee; any withheld material shall be identified sufficiently to permit the Successor Trustee to assess the asserted privilege.” *Id.* ¶ 10. Wood does not read this language as requiring him to submit his personal Fifth Amendment claims to the Successor Trustee for assessment. Whether the privilege justifies withholding a particular disclosure is for the Court to decide. *See Hoffman v. United States*, 341 U.S. 479, 486 (1951).

18. Paragraph 13 provides that, within seven days after receiving actual notice, “Wood shall provide the Successor Trustee and counsel for the Joint Movants with a sworn preliminary accounting identifying every Litigation Trust account and asset and every receipt, disbursement, transfer, distribution, payment, and disposition during his tenure.” *Id.* ¶ 13. It further provides that, “[n]o later than thirty (30) days after entry of this Order, Wood shall file and serve the final accounting required by LTA sections 5.5 and 5.6.” *Id.*

19. The findings in paragraphs B through D concern the absence of a complete and independently verifiable accounting and transfers of Litigation Trust Assets, including transfers involving account 1563 and a real-property closing. Wood refers to these findings to establish the setting of the challenged demands, without adopting them as admissions. Except as expressly decided in the Final Order, the Court left ownership, ultimate liability, and the parties’ underlying claims and defenses for later determination. Final Order ¶ F.

20. Wood received actual notice of the Final Order on September 28, 2026. The seven-day deadlines under paragraphs 9, 10, and 13 therefore expire on October 5, 2026, and the final accounting is due October 28, 2026. This Motion is filed before those deadlines expire.

21. Wood, through counsel, sought the consent of the Successor Trustee and the Joint Movants to the extension and modification requested herein. The Successor Trustee and the Joint Movants, through their respective counsel, have stated that they oppose the requested relief.

**RELIEF REQUESTED**

22. Wood requests entry of the Proposed Order modifying the following provisions of the Final Order, as applied to him (collectively, the "**Challenged Obligations**"):

(a) the sworn certification required by paragraph 9(e);

(b) the sworn preliminary accounting required by the first sentence of paragraph 13;

(c) the requirement in the second sentence of paragraph 13 (and the corresponding reservation in paragraph 3) that Wood personally prepare, file, and serve the final accounting required by LTA sections 5.5 and 5.6; and

(d) paragraphs 9(a) and 9(b), and any overlapping turnover demand under paragraph 10, to the extent compliance requires Wood, acting individually, to identify additional accounts or select records through his own determination that they contain Trust assets or traceable proceeds, other than the 1563 Records and the Axos Bank Records he will produce.

23. Wood requests that the certification and accounting obligations identified in clauses (a) through (c) be vacated as applied to him personally. For clause (d), Wood requests that the production requirements be modified to exclude compelled personal identification of additional accounts or selection of records based on his own determination that they contain Trust assets or traceable proceeds. Any later request to compel personal production covered by this carve-out must be presented by motion on notice, with no such production required unless the Court orders otherwise. The requested relief leaves unchanged the Litigation Trust's and the Successor Trustee's accounting obligations, Wood's duty to produce existing nonprivileged Trust records held in a representative capacity, and the depositories' direct-production obligations.

24. Wood further requests that each applicable deadline for the Challenged Obligations, including the October 28, 2026 final-accounting deadline, be held in abeyance or

extended pending the Court's decision on the requested modification of that obligation. To the extent an obligation remains in effect following that decision, Wood requests that its compliance deadline be extended until fourteen (14) days after entry of the Court's order, unless the Court sets another date. Deadlines for obligations not challenged in this Motion remain unchanged.

## BASIS FOR RELIEF

### I. Cause Exists to Extend the Deadlines for the Challenged Obligations.

25. Bankruptcy Rule 9006(b)(1) permits the Court, for cause, to enlarge a period fixed by court order when the request is made before the period's expiration. Local Rule 9006-2 automatically extends the applicable compliance deadline when a timely motion to extend it is filed, without the necessity of a bridge order. That extension lasts until the Court acts on the motion. Wood therefore expressly seeks to hold the applicable deadlines in abeyance or extend them pending the Court's ruling, with fourteen (14) days after entry of the Court's order to comply with any Challenged Obligation that remains in effect, unless the Court sets another date.

26. Cause exists to permit the Court to resolve the requested protection before Wood makes the challenged disclosures. Once supplied, those disclosures cannot be withdrawn and could communicate incriminating information protected by Wood's Fifth Amendment privilege. The extension is limited to the Challenged Obligations. The account freezes, preservation requirements, direct depository production, and Wood's undisputed turnover and production obligations remain in effect. Those protections reduce potential prejudice while the Court considers the Motion.

## II. Good Cause Exists to Modify the Challenged Obligations Under Paragraph 18.

### A. Standard for Modification.

27. Paragraph 18 provides that "[a]ny person subject to this Order may move to modify it for good cause." Final Order ¶ 18. Good cause exists where, as here, a requirement would compel Wood to give testimony protected by the Fifth Amendment and the modification still preserves the Litigation Trust's ability to obtain its records and property. Alternatively, to the extent the requested relief amounts to altering or amending the Final Order, Wood seeks relief under Bankruptcy Rule 9023 to prevent the manifest injustice of compelled self-incrimination. This Motion is timely under that rule because it is filed within fourteen (14) days after entry of the Final Order.

### B. The Fifth Amendment Protects Wood Against Compelled Testimony in This Proceeding.

28. The privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. at 486. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486-87. Whether a compelled response presents that danger must be evaluated in light of the circumstances and context in which the information is sought; the response need not establish guilt by itself. The privilege applies in bankruptcy proceedings. *See McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924). *McCarthy* arose from a bankruptcy examination and held that the privilege protects compelled answers even though the proceeding is civil. *See id.*

29. Whether the privilege applies is a question for the Court. *Hoffman*, 341 U.S. at 486 ("It is for the court to say whether his silence is justified[.]"); *In re J.M.V., Inc.*, 90 B.R. 737, 738-39 (Bankr. E.D. Pa. 1988) (applying *Hoffman* in a bankruptcy proceeding).

**C. The Governing Line Is Between Existing Entity Records and New Personal Testimony.**

30. Wood does not dispute his duty to produce existing Litigation Trust records held in a representative capacity. *See Braswell*, 487 U.S. at 108-10. His objection concerns the additional personal disclosures required by the certification, accountings, and challenged personal production.

31. In *Chabot*, the Third Circuit enforced IRS summonses for existing foreign-account records the taxpayers were independently required to maintain under federal regulations. *United States v. Chabot*, 793 F.3d 338, 341-45 (3d Cir. 2015). That required-records ruling did not address compelled creation of a new sworn certification or accounting.

32. In *Curcio*, the Supreme Court held that a union records custodian could be required to produce entity records but could invoke the privilege when asked to testify about the whereabouts of records he had not produced. *Curcio*, 354 U.S. at 123-25, 128. The Court explained that those answers required him to disclose "the contents of his own mind." *Id.* at 128. *Braswell* involved a corporate officer compelled by grand jury subpoena to produce corporate records. Although the Court required representative production, it reaffirmed *Curcio*'s protection against compelled incriminating oral testimony. 487 U.S. at 109-14. The duty to surrender Trust records therefore does not extinguish Wood's privilege against additional compelled incriminating communications.

33. *Hubbell* explains why identifying and assembling responsive information can itself be testimonial. There, a broad document subpoena required the recipient to use his own knowledge

to identify and assemble responsive documents. *See United States v. Hubbell*, 530 U.S. 27, 41-43 (2000). The Supreme Court explained that compliance required use of the "contents of his own mind," rather than simply surrendering specified records. *Id.* at 43. Here, identifying every account and person, compiling a comprehensive account of transactions, and selecting additional personal-account records through a tracing test would communicate Wood's knowledge. The findings in paragraphs B through D establish why those communications could incriminate him.

34. *McLaughlin* applies *Braswell*'s protection in this Circuit. There, the government used a corporate custodian's incomplete production in response to an IRS summons as evidence of his intent to evade taxes. *See United States v. McLaughlin*, 126 F.3d 130, 134 (3d Cir. 1997). The Third Circuit vacated his convictions, holding that *Braswell*'s bar on evidentiary use of the custodian's "individual act" is "not restricted to material actually produced but is instead broad enough to encompass the implications of production, including its incompleteness." *Id.* That holding protects the testimonial implications of Wood's compelled representative production, including its scope and completeness; it does not excuse production of existing Trust records.

35. In *J.M.V.*, the bankruptcy court sustained a corporate principal's Fifth Amendment privilege claims concerning knowledge of undisclosed corporate assets, whether all corporate records had been turned over, and the location of corporate records. *J.M.V.*, 90 B.R. at 741-42. Those subjects closely track the account and asset identification demanded here and the comprehensive answers required by the certification and accountings.

### D. The Danger of Incrimination Is Evident From the Setting Established by the Final Order.

36. The Final Order supplies the setting for Wood's assertion. Paragraph B addresses the absence of a complete, independently verifiable accounting and transfers of Litigation Trust Assets for Wood's personal benefit. Paragraph C addresses transfers into account 1563, and

paragraph D addresses a transfer for a real-property closing involving property conveyed to Wood and another person. The certification and accountings require Wood's own identification of accounts, persons, assets, and transactions within that same subject matter. The tracing demand likewise requires selection of additional personal-account records by their connection to those funds. These disclosures could identify sources of evidence or furnish links concerning the matters already addressed in the findings. Wood relies on the findings to establish the setting without adopting them as admissions. He need not disclose the answers he seeks to protect to explain the danger. *See Hoffman*, 341 U.S. at 486-87.

**E. Application to Each Challenged Obligation.**

**1. The Paragraph 9(e) Certification**

37. Paragraph 9(e) requires Wood to identify every account containing a Litigation Trust Asset and every person with authority over it, and to swear that his answer is complete. That requires Wood to communicate his own knowledge, rather than simply surrender existing Trust records.

38. In the setting established by the Final Order's findings, those disclosures could furnish a link in the chain of evidence against Wood. The distinction recognized in *Curcio* and *J.M.V.*, together with *Hubbell*'s analysis of compelled identification and assembly, supports protecting those personal disclosures. *See Curcio*, 354 U.S. at 123-25, 128; *J.M.V.*, 90 B.R. at 741-42; *Hubbell*, 530 U.S. at 41-43. Wood therefore requests that paragraph 9(e)'s certification requirement be vacated as applied to him.

39. Relieving Wood of this personal certification would leave the Successor Trustee's access to independent account information intact. Axos and Wells Fargo must certify every Affected Account at their institutions and produce records identifying persons with signatory or control authority. Final Order ¶ 8(a), (f). Wood will produce existing Litigation Trust records held

in a representative capacity, along with the 1563 Records and the Axos Bank Records. These sources permit the Successor Trustee to investigate the accounts without requiring Wood's own sworn identification.

**2. The Paragraph 13 Preliminary Accounting**

40. Paragraph 13 requires Wood to provide a sworn accounting "identifying every Litigation Trust account and asset and every receipt, disbursement, transfer, distribution, payment, and disposition during his tenure." Final Order ¶ 13. To comply, Wood must assemble a comprehensive account of those transactions and swear that it is complete, including transactions addressed in the Court's findings.

41. Wood will produce existing Litigation Trust records held in a representative capacity. The additional sworn accounting, however, would communicate his own knowledge and attest to the completeness of his account. *Hubbell*, *Curcio*, and *J.M.V.* support distinguishing that compelled personal testimony from the surrender of existing records. *See Hubbell*, 530 U.S. at 41-43; *Curcio*, 354 U.S. at 123-25, 128; *J.M.V.*, 90 B.R. at 741-42. Given the matters addressed in the Final Order's findings, those disclosures could "furnish a link in the chain of evidence" against Wood. *Hoffman*, 341 U.S. at 486-87.

42. *Dunlap* illustrates a related distinction between requiring an individual to provide a personal accounting and requiring him to cause an entity he controls to prepare one. The Fourth Circuit required modification of demands for a sworn accounting of the individual's personal financial transactions and assets, while permitting the entity-accounting requirement based on his continuing control. *SEC v. Dunlap*, 253 F.3d 768, 774-78 (4th Cir. 2001).

43. Here, Wood has been removed and no longer controls the Trust. The Final Order bars him from directing Trust professionals or acting for the Trust and vests those powers in the Successor Trustee. Final Order ¶¶ 3–4. Yet paragraph 13 requires Wood personally to prepare the

sworn accounting. His objection is to the compelled disclosure of his own knowledge concerning the matters addressed in the Court's findings. He does not seek to eliminate the Trust's accounting obligations or his duty to surrender its existing records.

**3. The Paragraph 13 Final Accounting**

44. Paragraph 13 also requires Wood to "file and serve the final accounting required by LTA sections 5.5 and 5.6." Final Order ¶ 13. That accounting must describe the Trust's transactions during his tenure, including their "source and nature," and identify its remaining assets, the amount and location of its cash, known liabilities, and pending actions. LTA § 5.5(a)–(f). Section 5.6 requires filing this final accounting with the Court. *Id.* § 5.6; *see also* Joint Motion ¶¶ 11, 31.

45. Although the LTA does not expressly require an oath, preparing and filing this accounting could still compel testimonial disclosures. Wood would have to describe transactions, their source and nature, and the location of Trust cash. To the extent he must identify, explain, or reconstruct that information from his own knowledge, compliance would communicate more than the contents of existing records. Those disclosures could furnish links in the chain of evidence concerning the transfers addressed in Findings B through D. *See Hubbell*, 530 U.S. at 41-43.

46. The survival of an accounting duty does not answer that constitutional objection. Paragraph 3 preserves Wood's accounting obligation, and LTA section 2.12 provides that Article V survives removal. But *Curcio* distinguishes a custodian's duty to surrender records from compelled incriminating testimony beyond production. 354 U.S. at 123-25, 128. Wood asks the Court to apply that distinction to the personal disclosures required by the final accounting, while leaving his existing-record production obligations intact.

47. Relieving Wood of those personal disclosures would leave independent means of preparing an accounting available. Section 5.5 of the LTA contemplates an accounting by a

successor Litigation Trustee. The Final Order vests the Successor Trustee with the Trust's records and authority and requires direct depository production. Final Order ¶¶ 4, 8; *see also* LTA § 5.3(a). An accounting can therefore be developed from those sources without compelling Wood to supply his own account of the transactions. The requested relief does not determine the Successor Trustee's duties under the LTA.

**4. Personal Production Under the Tracing Definition**

48. The production requirements present a related concern. Paragraph 9(a) of the Final Order incorporates the documents described in paragraph 8, and paragraph 9(b) requires reconciliations and general-ledger entries concerning the Affected Accounts. Some Affected Accounts are defined by whether they received Trust assets or contain traceable proceeds. Final Order ¶ 2. Compliance may therefore require Wood to identify which additional accounts meet that definition and select their records, rather than simply deliver records for a specified account. Paragraph 10's overlapping turnover demand presents the same potential issue.

49. *United States v. Doe*, 465 U.S. 605 (1984), illustrates the distinction between a record's contents and the act of producing it. There, a grand jury subpoenaed a sole proprietor's business records, including records concerning four bank accounts belonging to him and his businesses. *Id.* at 606-07. The Supreme Court held that the voluntarily prepared contents were not privileged, but upheld the finding that production would involve testimonial self-incrimination. *Id.* at 610-14. Wood's claim rests on that distinction: he challenges the compelled testimonial act of identifying and producing personal-account records, not their contents. His production of existing Trust records held in a representative capacity remains governed by *Braswell*.[2]

[2] Once the act of production was found privileged, *Doe* held that it could not be compelled without statutory use immunity under 18 U.S.C. §§ 6002–6003 and rejected judicially created constructive use immunity. 465 U.S. at 614-17. *Braswell* addresses a different situation: compelled production of entity records held in a representative capacity.

50. Here, selecting records of otherwise unspecified personal accounts may require Wood to determine which accounts received Trust assets or contain traceable proceeds. His production would then communicate both his possession of the records and his determination that they connect those accounts to Trust funds. *Hubbell* explains the testimonial significance of using personal knowledge to identify sources of potentially incriminating evidence. 530 U.S. at 41-45. Because the demanded identification concerns the transfers addressed in Findings B through D, the danger of incrimination arises from the setting of the demand.

51. The findings identifying Wells Fargo account 1563 do not, without more, establish that the existence, possession, and authenticity of records for other accounts are a "foregone conclusion." *See Fisher v. United States*, 425 U.S. 391, 410-11 (1976). In *Doe*, the government failed to establish that those matters were already known independently of the compelled production. 465 U.S. at 614 n.13. The parties seeking Wood's production must establish the independent knowledge on which they rely. Evidence of a particular transfer does not by itself establish every additional tracing determination required by the Order. The relevant distinction is between demanding independently identified records and requiring Wood to identify additional accounts or connect their records to Trust assets through his own knowledge.

52. Wood therefore requests a carve-out from personal production under paragraphs 9(a)–(b) and any overlapping turnover demand under paragraph 10, to the extent compliance requires that additional identification or tracing-based selection. He will produce existing Litigation Trust records held in a representative capacity, the 1563 Records, and the Axos Bank Records. The carve-out would protect the additional personal disclosures while allowing the Successor Trustee to investigate and obtain records independently. Wood also requests that any

---

Its protection against evidentiary use of the custodian's individual act does not extend to records produced in an individual capacity merely because their production is compelled.

later effort to compel personal production covered by the carve-out be presented by motion on notice, with no such production required unless the Court orders otherwise.

53. The Final Order already provides an independent source of account information. Wells Fargo must identify every Affected Account at the institution and produce statements, transaction information, and records showing the source and disposition of transferred funds. Final Order ¶ 8. Records at other institutions may likewise be obtained through direct production required by the Order or other available process. These mechanisms allow the Successor Trustee to investigate additional accounts without compelling Wood's personal identification of them or their connection to Trust assets.

**RESERVATION OF RIGHTS**

54. Wood expressly preserves all unresolved rights, privileges, objections, and defenses. His references to the Final Order's findings do not adopt them as admissions. Production is compelled by the Final Order, and Wood provides no additional personal certification concerning document contents or completeness. He preserves his personal Fifth Amendment claims concerning additional accounts, records, and disclosures, together with the protection accompanying representative production under *Braswell* and *McLaughlin*.

**NOTICE**

55. Notice of this Motion will be provided to the parties identified in paragraph 19 of the Final Order and all parties that have requested notice pursuant to Bankruptcy Rule 2002. Wood submits that no other or further notice is required.

**NO PRIOR REQUEST**

56. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, Wood requests entry of the Proposed Order (i) relieving him personally of the paragraph 9(e) certification and both paragraph 13 accounting requirements; (ii) granting the personal-production carve-out described in clause (d) of the Relief Requested and requiring any later effort to compel production covered by that carve-out to be presented by motion on notice, with no such production required unless the Court orders otherwise; (iii) extending the Challenged Obligations' deadlines as requested; and (iv) granting other appropriate relief.

Dated: October 5, 2026
Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Cameron A. Capp*
Kurt F. Gwynne (No. 3951)
Cameron A. Capp (No. 7173)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: +1 302.778.7500
Facsimile: +1 302.778.7575
Email: kgwynne@reedsmith.com
Email: ccapp@reedsmith.com

-and-

Rizwan A. Qureshi, Esq. (admitted *pro hac vice*)
Ambrose Mitchell Gage Bailey, Esq.*
**REED SMITH LLP**
1301 K Street, N.W., Suite 1000
Washington, D.C. 20005
Telephone: +1.202.414.9200
Facsimile: +1.202.414.9299
Email: rqureshi@reedsmith.com
Email: mbailey@reedsmith.com

-and-

Kaela Dahan, Esq.*
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: +1.212.521.5400
Facsimile: +1.212.521.5450
Email: kdahan@reedsmith.com

**Pro Hac Vice* Application Forthcoming

*Counsel for Jacob Wood, solely in his individual capacity*