**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SilverRock Development Company, LLC, *et al.*,** | **Case No. 24-11647-MFW** |
| | **(Jointly Administered)** |
| **Debtors.** | **Related to D.I. No. 1166** |

**R.D. OLSON CONSTRUCTION, INC.'S OPENING BRIEF REGARDING CONSTRUCTION LOAN SERVICES II, LLC D/B/A BUILDERS CAPITAL'S MOTION FOR ENTRY OF AN ORDER (I) VALUING PURSUANT TO 11 U.S.C. § 506(a) AND (II) GRANTING RELATED RELIEF**

R.D. Olson Construction, Inc. ("RDOC") submits this opening brief (the "Brief") regarding the Motion for Entry of an Order (I) Valuing Collateral Pursuant to 11 U.S.C. § 506(a) and (II) Granting Related Relief [D.I. 1166] (the "Motion"), and states:

## I. PRELIMINARY STATEMENT

On October 23, 2025, the Court approved the sale of the Debtors' real property at the SilverRock resort project (the "Real Property Assets") to TBE RE Acquisition Co. II, LLC ("Turnbridge"). The Real Property Assets are not one piece of collateral. The Debtors' lenders and contractors took liens on different parcels and lots within such parcels (each a "Property" and together, the "Properties"), and no creditor holds a lien on all of the Properties. The sale closed on December 9, 2025. The successor Litigation Trustee now holds the net proceeds of the sale (the "Sale Proceeds") for the benefit of the secured creditors. Before any distribution can occur, the Court must determine what share of the Sale Proceeds is allocated to each Property as of October 23, 2025.

Prior to answering the question of allocation, however, the Court must settle on a uniform description of the Properties and their groupings. This is important because Construction Loan

Service), II, LLC d/b/a Builders Capital ("Builders") and Poppy Bank ("Poppy") use different language to express their opinions of value in their competing allocation approaches.

Builders retained FTI Consulting, Inc. ("FTI") to appraise the Properties. FTI groups the Properties into six "Subject Parcels." Poppy, on the other hand, retained four experts whose interlocking opinions divide the Real Property Assets into "Phases" and then subdivide those Phases into twelve "Parcels." Poppy's and Builders' two descriptions do not match. Thus, the Court will need to settle on one way of describing the Properties before it can apply any allocation and then decide what "buckets" to create.

Once the Court settles on the rubric that best describes the Properties, it is then asked to allocate the Sale Proceeds. RDOC submits that the Court should use a percentage basis[1] to govern allocation. These percentages would then be used to assign the dollar value of each "bucket" based upon the allocation approach that the Court approves.

With respect to allocation, on September 2, 2026, the Court explained that it views allocation as a matter of the value of the Properties as of the date the Court approved the sale, October 23, 2025. (Sept. 2, 2026 Hr'g Tr. 18:17–19.) The Court further stated that what the buyer, Turnbridge, intended to do or might do with the Real Property Assets in the future is not relevant to what the Properties were worth on October 23, 2025. (*Id.* at 26:4–9.)

Builders and Poppy approach allocation differently. On the numbers alone, RDOC would appear to benefit more from Poppy's method. RDOC, however, supports Builders' approach because it follows the Court's guidance at the September 2, 2026 hearing. Builders attempted to ask the question: what was each Subject Parcel worth, in its actual condition, on October 23, 2025?

---

[1]The parties used $52,357,920.79 as the net Sale Proceeds for illustrative purposes. *See* White Supp. Report at 4–5. The original Litigation Trustee improperly diverted approximately $2.25 million of the Sale Proceeds, and the successor Litigation Trustee is pursuing recovery and holding the Sale Proceeds in an interest-bearing account. Any allocation should therefore be a percentage of the Sale Proceeds, not a fixed number.

It used recognized appraisal methods matched to each Subject Parcel's state of development to arrive at a proposed allocation. Nothing in Builders' approach depends on what Turnbridge planned to build or may possibly build in the future. Builders' approach is therefore consistent with the guidance the Court gave on September 2, 2026.

In contrast, Poppy chose to use an interdependent group of four experts to value a future resort built to Turnbridge's potential plans at some point in the future. Poppy's allocation also sorts the Sale Proceeds into creditor "buckets" that are not neutral reflections of the creditors that claim against those buckets. Poppy's proposed allocation includes its opinion that it would win a lien priority fight against RDOC. Issues of lien validity and priority have no place in the instant allocation inquiry.

RDOC supports Builders' approach. RDOC believes that approach is correct under both the law and the Court's comments.

## II. BACKGROUND

1. On October 23, 2025, the Court approved the sale of the Real Property Assets to Turnbridge for $65 million. *See* D.I. 759. The sale closed on December 9, 2025. *See* D.I. 833.

2. RDOC, the general contractor on the project, holds mechanics' liens against certain of the Properties. On June 27, 2025, RDOC filed an adversary proceeding against Poppy. *See R.D. Olson Construction, Inc. v. Poppy Bank*, Adv. Pro. No. 25-51049 (MFW) [Adv. D.I. 1]. This Brief does not ask the Court to decide lien validity, extent, or priority.

3. On August 14, 2026, Granite Construction Company ("Granite") filed an adversary proceeding against the Traub Trust, Keillor Capital, Inc., RAF Pacifica Loan Opportunity Fund I, LLC, and the Arnold Fishman Revocable Trust (together, "Keillor"), Builders, the EB-5 lenders,

and Poppy. *See Granite Construction Company v. Cassidy Traub, et al.*, Adv. Pro. No. 26-50631 (MFW) [Adv. D.I. 1] at 1–2.

4. On April 9, 2026, Builders filed an adversary proceeding against Poppy. *See Construction Loan Services II, LLC v. Poppy Bank*, Adv. Pro. No. 26-50232 (MFW) [Adv. D.I. 1].

5. Builders offers the appraisal report of FTI, prepared by Mark S. Dunec, MAI, CRE, FRICS, dated September 22, 2026, with a retrospective valuation date of October 23, 2025 (the "FTI Supp. Appraisal"), and Mr. Dunec's expert rebuttal report dated October 22, 2026 (the "FTI Rebuttal Report").

6. Poppy offers: (a) the restricted appraisal report of HVS Consulting & Valuation ("HVS"), prepared by John P. Lancet, MAI and Kirsten Z. Smiley, MAI, dated September 18, 2026 (the "HVS Appraisal"), and HVS's supplemental restricted appraisal report dated September 24, 2026 (the "HVS Supp. Appraisal"); (b) Mr. Lancet's appraisal review of the FTI Supp. Appraisal dated October 26, 2026 (the "HVS Review"); (c) the expert report of Elaine White of J.S. Held dated September 18, 2026 (the "White Report") and her supplemental expert report dated September 28, 2026 (the "White Supp. Report"); (d) the expert report of Nathan Moeder of Moeder Advisors dated September 18, 2026 (the "Moeder Report") and his rebuttal report dated October 26, 2026 (the "Moeder Rebuttal Report"); and (e) the cost-to-complete report of Cumming Group ("Cumming") dated September 18, 2026 (the "Cumming Report") and its supplemental report dated September 21, 2026 (the "Cumming Supp. Report").

## III. ARGUMENT

### A. As Part of Allocation, a Rubric for Describing the Properties is Needed.

The parties do not describe the Properties the same way. Builders, through FTI, groups them into six "Subject Parcels." *See* FTI Supp. Appraisal at 3. Poppy divides the Properties into

two "Phases" and then twelve "Parcels." *See* White Supp. Report, Ex. 2S. The two approaches do not line up.

The mismatch is not just a matter of labels. A Subject Parcel, as described by Builders, is different from a Parcel, as described by Poppy. Some Subject Parcels, as described by Builders, contain several Parcels, as described by Poppy. Some creditor liens cover only part of a Subject Parcel, as described by Builders, and some creditor liens cover several Subject Parcels but not every Parcel, as described by Poppy, within them. Subject Parcel 4, as described by Builders, illustrates the problem. Builders' Subject Parcel 4 contains Poppy's Parcels 1, 2, and 8. *See* FTI Supp. Appraisal at 86–87. Poppy asserts a lien on Parcel 8, Keillor on Parcels 1 and 2, and Granite on all three. *See* White Supp. Report, Ex. 5S. Therefore, simply allocating value to Subject Parcel 4, as described by Builders, does not inform a lien creditor of the value attributed to the individual parcels encumbered by each secured creditor's lien.

Deciding on how to describe the land and its subparts is therefore not enough. The Court should also decide what divisions of land are included in referenced subject areas that are assigned an allocation percentage.

**B. RDOC Supports Builders' Approach Because Builders Presents an As-Is Valuation as of the Sale Date.**

In connection with these allocation proceedings, Poppy subpoenaed Turnbridge for, among other things, Turnbridge's future potential plans for the purchased Properties and Turnbridge's internal valuation of those future potential plans. *See* D.I. 1258 ("Poppy Motion to Compel"). Turnbridge opposed the subpoena. Poppy filed a motion to compel the requested discovery from Turnbridge. *Id.* Turnbridge filed a motion to quash Poppy's subpoena and its request for Turnbridge's future potential plans for the purchased Properties and Turnbridge's internal valuation of those future potential plans. *See* D.I. 1251 ("Turnbridge Motion to Quash"). On

September 2, 2026, the Court held a hearing to resolve the two competing motions brought by Poppy and Turnbridge.

At the hearing, Poppy argued that Turnbridge's potential future plans mattered to its experts' allocation analysis. *See* Sept. 2, 2026 Hr'g Tr. 15:1–17:4. The Court disagreed. *See id.* at 26:4–9. The Court stated that allocation is a matter of the value of the Properties as of the sale date, October 23, 2025. *Id.* The Court further explained that Turnbridge's potential future plans for the purchased land after the sale closed are not relevant to resolving the allocation question. *See id*. at 26:4–9. The Court's September 2, 2026 ruling thus clarified its views on allocation.

Builders' approach is consistent with the Court's September 2nd comments. Plans change, as Turnbridge itself acknowledged. *See* Sept. 2, 2026 Hr'g Tr. 9:1–7. Indeed, this very bankruptcy case shows that a developer's plans do not always come to fruition. A valuation based upon Turnbridge's future possible plans is the least reliable measure of the value of the Properties for purposes of resolving the present allocation dispute.

**C. Poppy's Experts Started with Turnbridge's Future, Potential Plans and Worked Backwards to Allocate as Much as Possible to Poppy.**

Poppy's allocation rests on four interdependent experts. First, Cumming estimated the cost to complete a future development based on Turnbridge's potential future plans, including demolition of the existing homes. *See* Cumming Report at 5–7, 10, 21.

Next, Mr. Lancet of HVS used Cumming's numbers to value the resort that Turnbridge possibly plans to build, less the cost of building it, breaking the value into two phases: Phase 1A and Phase 1B. *See* Lancet Dep. 20:5–8. Mr. Lancet of HVS concedes that his opinion assumes that Turnbridge will at some point in the future possibly develop the purchased properties in a particular manner, but that "[t]he improved subject property does not yet, in fact, exist." *See* HVS Supp. Appraisal at 3, 32. Mr. Lancet similarly testified at his October 30, 2026 deposition that the

anticipated tax rebates under Turnbridge's potential future plans he relies upon in his analysis were only "anticipated future payments," not known amounts. *See* Lancet Dep. 42:12–43:9. Indeed, Mr. Lancet described his appraisal approach as one "where you look at the future of completion of a development." *See id*. 54:9–14.

Poppy's third expert, Ms. White, is a forensic accountant. Ms. White is not an appraiser. Based upon Poppy's counsel's instructions, Ms. White spreads Mr. Lancet of HVS's phase-specific values equally across every acre within the respective phase. *See* White Supp. Report at 3–4.

Poppy's final expert, Mr. Moeder, also is not an appraiser. Mr. Moeder was not asked to value the land purchased by Turnbridge. *See* Moeder Dep. 9:16–19. Mr. Moeder's primary opinion contradicts Ms. White's assignment. At Poppy's counsel's instructions, Ms. White was instructed to allocate HVS's values across each acre equally on an acre-by-acre basis. Mr. Moeder opines, on the other hand, that an acre-by-acre approach is "methodologically incorrect." *See* Moeder Report at 16.

Because Poppy's allocation approach does not follow the Court's September 2, 2026, comments, RDOC cannot support it.

**D. RDOC Reserves All Rights on Lien Priority and Validity Issues.**

Disputes over lien priority and validity are not part of these allocation proceedings. The respective parties, including RDOC, are separately litigating the lien priority and validity disputes via separately filed adversary proceedings. *See supra*, II, ¶¶ 2-4. RDOC expressly reserves all rights, claims, defenses, and remedies concerning all lien priority and validity disputes and matters, including in Adv. Pro. No. 25-51049 (MFW) and in any other proceeding that decides the lien priority and validity disputes.

WHEREFORE, for the reasons set forth herein, RDOC requests the Court: (a) adopt a single, uniform description of the Properties and determine the units to which the allocation will apply; (b) determine the appropriate "buckets" for the Sale Proceeds without deciding disputed issues of lien validity, extent, or priority; (c) adopt Builders' approach as the basis for allocating the Sale Proceeds on a percentage basis; and (d) grant such other and further relief as is just and proper. RDOC expressly reserves all rights, claims, defenses, and remedies concerning lien validity, extent, and priority, including in the pending adversary proceedings.

Dated: November 9, 2026

POTTER ANDERSON & CORROON LLP

/s/_James R. Risener III ___________________
Brett M. Haywood (DE No. 6166)
James R. Risener III (DE No. 7334)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email: bhaywood@potteranderson.com
jrisener@potteranderson.com

-and-

WATT, TIEDER, HOFFAR & FITZGERALD, LLP
Jennifer L. Kneeland (admitted pro hac vice)
Marguerite Lee DeVoll (admitted pro hac vice)
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000
Email: jkneeland@watttieder.com
mdevoll@watttieder.com

*Counsel to R.D. Olson Construction, Inc.*